Steven T. Wax, OSB #85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon  97204
Tel:   503-326-2123
Fax:   503-326-5524
steve_wax@fd.org
Attorney for Petitioner

Patrick J. Ehlers, OSB #04118
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon  97204
Tel:   503-326-2123
Fax:   503-326-5524
patrick_ehlers@fd.org
Attorney for Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADEL HASSAN HAMAD,**<br><br>                              Petitioner,<br><br>v.<br><br>**GEORGE W. BUSH, DONALD RUMSFELD, JAY HOOD, and BRICE GYURISKO,**<br><br>                              Respondents. | CV 05-1009 JDB<br><br>MOTION TO DISCLOSE NON-CLASSIFIED OR DECLASSIFIED RECORD OF COMBATANT STATUS REVIEW TRIBUNAL PROCEEDINGS OR, IN THE ALTERNATIVE, TO DIRECT THE FILING OF A RETURN<br><br>(ORAL ARGUMENT REQUESTED) |

Petitioner, Adel Hassan Hamad, through counsel Steven T. Wax and Patrick Ehlers, moves this Court pursuant to the Referral Order of November 2, 2005, the Order assigning counsel of October 5, 2005, the Stay Order of June 27, 2005, and the Protective Orders of December 13, 2004, November 10, 2004, and November 8, 2004, for an order directing

Page 1   MOTION TO DISCLOSE NON-CLASSIFIED OR DECLASSIFIED RECORD OF COMBATANT
           STATUS REVIEW TRIBUNAL PROCEEDINGS OR, IN THE ALTERNATIVE, TO DIRECT THE
           FILING OF A RETURN

the government to provide counsel with nonclassified, or declassified, portions of the proceedings of any Combatant Status Review Tribunal proceedings and the nonclassified, or declassified, portions of any Administrative Review proceedings[1] or, in the alternative, to direct the filing of a return to the petition for writ of habeas corpus.  Counsel has contacted government counsel Terry Henry pursuant to L. Cv. R. 7(m) and been advised that the government opposes this motion.

**PROCEDURAL BACKGROUND**

On March 23, 2005, Mr. Hamad prepared a document that was filed with this Court on May 19, 2005, as a petition for writ of habeas corpus in which he challenged his detention at Guantánamo Bay, Cuba, as an enemy combatant.  On June 3, 2005, the government filed a motion to stay proceedings pending related appeals and for coordination in this and 31 other Guantánamo Bay detainee cases.  In its pleading, the government argued, *inter alia*, that a coordinated stay should be granted because "each detainee has already had the opportunity to participate in the CSRT process" and have been given access to an non-classified summary of the evidence against him.  CR 2 at 7 (internal page 5).  The government went on to note that there would be "little utility" in requiring it to "rehash" information the detainee "already had the opportunity to learn."  CR 5 at 7 (internal page 5).  The government stated that a coordinated stay would also be warranted "to the extent it would be appropriate to find volunteer counsel for any of the *pro se* petitioners who desire such counsel."  CR 5 at 7 (internal page 5).

---

[1]  Mr. Hamad seeks only the nonclassified or declassified portions at this time pending the granting of security clearances to counsel, at which time he will seek the full records.

Page 2   **MOTION TO DISCLOSE NON-CLASSIFIED OR DECLASSIFIED RECORD OF COMBATANT STATUS REVIEW TRIBUNAL PROCEEDINGS OR, IN THE ALTERNATIVE, TO DIRECT THE FILING OF A RETURN**

By order filed on June 27, 2005, this Court entered a stay. CR 4. That stay order recited that it was based upon consideration, *inter alia*, of respondent's motion. The order was in five parts. Of particular relevance to this motion is part 3, which recited "this stay shall not, however, prevent the parties from availing themselves of the procedures set forth below, nor shall it bar the filing or disposition of any motion for emergency relief." CR 4. The "procedures set forth below" appear in part 4 of the order which referenced the entering by the Court of the protective orders previously entered by other judges of the District Court for the District of Columbia on November 8, November 10, and December 13, 2004.

The protective orders referenced by the stay and coordination order of June 27, 2005, included, in paragraph 6 of the order of November 8, 2004, the "revised procedures for counsel access to detainees at the U.S. Naval Base in Guantánamo Bay, Cuba," which was attached thereto as exhibit A. Paragraph III.C.2 of that document imposes an affirmative obligation on counsel to provide the government with evidence of authority to represent the detainee "no later than ten (10) days after conclusion of a second visit with the detainee." Paragraph III.D.1. requires the government to make "reasonable efforts" to accommodate counsel's efforts to schedule meetings with his client. Paragraph III.D.2. requires that the government "not unreasonably" withhold requests for visits by counsel involving more than three persons.

On October 5, 2005, the District Court for the District of Columbia entered an order assigning counsel for approximately 54 detainees at Guantánamo. On or about October 24, 2005, the Federal Public Defender for the District of Oregon was advised of his

assignment to three Guantánamo detainees, including Mr. Hamad. On November 2, 2005, the undersigned filed notices of appearance on behalf of Mr. Hamad. On November 7, 2005, both of the undersigned counsel filed the Memorandum of Understanding regarding access to classified national security information. On November 7, 2005, Mr. Wax also wrote to the Department of Justice expressing concern about Mr. Hamad's condition and status, and seeking, *inter alia*, information regarding his presence before, and any findings by, a Combatant Status Review Tribunal (CSRT) or Administrative Review Board (ARB).

On November 8, 2005, counsel for Mr. Hamad again wrote to the United States Department of Justice and asked for a copy of the non-classified, or declassified, portions of any CSRT that had inquired into Mr. Hamad's status. This letter was sent by undersigned counsel, Steven T. Wax, in his capacity both as counsel for Mr. Hamad and as the supervising attorney in the other two cases that have been assigned to this office. In the letter, we pointed out to the government that the public record in one of the three cases assigned to this office included the non-classified or declassified portions of the CSRT. We noted further that we have had the opportunity to review similar records on behalf of other Guantánamo detainees that are in the public record.

On November 14, 2005, the government responded to counsel's letter of November 7, 2005, advising that they would answer only one question, question 9, and provide us with information about the language that Mr. Hamad speaks. To date, that information has not been provided, nor has counsel received a response to the request contained in the November 8, 2005, letter.

Page 4    **MOTION TO DISCLOSE NON-CLASSIFIED OR DECLASSIFIED RECORD OF COMBATANT STATUS REVIEW TRIBUNAL PROCEEDINGS OR, IN THE ALTERNATIVE, TO DIRECT THE FILING OF A RETURN**

On November 2, 2005, the judges of the District Court for the District of Columbia entered a referral to Magistrate Judge Kay of "all motions pertaining to interpretation or construction of any protective order which has been entered in any of the above cited cases" and "all disputes pertaining to logistical issues."

On November 18, 2005, counsel for Mr. Hamad filed an Emergency Motion and Supporting Memorandum to Compel Expedited Processing of Security Clearances to Facilitate Attorney-Client Access and Motion for Telephonic Hearing to Assist in Prompt Resolution of Access Issue.

**FACTUAL BACKGROUND**

In March 2005, approximately eight months ago, Mr. Hamad prepared a document that this Court has filed as a petition for writ of habeas corpus.  Approximately one month ago, in October 2005, this office was advised that it had been assigned to represent Mr. Hamad.  Since that time, we have moved as expeditiously as possible, both informally and formally, to fulfill our responsibilities and comply with the procedures that had previously been established by the Court and government for access to and representation of persons detained at Guantánamo Bay.

Counsel's ability to fulfill our obligations is hampered by a dearth of information about Mr. Hamad.  At this point, all that is known is that a handwritten document was sent by him, or on his behalf, from Guantánamo Bay, Cuba, to the Court that was written in Arabic.  Counsel for Mr. Hamad has had that document examined by a linguist who was unable to provide any additional information about the country of origin of the writer.

Page 5   MOTION TO DISCLOSE NON-CLASSIFIED OR DECLASSIFIED RECORD OF COMBATANT STATUS REVIEW TRIBUNAL PROCEEDINGS OR, IN THE ALTERNATIVE, TO DIRECT THE FILING OF A RETURN

Because the Federal Public Defender for the District of Oregon is assigned to represent three individuals, we have personal knowledge from the records in our three cases of a significant difference in information that is available to counsel who are assigned to represent people for whom the CSRT record (or a portion thereof) is in the public record and to those for whom it is not. In addition, we have had the opportunity to review the court files in other cases and have observed that a significant number of the cases contain CSRT records. Our personal experience within the office of the Federal Public Defender for the District of Oregon, and in consultation with other counsel, reveals that significantly more can be done on behalf of the client when counsel is in possession of information from the CSRT proceedings.

The public record regarding Guantánamo detainees, both as reflected in court documents and the extensive media discussion of the detainee situation, reveals that many of the detainees (potentially Mr. Hamad) have been detained for up to four years. The record further reflects that a significant number of the detainees have suffered physical and psychological problems, attempted or committed suicide, and engaged in serious hunger strikes. The record further reveals that the United States government has engaged in a policy of "extraordinary rendition" whereby it has sent people to countries that have few restrictions on use of forceful interrogation techniques and/or torture.

Through consultation with counsel who have visited clients in Guantánamo, counsel for Mr. Hamad has learned that it is often extremely difficult to establish an attorney-client relationship with many of the Guantánamo detainees. This difficulty exists for a number

of reasons, including the inherent cultural and language differences between attorney and client, and such factors as the length of detention, and upon information and belief conditions under which the detainees have been detained, efforts by the government to obtain information from the detainees through such techniques as posing as detainee's counsel, government statements to the detainees that they should not cooperate with counsel or will be better off without counsel, and the deteriorating physical and mental condition of many of the detainees.

### I.     ARGUMENT

#### A.    The Record Of The Combatant Status Review Tribunal Is Essential In Order For Counsel To Fulfill His Obligations To Mr. Hamad

The creation of an attorney/client relationship by the entry of the assignment order in this case imposes obligations on counsel, the Court, and the government. The duties and obligations on counsel who undertake representation of a client are set out in a number of sources. The core responsibility of diligence in representation is defined in the comment to R. 1.3 of the American Bar Association MODEL RULES OF PROFESSIONAL CONDUCT as follows:

> A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.

R. 1.4 sets out the obligation of an attorney to communicate with his client. The comment provides:

> Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation.

MODEL RULES OF PROFESSIONAL CONDUCT, R. 1.4 (2003) (comment).  The Oregon Rules of Professional Conduct, 1.3 and 1.4, track the model rules.[2]

Once an attorney is in the case, he must make efforts to obtain the means to provide effective representation, and his client is entitled to those efforts.  As stated in *Martin v. Hadix*, 527 U.S. 343, 369 (1999), a case involving neither the Sixth Amendment nor a statutory right to counsel, the Court stated:

> Notably, attorneys engaged before passage of the PLRA have little leeway to alter their conduct in response to the new legal regime; an attorney who initiated a prisoner's rights suit before April 26, 1996, remains subject to a professional obligation to see the litigation through to final disposition.

In discussing the right of access of prisoners to court in *Bounds v. Smith*, 430 U.S. 817, 822 (1977), the Court noted that such access must be "meaningful."  Similarly, in *Al Odah v. United States*, 346 F.Supp. 2d 1, 11, and 12 (D.D.C. 2004), another Guantánamo detainee case, the court stated that prisoners, having been afforded access to the courts, the access "must necessarily be meaningful."  Once counsel has been assigned, he must, and Mr. Hamad is entitled to have him, comply with the basic obligations of counsel.[3]

---

[2]  In the criminal context, *Strickland v. Washington*, 466 U.S. 668, 691 (1984), describes the steps counsel must take in order to meet minimal constitutional requirements to include the need to consult with one's client, to investigate, and to make reasoned judgments based on facts.

[3]  In *Rasul v. Bush*, 542 U.S. 446, 484 (2004), the Court held that the Guantánamo detainees have a statutory right of access the courts under 28 U.S.C. § 2241.  18 U.S.C. §3006A authorizes the assignment of counsel in § 2241 cases.

Page 8    **MOTION TO DISCLOSE NON-CLASSIFIED OR DECLASSIFIED RECORD OF COMBATANT STATUS REVIEW TRIBUNAL PROCEEDINGS OR, IN THE ALTERNATIVE, TO DIRECT THE FILING OF A RETURN**

Turning to the obligations of the court and the government to petitioners such as Mr. Hamad and their counsel, the courts have long recognized that interference with counsel in civil, as well as criminal, cases can violate due process.

> If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitution sense.

*Powell v. Alabama*, 287 U.S. 45, 69 (1932). *Powell v. Alabama* also held that (albeit in a criminal case) assignment of counsel must be handled in a manner so that representation can be effective:

> . . . that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case.

287 U.S. at 71.

The obligation of the government to refrain from interfering with the obligations of counsel has been discussed in a number of contexts. *See, e.g., Denius v. Dunlap,* 209 F.3d 944 (7th Cir. 2000) (discussing prohibition on state interference with attorney/client relationship in a number of civil contexts); Maine *v. Moulton*, 474 U.S. 159, 176 (1985) (after charges are filed, the Sixth Amendment prevents the government from interfering with the right to counsel); *United States v. Bergeson*, 425 F.3d 1221, 1226 (9th Cir. 2005) (notwithstanding the fact that defendant has no Sixth Amendment right to counsel of his choice, "the government is not entitled to force an indigent's assigned lawyer out of the case.").

Finally, the discovery rules in both the civil and criminal contexts exist to ensure that parties to litigation are able to obtain from their adversaries the information that is in their possession that is necessary to pursue their claims. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Thus, the government not only has a duty not to interfere with Mr. Hamad's counsels' ability to do their work, it has an affirmative obligation to assist.

**B.   The Orders Of This Court And Pleadings Filed By The Government Contemplate The Relief Sought By Mr. Hamad**

As set out above in the Procedural Background, the government was concerned in June 2005 that it not be required to waste its time filing returns in all of the cases that had been filed by Guantánamo detainees in the preceding month. Those detainees were without counsel and had reportedly been given access to the same information the government would file in a return in their CSRT proceedings. The government's pleading contemplated that counsel would likely be entering a number of the cases. Reciting the government's pleading, this Court entered a stay in Mr. Hamad's case, but specifically noted that the stay would not preclude the parties from availing themselves of the procedures that had previously been established for those detainees who had counsel. Counsel has now been assigned by the Court to represent Mr. Hamad and is seeking to avail himself of the procedures established by the Court and government for communication with and access to him.

Counsel cannot meaningfully attempt to establish an attorney-client relationship with Mr. Hamad if he is not in possession of the basic information that the government has

apparently already presented to his client (albeit as we understand it orally and not in writing).

### 1. The Agreement On Access Requires The Government To Act Reasonably.

Included in the agreement on access, which was set forth as Exhibit A to the protective order of November 8, 2004, are several explicit directives to the government to act reasonably in accommodating counsels' desires to speak with their clients. The agreement should be understood to include an implicit obligation on the government to act reasonably in all respects. Provision of the CSRT material that Mr. Hamad seeks is necessary for counsel to undertake representation; to withhold it would be unreasonable.

### 2. Providing The CSRT Material Will Impose At Most A De Minimis Burden On The Government And In No Manner Impair Any Governmental Interest.

Presumably, in the course of conducting CSRT proceedings against Mr. Hamad, the government assembled the information that he seeks. Counsel's review of records in cases involving other Guantánamo detainees reveals that such material exists. Further, it reveals that the government has released that material to the public record. It is, therefore, highly likely that the information that Mr. Hamad seeks already exists in a form that could be quickly provided to counsel. It is, further, highly likely, based on the disclosure of comparable information in other cases, that the information can be released without any harm to the government.

### 3. This Court And A Number Of Other Judges Of The District Of Columbia District Court Have Noted That Provision Of The Material Mr. Hamad Seeks Is Not Burdensome On The Government.

Page 11   MOTION TO DISCLOSE NON-CLASSIFIED OR DECLASSIFIED RECORD OF COMBATANT STATUS REVIEW TRIBUNAL PROCEEDINGS OR, IN THE ALTERNATIVE, TO DIRECT THE FILING OF A RETURN

This Court has previously considered a request to have the government provide information similar to that sought by Mr. Hamad. In *Al-Anazi v. Bush,* 370 F.Supp. 2d 188 (D.D.C. 2005), this Court, while denying a request for a preliminary injunction and granting the government's motion for a stay, ordered the government to provide petitioner's counsel with factual returns. The conclusion of the Court at that time that "the factual returns appear necessary for petitioner's counsel effectively to represent petitioners" remains true today. 370 F.Supp. at 200. As the Court stated in *Al-Anazi*,

> Indeed, even initial conversations by counsel with their clients may be very difficult without access to that basic factual information.

*Id.* Other judges of this Court have reached similar conclusions. *See, e.g., Battaya v. Bush*, No. 05-CV-714, at 3 (D.D.C. May 19, 2005).

**CONCLUSION**

This Court recognized in its order in *Al-Anazi*, that it is critical for counsel to have basic information from the government about his client in order to even attempt to establish a meaningful relationship and undertake his obligations as counsel. Whether provided in the form of a return to the petition for writ of habeas corpus under the existing orders in the case, or as an order of discovery,[4] this Court should direct the government to provide counsel for Mr. Hamad with the non-classified or declassified portions of the CSRT hearing and any other information it has in its possession relevant to the establishment of an

---

[4] The Supreme Court has held that a district court's authority to issue orders pursuant to 28 U.S.C. § 1651 in aid of its fact-finding obligations in habeas proceedings is intended to be flexible and exercised as the circumstances require for a proper and just disposition. *Harris v. Nelson* 394 U.S.296, 299-300 (1969). Thus, pursuant to *Harris v. Nelson*, this Court could also use civil discovery as a basis for requiring the disclosure of information requested here.

Page 12   **MOTION TO DISCLOSE NON-CLASSIFIED OR DECLASSIFIED RECORD OF COMBATANT STATUS REVIEW TRIBUNAL PROCEEDINGS OR, IN THE ALTERNATIVE, TO DIRECT THE FILING OF A RETURN**

attorney-client relationship and to enable counsel to undertake representation in a meaningful way.  Given the long period that Mr. Hamad has likely been detained, the eight months that have passed since his preparation of a petition for writ of habeas corpus, and the six months that have passed since the government recognized in its request for a stay

that counsel were likely to enter the case, the government should be able to provide the information sought within fifteen days.

Respectfully submitted November 30, 2005.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Patrick J. Ehlers
Patrick J. Ehlers
Assistant Federal Public Defender