## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAMAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 05-CV-887 (RWR) |
| | ) |
| GEORGE W. BUSH, | ) |
| President of the United States, *et al.,* | ) |
| | ) |
| Respondents. | ) |
| | ) |
| ALI HUSSIAN MOHAMMAD MUETY | ) |
| SHAABAN | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 05-CV-892 (CKK) |
| | ) |
| GEORGE W. BUSH, | ) |
| President of the United States, *et al.,* | ) |
| | ) |
| Respondents. | ) |
| | ) |
| ADEL HASSAN HAMAD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 05-CV-1009 (JDB) |
| | ) |
| GEORGE W. BUSH, | ) |
| President of the United States, *et al.,* | ) |
| | ) |
| Respondents. | ) |

## RESPONDENTS' OPPOSITION TO EMERGENCY MOTION
## TO COMPEL EXPEDITED PROCESSING OF SECURITY
## CLEARANCES TO FACILITATE COUNSEL ACCESS

## <u>INTRODUCTION</u>

Respondents hereby oppose the motions filed by counsel on behalf of petitioners Chaman, Shaaban and Hamad seeking an injunction compelling the government to expedite processing of petitioners' counsel's security clearance applications.  Petitioners' motions were filed separately in the three above-captioned cases.  <u>See</u> <u>Chaman v. Bush</u>, 05-CV-887 (RWR) (dkt. no. 19; Nov. 21, 2005); <u>Shaaban v. Bush</u>, 05-CV-892 (CKK) (dkt. no. 13; Nov. 21, 2005); <u>Hamad v. Bush</u>, 05-CV-1009 (JDB) (dkt. no. 11; Nov. 18, 2005).  Because the three motions are essentially the same, respondents are responding to the motions in this combined opposition.

Contrary to petitioners' arguments, there is no appropriate legal basis for the Court to order the government to issue security clearances to petitioners' counsel in an expedited manner or within a designated period of time.  Further, the relief requested by petitioners' would impose a substantial burden on the government by requiring security personnel to process security applications and conduct the accompanying background investigations under truncated, artificial time limits, regardless of any issues that may arise during the course of an individual investigation.  Even assuming that respondents' counsel could exercise some degree of control over the timing of the investigation process, such a corner-cutting regime could potentially compromise the Executive's legitimate interests in maintaining security over classified national security information.  Moreover, petitioners' requested injunction has the potential to create an unsettling effect across the entire landscape of the Guantanamo habeas litigation.  Indeed, whatever action is taken to expedite petitioners' counsel's security clearances undoubtedly will be sought by counsel seeking security clearances in all other Guantanamo habeas cases.  Consequently, granting petitioners' motion could compound the harms and risks associated with

petitioners' demanded regime or could lead to a situation in which the government could be faced with competing injunctions across multiple cases requiring that priority and preferential accommodations be given to some counsel during the security clearance application process but not others. There is no basis for such unworkable and unreasonable relief, particularly given the stay of proceedings in these cases. Petitioners' motion to expedite security clearances, therefore, should be denied.

## BACKGROUND

On November 8, 2004, Senior Judge Joyce Hens Green, in the context of the then-pending and coordinated Guantanamo Bay detainee habeas cases, entered an Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba ("Protective Order"). See In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004). The Protective Order and the accompanying Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A ("Access Procedures") were issued by Judge Green after the parties had negotiated at length, certain issues were litigated, and Judge Green considered a proposed protective order and counsel access procedures and made her own revisions to them. The Protective Order and Access Procedures have been entered in two of the three above-captioned cases, consistent with routine practice in the pending Guantanamo detainee habeas cases. See Shaaban v. Bush, 05-CV-892 (CKK) (dkt. no. 3; May, 18, 2005); Hamad v. Bush, 05-CV-1009 (JDB) (dkt. no. 4; June 27, 2005).[1]

_____

[1] While the Protective Order has not been entered in Chaman v. Bush, 05-CV-887 (RWR), respondents have no objection to entry of the Protective Order in this case, as well as entry of the two supplementary orders issued by Judge Green clarifying and detailing certain matters involved the Protective Order. See Order Supplementing and Amending Filing

The regime established by the Protective Order addresses the unique context of the Guantanamo habeas cases, which involve classified national security information and litigation on behalf of non-citizen enemy combatants detained at an overseas military facility in wartime. The Protective Order recognizes the fact that information possessed by Guantanamo detainees may have national security implications warranting its treatment as classified information pending review for classification. See Protective Order at ¶¶ 1-2, 49. Consequently, a crucial component of the Protective Order framework is that any information counsel learns from a detainee is treated as presumptively classified, pending classification review by the Department of Defense Privilege Team, if such review is requested by counsel. See Access Procedures §§ IV.A.6, VI-VII. Accordingly, the Court-approved Access Procedures require that habeas counsel "must hold a valid current United States security clearance at the Secret level or higher, or its equivalent" in order to have access to any detainee at Guantanamo. See Access Procedures § III.A.1; see id. Protective Order ¶ 1 ("The Court finds that these cases involve classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a 'need to know.'").

To account for the fact that the overwhelming majority of private counsel representing the Guantanamo detainees did not come to the litigation with a valid security clearance, the Access Procedures establish an application procedure for habeas counsel to obtain such clearance. See Access Procedures § III.A.3. The Department of Justice Compliance Review and

---

Procedures Contained in November 8, 2004 Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10, 2004).

Litigation Security Group ("Court Security Officers" or "CSOs") is presently overseeing the process of obtaining clearances, as appropriate, for habeas counsel and staff.[2]  The application process generally requires habeas counsel to submit the standard federal government questionnaire for national security positions as well as other documentation, including a finger print card.  Once a completed application is on file, the CSOs refer the application to the Federal Bureau of Investigation ("FBI") for a full-field background investigation of the applicant.  In light of the fact that many habeas counsel in the Guantanamo litigation are located outside the Washington, D.C. area – indeed, counsel in the present cases work in Portland, Oregon – the FBI frequently coordinates with local FBI filed offices around the country to conduct the appropriate investigations and interviews.  Once the required investigation is completed and counsel are approved to receive a Secret-level security clearance, the CSOs contact counsel directly for an appropriate security briefing regarding the duties and responsibilities for handling classified information.

The process for obtaining security clearance has been in place since counsel access to Guantanamo began approximately 16 months ago.  As of November 2005, the CSOs have processed and authorized security clearances for approximately 150 attorneys, translators, and staff representing Guantanamo habeas petitioners.  The number of attorneys and staff requesting security clearances have increased in recent weeks due to the Court's November 14, 2005 Order appointing various Federal Defender Offices from around the country to represent detainees in 44 cases who filed pro se habeas petitions with the Court.  See, e.g., Order in In re Guantanamo Cases, 05-CV-1009 (JDB) (dkt no. 5; Oct. 14, 2005).  Pursuant to this Order, the Court

---

[2] The CSOs also coordinate the security clearance application process for Court staff.

appointed the Federal Defender for the District of Oregon to serve as counsel for the three

petitioners in the above-captioned cases.  Since entry of the Order, respondents' counsel have

been working with the various Federal Defender Offices to arrange for submission of their

security clearance applications.  Presently, there are approximately 75 applications pending with

the CSOs, with additional applications arriving every week as new Guantanamo habeas cases

continue to be filed.  In light of the current number of applications, the CSOs generally advise

habeas counsel that the background investigation process may take anywhere from 8-10 weeks,

depending upon the individualized issues that may arise during the course of the investigation.

In these three cases, 12 security clearance applications were sent to petitioners' counsel

on November 9, 2005.  Petitioners' counsel returned the completed application packages to the

CSOs on November 18, 2005.  The CSOs have since forwarded the applications to the FBI for

processing and investigation, as appropriate.

The same day petitioners' counsel submitted their application packages or shortly

thereafter – on November 18 and 21, 2005, respectively – petitioners' counsel also filed the

present motion to compel expedited processing of their security clearance applications.  The

motion requests that the Court order the government to complete processing of the 12 security

clearance applications in two weeks' time and then promptly render a decision regarding

issuance of security clearances to petitioners' counsel.

For the reasons explained below, petitioners' motion should be denied.

## ARGUMENT

### A.      Petitioners' Motion To Expedite Processing of Security Clearances Lacks An Appropriate Legal Basis.

There is no appropriate legal basis for petitioners' motion to expedite processing of

security clearance applications for habeas counsel. As explained above, Judge Green entered the

Protective Order in recognition of the "special security precautions" that are necessary to

safeguard the classified national security information involved in the Guantanamo Bay habeas

cases. See Protective Order at ¶ 1. One of the primary precautions imposed by the Protective

Order is the requirement that counsel hold a valid current United States security clearance at the

Secret level or higher in order to have access to any Guantanamo detainee. See Access

Procedures § III.A.1. The obvious consequence of this requirement is that habeas counsel must

complete the necessary application and background investigation process required to obtain

Secret-level security clearance. That process is already under way for petitioners' counsel in

these cases, and the Executive has sole authority to conduct an appropriate investigation using its

own methods to determine whether petitioners' counsel qualify for security clearance. See Dep't

of the Navy v. Egan, 484 U.S. 518, 527 (1988) (stating that the President's authority "to control

access to information bearing on national security and to determine whether an individual is

sufficiently trustworthy to occupy a position in the Executive Branch that will give that person

access to such information flows primarily from this constitutional investment of power in the

President and exists quite apart from any explicit congressional grant."). Neither Judge Green

nor any other Court in the Guantanamo habeas litigation has ordered that respondents complete

the security clearance process for a group of individuals within a certain period of time, and

there is certainly no legal basis for such a proposition.

Indeed, the Judiciary has no authority to compel the Executive to process security

clearances in a particular manner or within a prescribed period of time. Under applicable

authorities, it is the Executive that is charged with and responsible for protection of classified

information and determining whether an individual is sufficiently trustworthy to have access to

such information. See Executive Order 12958, as amended by Executive Order 13292, 68 Fed.

Reg. 15315 (Mar. 28, 2003); 28 C.F.R. § 17.1-17.47 (Department of Justice regulations relating

to protection of classified national security information) ; Egan, 484 U.S. at 529 ("[f]or reasons .

. . too obvious to call for enlarged discussion, . . . the protection of classified information must be

committed to the broad discretion of the agency responsible, and this must include broad

discretion to determine who may have access to it") (internal quotation omitted). Cf. Center for

National Security Studies v. U.S. Dep't of Justice, 331 F.3d 918, 928 (D.C. Cir. 2003) (courts

should not second-guess Executive's judgment in the area of national security); Sims v. CIA,

471 U.S. 159, 180 (1985) ("[I]t is the responsibility of [the Executive], not that of the judiciary,

to weigh the variety of complex and subtle factors in determining whether [to disclose sensitive

information]."). Egan is particularly instructive on this point, as the Supreme Court held that

the Merit System Protection Board had no authority to review the Executive's decision to deny

or revoke the security clearance of a governmental employee. 484 U.S. at 529. In reaching this

conclusion, the Supreme Court emphasized that "[i[t should be obvious that no one has a 'right'

to a security clearance. The grant of a clearance requires an affirmative act of discretion on the

part of the granting official." Id. at 528. In light of the Court's reasoning in Egan, it necessarily

follows that no one has a right to compel the Executive to process security clearance applications

in an abbreviated or inappropriate manner.

    Ignoring this wealth of authority, petitioners primarily contend that the security clearance

requirement interferes with the attorney-client relationship. This argument is without merit. As

discussed above, the Court-approved Protective Order adopted the security clearance

-8-

requirement for habeas counsel in an attempt to strike an appropriate balance between the government's interest in preserving national security and counsel's interest in accessing properly represented detainees at Guantanamo. Thus, the Court has already taken account of these concerns and determined that the security clearance requirement – and it concomitant investigation process – is an appropriate condition on counsel's access to detainees at Guantanamo. Consequently, there is no legal basis for the Court to impose limitations or restrictions on the Executive's established procedures for processing security clearances. See Egan, 484 U.S. at 529 (noting that an "outside nonexpert body" does not have the to capacity to review security clearance decisions).

Petitioners rely primarily on Al Odah v. Bush, 346 F. Supp. 1 (D.D.C. 2004), to support their access-to-counsel argument, but they ignore the fact that Al Odah recognized the necessity of having counsel obtain security clearance in order to litigate the Guantanamo habeas cases. Id. at 13-14 (explaining a "framework for counsel access" in which "[c]ounsel would be required to have a security clearance at the level appropriate for the level of knowledge the Government believes is possessed by the detainee"). Indeed, the notion of placing conditions on counsel's access to potential clients in national security contexts is not unique. Even in the context of criminal trials involving accused terrorists with a Sixth Amendment right to counsel,[3] courts have established or upheld various special measures, including the requirement that counsel obtain security clearance. See United States v. Bin Laden, 58 F. Supp. 2d 113, 121 (S.D.N.Y.

---

[3] The Sixth Amendment does not apply with respect to alien detainees at Guantanamo Bay. See, e.g., In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C. 2005) (dismissing Sixth Amendment claims); Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005) (dismissing Guantanamo detainee claims).

1999) (upholding requirements that counsel for defendants undergo Department of Justice security clearance procedure to obtain access to classified information, noting inadequacy of remedying unauthorized disclosure or security breach when "reasonable measures could have prevented the disclosure altogether"); see also United States v. El-Hage, 213 F.3d 74, 81 (2d Cir. 2000) (per curiam) (upholding restrictions on communications by a criminal defendant accused of terrorism-related crimes over objections that the restrictions interfered with his due process right to prepare his defense).

Petitioners' counsel also contend that they have exhibited the required level of trustworthiness in their prior professional endeavors to qualify for an immediate security clearance. See Petitioners' Motion at § VI. While respondents do not doubt the impressive credentials of petitioners' counsel, Egan establishes that the Executive has the sole responsibility to make the determination – using its own appropriate process – whether a particular applicant qualifies for a security clearance. Egan, 484 U.S. at 528-29 ("A clearance does not equate with passing judgment upon an individual's character. Instead, it is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information. . . . Predictive judgment of this kind must be made by those with the necessary expertise in protecting classified information."). Based on these authorities, the Executive has discretion to conduct appropriate background investigations and, upon completion, to provide security clearance to petitioners' counsel once an appropriate decision has been reached. There is no appropriate legal basis to require that the government's process be cut short or curtailed.

**B.    Expediting Security Clearances for Petitioners' Counsel Would Impose An Undue Burden on Respondents**.

In addition to lacking an appropriate legal basis for their motion, relief requested by petitioners would impose significant burdens on the government and injure its interest in the efficient and appropriate operation of the security clearance process.  As an initial matter, respondents' counsel do not exercise any degree of measurable control over the security clearance application process.  That process is managed by the CSOs and the FBI, which conducts the background investigations and follows up on individualized issues, as appropriate. Respondents' counsel are not in a position to step in and provide exceptions to the process for counsel who vouch for their trustworthiness.

In any event, the relief requested by petitioners is problematic in many respects.  First, the government should not be put in a position where security clearances must be granted according to a Court-imposed deadline that petitioners' counsel believe is reasonable.  Such a regime could necessitate the cutting of corners during investigations or the truncation of the scope of investigations altogether.  The result of such a policy could lead to problems for both parties.  For example, the government may be required to make a decision on a security clearance for a person even though doubts exist regarding his qualifications to receive the clearance – doubts that could be resolved by a more thorough investigation.  Thus, on the one hand, an abbreviated investigation could lead to the premature denial of a security clearance application for habeas counsel, even though a more detailed investigation might have absolved the security concerns.  On the other hand, a decision hurried by an artificial deadline could lead to an ill-advised decision to grant a clearance.  The consequences of such a decision could be irreparable if a security violation were to occur.  See Bin Laden, 58 F. Supp. 2d at 121.

-11-

In light of such potential consequences, the security investigations must be permitted to run their course properly to determine whether a particular individual is entitled to security clearance.

Second, petitioners' motion has the potential to disrupt significantly the process for adjudicating security clearance applications that has been in place since counsel began visiting Guantanamo 16 months ago. Petitioners' motion cannot be viewed in isolation; instead, it must be viewed within the larger context of the entire Guantanamo habeas litigation pending before this Court. Undoubtedly, whatever preferential treatment is provided to petitioners' counsel will be sought by all other counsel who are presently in the security clearance application process. The result of such relief would be unreasonable and unworkable. According preferential treatment to counsel who seek it would be unworkable and would compound many-fold the harms and risks associated with petitioners' requested relief. Alternatively, the result of such relief could be injunctions ordering the government to give preferential treatment to some counsel, necessarily giving others lower priority, or devote additional resources to some investigations, but not others. In effect, the Court could become the de facto supervisor of the security clearance process, a result at odds with Egan and its progeny.

In contrast to the burdens imposed on the government, petitioners' counsel will not suffer irreparable harm during the period of time that their security applications are pending. Although styled as an "emergency motion," petitioners' counsel do not identify any unique emergency that would justify the extraordinary injunctive relief that they seek. As an initial matter, petitioners' counsel filed their motion virtually simultaneously with their security clearance applications; thus, they are in no position to complain that the security clearance process with respect to them has taken unreasonably long at this point. Furthermore, the claim of an emergency is also

-12-

inappropriate because all three cases are stayed pending the pending resolution of the appeals before the United States Court of Appeals for the District of Columbia Circuit in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C. 2005), and Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005).[4]  Petitioners' counsel's primary complaint is that they cannot meet with the petitioners until the security clearance application is favorably adjudicated, but the security clearance requirement applies equally to all lawyers, staff and translators who want to visit properly represented detainees at Guantanamo.  As explained above, the government has been working diligently to process security clearance applications in a prompt manner since the beginning of the Guantanamo habeas litigation 16 months ago, and scores of clearances have been approved and counsel visits with detainees are regularly occurring, virtually every week. The security clearance process has already begun for petitioners' counsel, and they will receive a determination on their security clearance application once the appropriate Executive branch authorities complete the necessary investigative process.  Thereafter, petitioners' counsel would be permitted to schedule a visit to Guantanamo, consistent with the terms of the Access Procedures, as soon as the required logistics are arranged.[5]

## CONCLUSION

For these reasons, petitioners' emergency motion to compel expedited processing of

[4] See Chaman v. Bush, 05-CV-887 (RWR) (dkt. no. 7; June 15, 2005); Shaaban v. Bush, 05-CV-892 (CKK) (dkt. no. 3; May 18, 2005); Hamad v. Bush, 05-CV-1009 (JDB) (dkt. no. 4; June 27, 2005).

[5] Petitioners' counsel also incorrectly contend that once they receive their security clearances, the actual dely in arranging a visit to Guantanamo may be several months.  See Petitioners' Motion at § III.  The Access Procedures require at least 20 days' advance notice of any request visit to Guantanamo, see § III.D.4., and respondents have generally been able to schedule visits for recently-cleared habeas counsel consistent with counsel's requested visit dates or reasonably close to such dates, for visits requested in accordance with such notice.

-13-

security clearance applications should be denied.


Dated: December 2, 2005                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           KENNETH L. WAINSTEIN
                                           United States Attorney

                                           DOUGLAS N. LETTER
                                           Terrorism Litigation Counsel

                                             /s/ Andrew I. Warden
                                           JOSEPH H. HUNT (D.C. Bar No. 431134)
                                           VINCENT M. GARVEY (D.C. Bar No. 127191)
                                           TERRY M. HENRY
                                           JAMES J. SCHWARTZ
                                           PREEYA M. NORONHA
                                           ROBERT J. KATERBERG
                                           ANDREW I. WARDEN (IN Bar No. 23840-49)
                                           NICHOLAS J. PATTERSON
                                           EDWARD H. WHITE
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Ave., N.W.
                                           Washington, DC  20530
                                           Tel:  (202) 514-4107
                                           Fax:  (202) 616-8470

                                           Attorneys for Respondents