IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HASSAN ADEL HUSSEIN, )
)
)
Petitioner, )
)
v. )   Civil Action No. 05-1009 (JDB)
)
GEORGE W. BUSH, *et al.,* )
)
Respondents. )
_____)

## DECLARATION OF TERESA A. McPALMER

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.    I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.    I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Hassan Adel Hussein that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 15 February 2006

Teresa A. McPalmer
CDR, JAGC, U. S. Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 1075

18 MAR 2005

~~FOR OFFICIAL USE ONLY~~

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #940**

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #940 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

~~FOR OFFICIAL USE ONLY~~

4 Feb 05

FIRST ENDORSEMENT on LT P. C. Bradford ltr of 25 Jan 05

From: Legal Advisor
To:    Director, Combatant Status Review Tribunal

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 940

1.  Forwarded, recommending approval of the Combatant Status Review Tribunal decision.

2.  The subject tribunal determined by a vote of 2-to-1 that the detainee was properly classified as an enemy combatant. In an articulate and thoughtful dissent, one of the tribunal members opined that the Unclassified Summary of the Evidence was deficient because it failed to present a *prima facie* case that the detainee is an enemy combatant.[1] The Unclassified Summary of the Evidence is not intended to be a charging document that alleges each and every fact necessary to establish that an accused has committed a crime. Rather, it is designed to provide the detainee with fair notice in an unclassified format of the factual basis for their detention. The document must provide sufficient information to the detainee to allow him a meaningful opportunity to contest the factual basis for his detention. The CSRTs are not criminal trials, but rather administrative fact-finding hearings created and designed solely to answer one question – is the detainee properly classified as an "enemy combatant" as defined in the CSRT establishment and implementing orders. To compare the Unclassified Summary of the Evidence to a military charge sheet or civilian charging document is to hold it to a standard that it was not designed or intended to satisfy. I concur with LT Bradford that the Unclassified Summary of the Evidence is legally sufficient in this case.

3.  The dissenting tribunal member also opined that there was insufficient evidence to prove that the detainee was part of or supporting al Qaeda forces or associated forces engaged in hostilities against the U.S. or its coalition partners. In analyzing whether there was sufficient evidence to support a Tribunal's decision I have customarily used the test of whether there was sufficient evidence for a reasonable finder of fact to have found the detainee was an enemy combatant by a preponderance of the evidence. Given the low evidentiary hurdle posed by a preponderance of the evidence standard[2] and the rebuttable presumption of genuiness and accuracy that attaches to the Government Evidence, I believe that the test is satisfied in this case. That is to say that reasonable finders of fact could determine that this detainee meets the definition of "enemy combatant" based on the evidence presented.

J. R. CRISFIELD JR.
CDR, JAGC, USN

---

[1] "*Prima facie*" is Latin for "at first sight." Its legal meaning refers to evidence that, standing alone and un-rebutted, is legally sufficient to establish an offense, defense, or cause of action.
[2] The preponderance of the evidence standard may be simply stated as "more likely than not."

UNCLASSIFIED

25 Jan 05

MEMORANDUM

From:  Assistant Legal Advisor
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor    _JZC_

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 940

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal #19 of 4 November 2004
       (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I find that:

   a.  The detainee was properly notified of the Tribunal process and elected to participate. *See* exhibit D-a.  The detainee also provided sworn oral and written statements to the Tribunal.  *See* enclosure (3) and exhibit D-b.  The Tribunal considered both the sworn oral and written statements in its deliberations.

   b.  The Tribunal was properly convened and constituted by enclosure (1).

   c.  The Tribunal substantially complied with all provisions of references (a) and (b). Note that some information in exhibit R-6 was redacted.  The FBI properly certified in exhibit R-2 that the redacted information would not support a determination that the detainee is not an enemy combatant.

   d.  The detainee did not request that any witnesses or evidence be produced.

   e.  The Tribunal's decision that detainee #940 is properly classified as an enemy combatant was by a vote of 2-1.  The dissenting tribunal member's report is attached to the Tribunal Decision Report as enclosures 3(a) and 3(b).  In my opinion, the Tribunal could properly determine, based on the evidence presented, that the detainee should be classified an enemy combatant.  I do not concur with the Dissenting Member's argument.

2.  The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

UNCLASSIFIED

UNCLASSIFIED

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN # 940

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

PETER C. BRADFORD
LT, JAGC, USNR

UNCLASSIFIED



### Department of Defense
#### Director, Combatant Status Review Tribunals

4 Nov 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #19

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

**MEMBERS:**

██████████████, Colonel, U.S. Army; President

██████████████, Commander, U.S. Navy; Member

██████████████, Major, JAGC, U.S. Army Reserve; Member
(JAG)

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



# HEADQUARTERS, OARDEC FORWARD
GUANTANAMO BAY, CUBA
APO AE 09360

27 December 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander ICO ISN 940

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ███████.

FOR

CHARLES E. JAMISON
CAPT, USN

~~SECRET//NOFORN//X1~~

### (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2), (3) and (5).

(U) TRIBUNAL PANEL:     #19

(U) ISN#:     940

Ref:    (a) Convening Order for Tribunal #19 of 4 November 2004 (U)
        (b) CSRT Implementation Directive of 29 July 2004 (U)
        (c) DEPSECDEF Memo of 7 July 2004 (U)

Encl:   (1) Unclassified Summary of Basis for Tribunal Decision (U/~~FOUO~~)
        (2) Classified Summary of Basis for Tribunal Decision (S//NF)
        (3) Dissenting Tribunal Member's Report (S//NF)
        (4) Summary of Detainee/Witness Testimony (U//~~FOUO~~)
        (5) Copies of Documentary Evidence Presented (S//NF)
        (6) Personal Representative's Record Review (U)

(U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

(U) The majority of the Tribunal has determined that Detainee #940 is properly designated as an enemy combatant as defined in reference (c).

(U) In particular, the majority of the Tribunal finds that this detainee is associated with al Qaida, as more fully discussed in the enclosures.

(U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1), (2) and (3).



Colonel, U.S. Army
Tribunal President

UNCLASSIFIED/FOUO

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL:     #19
ISN #:     940

## 1. Introduction

As the Combatant Status Review Tribunal Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and is associated with al Qaida. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal. Any classified evidence considered by the Tribunal is discussed in Enclosure (2) and (3) to the Combatant Status Review Tribunal Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is associated with al Qaida. The Detainee was employed by the World Assembly of Muslim Youth (WAMY) in Afghanistan and Pakistan for approximately one and one half years until the time of his capture 18 July 2002. WAMY supports terrorist ideals and causes. During the period 1986 through 1999, the Detainee was employed by Lajanat Dawa Islamiya (LDI) in Afghanistan and Pakistan. LDI has been one of the most active Islamic non-governmental organizations to give logistical and financial support to mujahadin operating in the Afghanistan and Pakistan Area. During the course of his duties with LDI, the Detainee came in contact with persons who hold positions of responsibility in al Qaida. The Detainee chose to participate in the Tribunal process. He called no witnesses and did not request any documents to be produced. The Detainee made an oral, sworn statement and provided a written statement. The Detainee, in his oral statement, denied any association with al Qaida and stated that the World Assembly of Muslim Youth (WAMY) and Lajanat Dawa Islamiya (LDI) were not affiliated with al Qaida.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a and D-b, R-1 through R-16.

    b. Testimony of the following persons: none.

    c. Sworn statement of the Detainee

UNCLASSIFIED/FOUO



UNCLASSIFIED/FOUO

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The Detainee requested no witnesses and requested no additional evidence be produced; therefore, no rulings on these matters were required.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

    a. The recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

    b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's sworn testimony. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (4). In sum, the Detainee stated he had no association with al Qaida and that they were in conflict with the teachings of Islam. The Detainee stated that he worked in LDI as an administrator, teacher, and orphanage administrator from 1986 to 1999. The Detainee indicated that LDI downsized after the Gulf War since the LDI originated in Kuwait. He went to work for WAMY as administrator in a hospital, although he stated that he had no training for this position. After September 11, 2001, he returned to its main office in Pakistan where his main job was to distribute aid supplies to refugee camps. In June of 2002, he traveled to Sudan with his family where he left them so that his daughters could continue their education. The Detainee returned to Pakistan and was going to go back to Afghanistan to resume his duties as administrator of the hospital. He was arrested at 0130 at night in his house by Pakistani police and a "tall person" that he believed to be an American. He was detained in Pakistan for six months and ten days and then moved to Bagram and then to Cuba.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) and (3) to the Combatant Status Review Tribunal Decision Report.

**6. Consultations with the CSRT Legal Advisor**

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

UNCLASSIFIED/FO⊘UO

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed appropriate.

b. The Detainee understood the Tribunal proceedings. He asked no questions regarding his rights and actively participated in the hearing.

c. The majority of the Tribunal decided that the Detainee is properly classified as an enemy combatant and is associated with al Qaida.

## 8. Dissenting Tribunal Member's report

See the attached report as Enclosure (3) to the Combatant Status Review Tribunal Decision Report.

Respectfully submitted,

███████████████

Colonel, U.S. Army
Tribunal President

UNCLASSIFIED/FO⊘UO

SECRET/NOFORN/X1

# UNCLASSIFIED SUMMARY OF BASIS FOR DISSENTING DECISION

### (Enclosure (3)(a) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#19_____

ISN #: _____940_____

## 1. Introduction

As the Combatant Status Review Tribunal Decision Report indicates, the Author (Tribunal Minority) has determined that this Detainee is not properly classified as an enemy combatant. In reaching its conclusions, the Author considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Author. Any classified evidence considered by the Tribunal is discussed in Enclosure (3)(b) to the Combatant Status Review Tribunal Decision Report.

## 2. Synopsis of Proceedings

The author concurs with the "Synopsis of Proceedings", as described in Enclosure (1).

## 3. Evidence Considered by the Author

The Tribunal considered the following evidence in reaching its conclusions: Same as Enclosure (1).

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

See Enclosure (1)

## 5. Discussion of Unclassified Evidence

The Author of this report determined that the Detainee has been improperly classified as an enemy combatant. The Author further finds that the Unclassified Summary (Exhibit R-1) fails to even state a prima facie case that the Detainee is an enemy combatant.

    a.  The issue is whether the Detainee has been properly classified as an Enemy Combatant. In order to address this issue, the definition of enemy combatant must be examined. An enemy combatant is "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces." In other words, for a person to be properly classified as an enemy combatant he must be one of the following: 1) part of or supporting the Taliban; 2) part of or supporting al Qaida; or, 3) part of or supporting associated forces that are engaged in hostilities against the U.S. or its coalition partners.

SECRET/NOFORN/X1

ISN #940
Enclosure (3)(a)
Page 1 of 3

SECRET/NOFORN/X1

b. The Unclassified Summary (Exhibit R1) alleges that the Detainee is an enemy combatant based upon six specific allegations. First, the Detainee is accused of being "associated with al Qaida". The Detainee has denied this allegation. However, even if true, this allegation is insufficient to show that the Detainee should be classified as an enemy combatant. As indicated in paragraph 5(a), a mere association with al Qaida does not qualify as a basis for enemy combatant status. With respect to al Qaida, a person must be "part of or supporting…al Qaida forces". Therefore, this alleged association is not persuasive in that it does not even qualify the Detainee as an enemy combatant.

c. Exhibit R1 further alleges that the Detainee was employed by World Assembly of Muslim Youth (WAMY) for approximately one and a half years until his capture on 18 July 2002. As the Detainee admitted to this allegation, this fact is not in dispute. Additionally, the Detainee allegedly worked for Lajanat Dawa Islamiya (LDI) from 1986 through 1999 in Afghanistan and Pakistan. As the Detainee also admitted to this allegation, this fact is not in dispute. Both WAMY and LDI allegedly support terrorist ideals and causes. LDI allegedly "has been one of the most active non-governmental organizations (NGO's) to give logistical and financial support to mujahadin operating in Afghanistan and Pakistan." The Detainee testified that he had no knowledge concerning these alleged terrorist connections of his former employers. The Detainee explained that he held both teaching positions and administrative positions with these NGO's. In fact, the Detainee was a hospital administrator near the end of his employment with WAMY. Even if one or both of these NGO's provided some support to "terrorist ideals and causes", this fact does not incriminate the Detainee. Absent any alleged evidence that the Detainee was involved in providing this support, he cannot be deemed an enemy combatant. These NGO's presumably have numerous employees and volunteer workers who have been working in legitimate humanitarian roles. The mere fact that some elements of these NGO's provide support to "terrorist ideals and causes" is insufficient to declare one of the employees an enemy combatant. To reach such a conclusion would provide for unconscionable results. Consequently, all physicians, nurses, and aid workers employed by alleged terrorist connected NGO's would also be declared enemy combatants.

d. Even if these NGO's provided some support to these "terrorist ideals and causes", this fact would not qualify them as being "associated forces that are engaged in hostilities against the U.S. or its coalition partners." Otherwise, every NGO that has some members who provided some support to forces engaged in hostilities against the U.S. or its coalition partners would qualify as "associated forces". Here again, the ramifications of such logic would result in both unforeseen and unconscionable results. Indeed, an individual can be deemed an enemy combatant because of his direct support of "hostilities in aid of enemy armed forces." In fact, such direct support from an individual would qualify as a belligerent act. The definition of enemy combatant expressly clarifies this point. The absence of such clarifying language as to support from an organization is highly persuasive. The distinction between direct support from the individual and direct support from an individual's employer is critical and must not be overlooked.

e. The final allegation claims that: "During the course of his duties with LDI, the

SECRET/NOFORN/X1

Detainee came in contact with persons who held positions of responsibility in al Qaida." The Detainee denied knowing whether he had contact with such al Qaida members. Even if this allegation is true, it does not show that the Detainee has been properly classified as an enemy combatant. As discussed in paragraphs 5(a) and 5(b), a mere association with al Qaida does not qualify a person as an enemy combatant under the requisite definition. Otherwise, all the employees of LDI who "came in contact with al Qaida" would be deemed enemy combatants. If LDI did in fact have some terrorist connections and the Detainee was employed by this NGO for a 14-year period; then, it is not unreasonable that he may "came in contact" with al Qaida members. The fallacy of the logic that seeks to declare the Detainee an enemy combatant would provide support that a local merchant who "came in contact" with al Qaida members could be deemed an enemy combatant.

     f. In essence, the Unclassified Summary (R1) amounts to saying that the Detainee is an enemy combatant because he was employed by NGO's that provided some support for "terrorist ideals and causes" and because he "came in contact" with al Qaida members. While this information may raise some suspicion, it does not provide a basis for an enemy combatant determination. Absent any allegations that the Detainee himself "directly supported hostilities in aid of enemy armed forces", the Unclassified Summary (R1) fails to even state a prima facie case that he has been properly classified as an enemy combatant. Simply stated, even assuming all the allegations in Exhibit R1 are accurate, the Detainee does not meet the definition of an enemy combatant. Consequently, the Detainee has constructively been denied his right to prepare and participate in the Tribunal. The Detainee could not prepare for an overall allegation that he is an enemy combatant when the supporting allegations do not even qualify him as an enemy combatant. Based upon this failure to even state a prima facie case and upon the analysis of the classified evidence (see Enclosure (3)(b)), the Author finds that the Detainee has been improperly classified as an enemy combatant.

Respectfully submitted,

██████████████████████

Major, U.S. Army
Dissenting Member

UNCLASSIFIED/FO̶U̶O̶

## Summarized Unsworn Detainee Statement

*The Tribunal President read the hearing instructions to the detainee. The detainee interrupts as follows:*

Tribunal President: Adel Hassan Hussein, you are hereby advised that the following applies during this hearing.

Detainee: (interrupting the Tribunal President through interpreter) It's Adel Hassan Hamad, not Adel Hassan Hussein.

Tribunal President: Last name again, I'm sorry.

Interpreter: Adel Hassan Hamad (detainee spells out last name)

Tribunal President: Thank you.

*The Tribunal President continues reading the hearing instructions. The detainee confirmed that he understood the process and had no questions.*

*The Recorder presented Exhibit R-1 and R-2 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

*The Detainee did want participate and will present an oral presentation from notes and the Personal Representative will provide a translated copy as an exhibit D-b. The detainee asks if he is to read, and that the interpreter will translate. The Tribunal President agrees.*

*The detainee would like to take the Muslim oath. Recorder administers the Muslim oath.*

*The Personal Representative read the accusations to the detainee so that he could respond to the allegations through his oral statement. The allegations appear in italics, below.*

3.a. *The detainee is associated with al Qaida.*

3.a.1. *The detainee was employed by the World Assembly of Muslim Youth (WAMY) in Afghanistan and Pakistan for approximately one and one half years until the time of his capture 18 July 2002.*

3.a.2. *WAMY supports terrorist ideals and causes.*

UNCLASSIFIED/FOUO

*3.a.3. During the Period 1986 through 1999, the detainee was employed by Lajanat Dawa Islamiya (LDI) in Afghanistan and Pakistan.*

*3.a.4. LDI has been one of the most active Islamic non-governmental organizations to give logistical and financial support to mujahaddin operating in Afghanistan and Pakistan Area.*

*3.a.5. During the course of his duties with LDI, the detainee came in contact with persons who held positions of responsibility in al Qaida.*

**The following is the sworn statement written statement provided by detainee. (See exhibit D-b)**

Detainee: Replying to the main accusation (A) which states that I'm a member of al Qaida Organization. First, I would like to answer honestly and sincerely that I don't have any association with al Qaida Organization and I don't possess their views because I see them conflicting with the teachings of Islam. Our religion forbids killing of the innocents. Almighty said, " He who kills himself not by himself corrupting the earth is like killing all the people." Killing of pure person with a good soul will bring nothing but harm.

Islam forbids assaulting others without a reason and that is mentioned in more than one Koranic verse. Almighty said, " Don't change that God does not love the attackers;" therefore there may not be any relationship between me and those attackers and killers of the innocent. Nothing connects me to them and there is no connection between them and I, ideological nor organizational. Rather I hate them and I pray to God not to let people among the Muslims carry their ideas.

Second, if I was a member in al Qaida or if I had association to them I would've not traveled in June 2002 to Sudan with my family on an annual vacation and after the vacation ended, I voluntarily returned to Pakistan. If I was a criminal, with association to those criminals, why would I return to Pakistan knowing that the Pakistani intelligence was arresting al Qaida members?

Replying to the sub point number (2) which states the World Scientific Islamic Assembly for the Youth supports al Qaida Organization. WAMY did not support al Qaida Organization and it's a charity organization that works to help the Afghan refugees providing them with food, medicine, clothes, and education, building charter schools which is made of an orphanage, educational training, and also works in the health department by establishing hospitals, small clinics, and also digging water wells, building mosques, and all this were done for the Afghan refugees. Al Qaida members are not from WAMY and they are not Afghan, so how would this assembly support them? That is what my eyes have seen as my testimony by my work before September 2001 as an employee of WAMY and my job there was a manager of the Assembly hospital where I was treating Afghan refugees who came to the hospital for medicine and food.

UNCLASSIFIED/~~FOUO~~

After September 2001, I returned to the main office in Pakistan where the nature of my work was to distribute aid supplies to the refugee camps in Pakistan where I was legal with official papers and with authorization permit in my passport in Pakistan.  I was arrested after returning from Sudan on my annual vacation.  I was arrested in my house at 1:30 at night when I woke up and found myself in front of policemen from the Pakistani Intelligence pointing their weapons in my face like I was in a dream or a disturbing nightmare.  They were screaming at me " don't move!"  So I told them what is it, what do you want from me?  And with them was a tall man who did not look Pakistani which I think he was American.  So they hand cuffed me and they told me "where are your papers?" (meaning my passport.)  So I told them in my shirt pocket.  So the tall man checked my passport and he told me that I came back early from the trip.  I told him yes. He spoke in poor Arabic.  He saw a legal official Pakistani permit by the date that was in my passport which had a legal official authorization posted for two years, Visa, resident in it.  So the guard hesitated at the end and asked the tall man "do we take him?"  And the man said, "yes take him."  So they took me and detained me in jail in Pakistan for six months and ten days.  Later I was moved to Bagram and then to Cuba.

Replying to the secondary accusation, which states that I'm in LDI and I contacted members in al Qaida organization.  I worked from 1986 to 1999 in LDI as an administrator, teacher, and orphanage administrator for a period of time and when working in LDI, I did not have any association with any person from al Qaida organization and they were not as popular as they became after September 2001. I assure you that I did not contact anyone from al Qaida organization. Let us suggest that I contacted someone who associated with al Qaida, so I must have contacted him in 1999 or 1986 or between 1999-1986 so what's the connection to September 11 of 2001 and before that time period, I left my job with LDI and there was no connection between us.

Replying to the other accusation, I would like to make it clear to the presiding tribunal some important points according to my point of view, which I see as the truth.

You're accusing this organization without affirmation even the rational mind and justice would not accept it and I assure you that this organization does good work according to what I have seen and viewed through 17 years of charity work away from politics, political parties, organizations and terrorists. These charities that have limited resources are not capable of helping terrorists. Terrorists need countries to do something like they did in Washington D.C. Nobody can cause such a big incident with the financial help of charity organization and you know that they were living in Afghanistan with service of Taliban. Financial, weapons, fighters were directly supported by Pakistan government so if they were getting support from two countries and one of them is a nuclear power so why would they need help from a small charity with limited resources. Lets assume that this charity is involved with them however, arresting simple employees like myself is not capable of supporting terrorists financially; is this justice? I am an employee who works for a living and I have no connection to the political views or its financial resources, so why do you punish me for a crime I did not commit. Why don't you arrest the charities' presidents or the people who support financially instead of arresting a simple employee

UNCLASSIFIED/FO✗UO

with no informational value? Needed important information doesn't come from a simple employee because a simple employee only knows how to do his job.

I ask of you, finally, to call upon your moral consciousness and the oath that you promised to bring justice which is known about you, and I assure you that I did not and don't pose a threat to the United States government, and I have no enmity towards them and I never was with any organization or any group that was planning to disarray the U.S government. Rather, I give you all my respect and appreciation for your good treatment of the prisoners and for providing everything we need when we are in Cuba. I hope those words will find its course to the officials and I am not telling you this out of fear or greed. And I thank you very much.

Tribunal President:  Does that conclude your statement or is there anything else you would like to add?

Detainee:  There's a point I forgot to mention.  According to my information, the WAMY, no, the LDI did not support terrorists.  They were supporting refugees when I was working for them.

Tribunal President:  At this point, I usually like to say that the only piece of information we've seen on you to this point is the unclassified summary.  Would you be open to us asking questions of you?

Detainee:  I'm ready.

Tribunal President:  Personal Representative, do you have questions for the detainee?

Personal Representative:  No Ma'am, however, I would like to provide the tribunal the detainee's written statement translated as Exhibit D-b.

Tribunal President:  Let the record show I have in possession, Exhibit D-b.

*The Personal Representative and the Recorder had no further questions.*

<u>Tribunal Members' questions</u>

Q.  Sir, you testified that Islam forbids assaulting others without a reason.  What would be a reason to assault somebody?
A.  Only the killer would be killed in Islam.  But an innocent person would not be killed.

Q.  You alluded to it as well, what your job was for WAMY, but, what specifically did you do?
A.  Administration in the hospital.  This is before September 2000.  And after September I know there was something happened to Afghanistan so as I foreigner, I was a afraid for my life so I left and I was working in Pakistan with the charity, helping with the refugees there, because there were a lot of refugees there.

UNCLASSIFIED/FOUO

Q. Did you have any specific training or experience that qualified you for that hospital administrative position?
A. What training?

Q. I don't know that's what I'm asking you?
A. What do you exactly mean by training?

Q. Well, did you have any experience as a hospital administrator before you worked for World Assembly of Muslim Youth?
A. I had an administrative experience my job before was administrative and I worked as administrator there also.

Q. And you are native of which country?
A. I'm from Sudan.

Q. And what's the highest education level that you achieved?
A. I have a diploma in air conditioning or central air conditioning, and a master in Islamic studies.

Q. Can you name a few components in an air conditioning system?
A. 17 years I haven't done anything in that field. I have forgotten most of them. Any air conditioner has a compressor, which is air pressure. And the compressor has Freon in it and condenser.

Q. That's ok I thought it was recent. 17 years ago.
A. 17 years, 20 years now I didn't do.

Q. Why did you leave LDI?
A. After the Gulf War, after Sudaam had invaded Kuwait. The organization was Kuwaiti. So, the support was to my liking to that organization. So, they reduced a lot of the employers work. And I was one of them I guess. Temp workers, a lot of them were laid off. Working for them for fourteen years I was laid off.

Q. So you've been in Pakistan, or Afghanistan for how long? How long did you live in Pakistan or Afghanistan?
A. All my life I was in Pakistan until that year. But I worked in the hospital in Afghanistan.

Q. In the hospital, would you just go over there once in awhile?
A. In every month, when I was working in the hospital, I have in every month I have five days off. Sometimes I would work in the hospital for a month and a half and go back on vacation, or off a week.

UNCLASSIFIED/FOUO

<u>Tribunal President's questions.</u>

Q.  What actually got you started working in the charity field? Its kind of a long ways from air conditioning?
A.  The salaries where I'm from, in my country is very low, very low, in comparing to what the charity pays it's much higher than what they pay.

Q.  Did you have your family with you?
A.  My family was with me the last time I went on vacation.

Q.  And at that point, did you leave your family to go on vacation or took them with you on vacation?
A.  I took them with me on vacation and I left them in Sudan.

Q.  That just leads me to a follow on question, was it intended that you were going to leave them, because they wanted to stay longer or, you had to get back, or?
A.  I have older daughters in post education, Arabic. They wanted to stay in Sudan and study there because we don't have Arabic schools in Pakistan.

Q.  So was your plan to continue working in Pakistan to support them in Sudan?
A.  I planned to work in the hospital in Afghanistan for a year and a half then go back home.  But, I don't know exactly from here, but up to now their hospital's now working.

Q.  Just so that I understand, you went back to Pakistan you intended to go back to Afghanistan and work at that hospital?
A.  Yes, in Afghanistan, because they needed me to work there.

Tribunal President:  I want to thank you for participating in this tribunal today.  Is there anything else you would like to say to the tribunal?

Detainee:  This classification of me as an enemy combatant is an injustice, all my interrogators they told me that I'm innocent that I would be released soon they told me after a month and a month came and I wasn't released.  I never had any military training; I don't know anything about any weapons.  And I have no connection or relationship to any of those criminals, those killers.  That charity was aiding people and it had nothing to do with them.

*The Tribunal President confirms that the detainee had no further evidence or witnesses to present to the Tribunal.  The Tribunal President explains the remainder of the Tribunal process to the detainee and adjourns the Tribunal.*

UNCLASSIFIED/FOUO

## **AUTHENTICATION**

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

Colonel, United States Army
Tribunal President

UNCLASSIFIED//FOUO

# DETAINEE ELECTION FORM

**Date:**___ 24 NOV 04 ___

**Start Time:**_____ 0845 _____

**End Time:**_____ 1030 _____

ISN#:____ 940 ____

Personal Representative: ███████████LTC, US ARMY

Translator Required?__YES__     Language?__ARABIC__

CSRT Procedure Read to Detainee or Written Copy Read by Detainee?__YES__

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Detainee Election:**

[X]     **Wants to Participate in Tribunal**

[ ]     **Affirmatively Declines to Participate in Tribunal**

[ ]     **Uncooperative or Unresponsive**

**Personal Representative Comments:**

> Detainee will attend; will provide an oral presentation from notes. PR will provide the Tribunal a translated version as an exhibit. He will take an oath.

Personal Representative: ████████████████

UNCLASSIFIED//~~FOUO~~

Exhibit D-a

UNCLASSIFIED

## Combatant Status Review Board

TO:  Personal Representative

FROM:  OIC, CSRT (19 November 2004)

Subject:  Summary of Evidence for Combatant Status Review Tribunal – HAMED, Adel Hassan

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.  This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant.  This determination is based on information possessed by the United States that indicates that the detainee is associated with al Qaida.

  a. The detainee is associated with al Qaida:

    1. The detainee was employed by the World Assembly of Muslim Youth (WAMY) in Afghanistan and Pakistan for approximately one and one half years until the time of his capture, 18 July 2002.

    2. WAMY supports terrorist ideals and causes.

    3. During the period 1986 through 1999, the detainee was employed by Lajanat Dawa Islamiya (LDI) in Afghanistan and Pakistan.

    4. LDI has been one of the most active Islamic non-governmental organizations to give logistical and financial support to mujahaddin operating in the Afghanistan and Pakistan area.

    5. During the course of his duties with LDI, the detainee came in contact with persons who held positions of responsibility in al Qaida.

4. The detainee has the opportunity to contest his designation as an enemy combatant.  The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

1 of 1

R1

UNCLASSIFIED

**Memorandum**



| | | |
|---|---|---|
| To : | Department of Defense<br>Office of Administrative Review<br>for Detained Enemy Combatants<br>Capt. Charles Jamison, OIC, CSRT | Date 10/27/2004 |
| From : | FBI GTMO<br>Counterterrorism Division<br>Asst. Gen. Counsel ████████ | |
| Subject | REQUEST FOR REDACTION OF<br>NATIONAL SECURITY INFORMATION<br>████████ | |

Pursuant to the Secretary of the Navy Order of 29 July 2004, Implementation of Combatant Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba, Section D, paragraph 2, the FBI requests redaction of the information herein marked[1]. The FBI makes this request on the basis that said information relates to the national security of the United States[2]. Inappropriate dissemination of said information could damage the national security of the United States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

The FBI certifies the aforementioned redaction contains no information that would support a determination that the detainee is not an enemy combatant.

The following documents relative to ISN 940 have been redacted by the FBI and provided to the OARDEC:

FD-302 dated 08/11/03

---

[1]Redactions are blackened out on the OARDEC provided FBI document.

[2]See Executive Order 12958

1.7.2

R2

Memorandum from ▇▇▇▇▇▇▇ to Capt. Charles Jamison
Re:  REQUEST FOR REDACTION, 10/27/2004


        If you need additional assistance, please contact Asst.
Gen. Counsel ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ or Intelligence Analyst (IA)
▇▇▇▇. IA ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

2 of 2

<u>Statement of ISN 940</u>

Replying to the accusation number (A), the main accusation.
Replying to the main accusation (A) which states that I'm a member of al Qaida Organization.  First – I would like to answer honestly and sincerely that I don't have any association with al Qaida Organization and I don't possess their views because I see them conflicting with the teachings of Islam.  Our religion forbids killing of the innocents.  Almighty said " He who kills himself not by himself corrupting the earth is like killing all the people"  Pure person with a good soul will bring something good".

Islam forbids assaulting others without a reason and that is mentioned in more than one Koranic verse.  Almighty said " Don't change that God does not love the attackers " therefore there may not be any relationship between me and those attackers and killers of the innocent.  Nothing connects me to them and there is no connection between them and I ideological nor organizational rather I hate them and I pray to God not to let people among the Muslims carry their ideas.

Second- If I was a member in al Qaida or if I had association to them I Would've not traveled in June 2002 to Sudan with my family on annual vacation and after the vacation ended I voluntary returned to Pakistan if I was a criminal with association to those criminals why would I return to Pakistan knowing that the Pakistani intelligence were arresting al Qaida Members.

Replying to the sub point number (2) which states the World Scientific Islamic Assembly for the Youth supports al Qaida Organization.  WAMY did not support al Qaida Organization and it's a charity  organization works To help the Afghan refugees providing them with food, medicine, clothes, and in the educational field, building charter schools which is made of an orphanage, educational training, and also works in the health department by establishing hospitals, small clinics, and also digging water wells, building mosques, and all this were done for the Afghan refugees. Al Qaida members are not from WAMY and they are not Afghan so how would this assembly support them and that is what my eyes have seen as my testimony by my work before September 20001 as an employee of WAMY and my job there

Exhibit D-h

was a manager of the Assembly hospital where I was treating afghan refugees who came to the hospital for medicine and food.

After September 2001 I returned to the main office in Pakistan where the nature of my work was to distribute aid supplies to the refugee camps in Pakistan where I was legal with official papers and with a authorization permit in my passport in Pakistan. I was arrested after returning from Sudan on my annual vacation. I was arrested in my house at 1:30 at night when I woke up and found myself in front of policemen from the Pakistani intelligence pointing their weapons in my face like I was in a dream or a disturbing nightmare they were screaming at me " don't move!" so I told them what is it, what do you want from me And with them was a tall man who did not look Pakistani which I think he was American so they hand cuffed me and they told me "where are your papers?" Meaning my passport so I told them in my shirt pocket so the tall man checked my passport and he told me that I came back early from the trip, I told him yes, he spoke in poor Arabic, he saw a legal official Pakistani permit by the date that was in my passport which had a legal official authorization posted for two years resident in it so the guard hesitated at the end and asked the tall man "do we take him?" And the man said "yes take him" so they took me and detained me in jail in Pakistan for six months and ten days. Later I was moved to Bagram and later to Cuba.

Replying to the secondary accusation which states that I'm in LDI and I contacted members in al Qaida organization.

I worked from 1986 to 1999 in LDI as a administrator, teacher, and orphanage administrator for a period of time and when working in LDI I did not have any association with any person from al Qaida organization and they were not as popular as they became after September 2001.
I assure you that I did not contact anyone from al Qaida organization. Let us suggest that I contacted someone who associated with al Qaida, so I must have contacted him in 1999 or 1986 or between 1999-1986 so what's the connection to September of 2001 and before that time period I left my job with LDI and there is no connection between us.

Replying to the other accusation, I would like to make it clear to the presiding tribunal some important points according to my point of view, which I see as the truth.

You're accusing this organization without affirmation even the rational mind and justice would not accept it and I assure you that this organization does good work according to what I have seen and viewed through 17 years of charity work away from politics, political parties, organizations and terrorists. These charities that have limited resources are not capable of helping terrorists. Terrorists need countries to do something like they did in Washington D.C. Nobody can cause such a big incident with the financial help of charity organization and you know that they were living in Afghanistan with service of Taliban. Financial, weapons, fighters were directly supported by Pakistan government so if they were getting support from two countries and one of them is a nuclear power so why would they need help from a small charity with limited resources. Lets assume that this charity is involved with them however, arresting simple employees like myself is not capable of supporting terrorists financially is this justice. I am an employee who works for a living and I have no connection to the political views nor its financial resources, so why do you punish me for a crime I did not commit. Why don't you arrest the charities president and financial supporters instead of a simple employee with no informational value? Needed important information doesn't come from a simple employee because a simple employee only knows how to do his job.

Conclusion:

I ask of you, finally, to call upon moral consciousness and the oath that you promised to bring justice which is known about you, and I assure you that I did not and don't pose a threat to the United States government, and I have no enmity towards them and I never was with any organization or any group that was planning to disarray the U.S government. Rather, I give you all my respect and appreciation for your good treatment of prisoners and for providing everything we need when we are in Cuba. I hope those words will find its course to the officials and I am not telling you this out of fear or greed.

UNCLASSIFIED//FOUO

## Personal Representative Review of the Record of Proceedings

I acknowledge that on /  ~~November~~ DECEMBER 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #940.

✓ I have no comments.

___ My comments are attached.



Name

Signature

_/ December 2004_
Date