Steven T. Wax, OSB #85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon  97204
Tel:   503-326-2123
Fax:   503-326-5524
steve_wax@fd.org
Attorney for Petitioner

Patrick J. Ehlers, OSB #04118
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon  97204
Tel:   503-326-2123
Fax:   503-326-5524
patrick_ehlers@fd.org
Attorney for Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADEL HASSAN HAMAD,<br><br>      Petitioner,<br><br>  v.<br><br>GEORGE W. BUSH, et al.,<br><br>      Respondents. | 05-CV-1009 JDB<br><br>PETITIONER'S SUPPLEMENT TO RESPONSE TO MOTION FOR PROCEDURES RELATED TO REVIEW OF CERTAIN DETAINEE MATERIALS |

## Introduction

Respondents' Reply is premised on two errors.  Respondents dismiss the

application of the Geneva Conventions generally and Common Article 3 of the Geneva

Conventions specifically based on a misreading of *Hamdan v. Rumsfeld*, 126 S.Ct. 2749

(2006).  The Reply also demonstrates the dangers of consolidated briefing by attacking the petitioner's counsel based on positions not asserted.

### A. Respondents Have No Legitimate Interest In Preventing Detainees From Communicating With Each Other.

The petitioner's citations to the Geneva Convention and other sources of international law were appropriate and controlling.  Respondents had argued that seizure and review of all the detainee paperwork, including legal paperwork, was necessitated by "legitimate penological interests" and "strong public policy interests."  Resp. Mot. at 14, 16, 21.  Their Reply Memorandum makes this same assertion.  Resp. Reply at 6, 7, 15, 18, 23.  These interests asserted by Respondents contravene legal norms embodied in the Geneva Conventions generally and Common Article 3 specifically.  While institutional security is a legitimate governmental interest, Respondents' Motion rests largely on the premise that any communication among detainees is an evil to be rooted out.[1]

The premise of Respondents' argument is incorrect.  Respondents have no legitimate interest in stopping detainees from communicating, or in investigating whether they have communicated in the past, because the Geneva Conventions and

---

[1] Only one item cited by Respondents as having been found in its investigation justifies any investigation other than one based on a desire to prevent detainees from communicating.  In one detainee's cell, Respondents found an internal JTF-GTMO e-mail with purportedly sensitive information on it.  Resp. Mot. at 7.  Respondents' desire to discover how this detainee acquired the e-mail may be a purpose unrelated to discovering whether detainees are communicating by passing notes. But this e-mail would have been found – indeed, was found – without having to read detainee legal papers, so its discovery cannot justify the seizure or reading of detainee legal materials or the creation of filter teams.

**Page 2  PETITIONER'S SUPPLEMENT TO RESPONSE TO MOTION FOR PROCEDURES RELATED TO REVIEW OF CERTAIN DETAINEE MATERIALS**

other sources of international law forbid keeping detainees in isolation from each other. As stated in the petitioner's Response, the Geneva Conventions require that detainees be held communally, with ready social access to others of their nationality and culture. This is dictated by numerous individual Articles of the Convention, and is also compelled by the language of Common Article 3, which prohibits inhumane treatment, and by the commentary thereto.

Neither Respondents' original Motion nor its Reply address why they believe they have a "legitimate penological interest" in confining prisoners in a manner that defies international law and the Geneva Convention. Respondents' pleadings also do not explain why the Court should recognize some "strong public policy interest" in confining hundreds of detainees in near-total isolation from each other for years on end, in defiance of those international standards. That was the whole point of petitioner's citations to the Geneva Conventions and international authorities: to refute the government's claim that it has a legitimate interest in depriving detainees of the ability to communicate, when in fact the body of international law says that the government does not have that interest.

Despite the thirteen pages of the Petitioner's Response articulating this point, Respondents' Reply dismisses the Geneva Conventions in a single footnote that claims that *Hamdan* did not hold that the Geneva Conventions are judicially enforceable. Resp. Reply at 8 n. 5. The footnote also cites the lower court decision in *Hamdan*, from the D.C. Circuit, for the proposition that the Geneva Conventions are not judicially enforceable. Resp. Reply at 8 n. 5 (citing *Hamdan*, 415 F.3d 33, 40 (D.C.Cir. 2005)).

Respondents' footnote mischaracterizes the *Hamdan* court's statements on the Geneva Conventions. In reversing the D.C. Circuit on other grounds, the Supreme Court specifically referred to the D.C. Circuit's ruling about the judicial non-enforceability of the rights conferred under the Geneva Conventions and made clear that it was not adopting the D.C. Circuit's holding. The Supreme Court held that "neither of the other grounds the Court of Appeals gave for its decision is persuasive," which included the D.C. Circuit's ruling on judicial enforceability. *Hamdan*, 126 S.Ct. at 2793. The Court also referred to the same non-enforceability argument as "a curious statement" that "does not control this case." *Hamdan*, 126 S.Ct. at 2794.

*Hamdan* then proceeded to determine that it was unnecessary to decide the issue of the judicial enforceability of individual rights under the Geneva Conventions. The Conventions are part of the "law of war" that is incorporated into the Uniform Code of Military Justice that controlled Mr. Hamdan's case. *Hamdan*, 126 S.Ct. at 2794. But the fact that the Supreme Court left the question of the judicial enforceability of the Geneva Conventions open means that the D.C. Circuit's decision no longer carries the force of law. The enforceabilility of the Geneva Conventions as an independent source of rights is undecided.[2]

---

[2]Even while leaving the question open, *Hamdan* cited several international authorities in support of the proposition that the 1949 Geneva Conventions, which apply here, create an independent source of rights that individuals may enforce. 4 Int'l Committee of the Red Cross (ICRC), Commentary: Geneva Convention Relative to the Protection of Civilian Persons in Time of War 21 (1958)(the 1949 Geneva Conventions were written "first and foremost to protect individuals, and not to serve state interests"); 3 ICRC Commentary: Geneva Convention Relative to the Treatment of Prisoners of War 91 (1960)("It was not ... until the Conventions of 1949 ... that the existence of 'rights' conferred on prisoners of war was affirmed"); 1 ICRC Commentary: Geneva

But more to the point, the petitioner here does not, and does not need to, assert that the Geneva Conventions confer individual rights on him that the Court must enforce. Rather, he asserts that the Geneva Conventions, being a treaty into which the United States has entered, and being the universally recognized standard setting out the conditions under which prisoners must be treated, serves as the benchmark against which Respondents' claims of "legitimate penological interest" must be measured. This is especially true because the Conventions, whether they create individually enforceable rights or not, apply to him and to others similarly situated at Guantanamo.

Despite the litigation position asserted in the Reply, Respondents' and their agents have acknowledged the applicability of Common Article 3 to all Guantanamo detainees. On July 7, 2006, in the wake of *Hamdan*, Deputy Secretary of Defense Gordon England issued a memorandum that states in relevant part:

> The Supreme Court has determined that Common Article 3 to the Geneva Conventions of 1949 applies as a matter of law to the conflict with Al Qaeda ... . You will ensure that all DoD personnel adhere to these standards. In this regard, I request that you promptly review all relevant directives, regulations, policies, practices and procedures under your purview to ensure that they comply with the standards of Common Article 3.

Memorandum of Deputy Secretary of Defense Gordon England (July 7, 2006), available at http://www.fas.org/sgp/othergov/dod/geneva070606.pdf. The Memorandum then recites the text of Common Article 3, including the provision that all prisoners "shall in all

---

Convention for the Amelioration of the Condition of the Wounded and Sick in Armed Forces in the Field 84 (1952) ("It should be possible in States which are parties to the Convention .. for the rules of the Convention to be evoked before an appropriate national court by the protected person who has suffered a violation"); *Hamdan*, 126 S.Ct. at 2794 n. 57, 58.

**Page 5  PETITIONER'S SUPPLEMENT TO RESPONSE TO MOTION FOR PROCEDURES RELATED TO REVIEW OF CERTAIN DETAINEE MATERIALS**

circumstances be treated humanely." *Id.* Indeed, the Supreme Court in *Hamdan* cited the assertion by the President himself that all of the Geneva Conventions are applicable to the war with the Taliban. *Hamdan*, 126 S.Ct. at 2795 n. 60. The Respondents' penological interests do not include ignoring these statements and cutting off all communication among detainees.

### B. Respondents' Reply Contains Invective Directed At Counsel That Is Misplaced And That Demonstrates The Inappropriateness Of Consolidated Pleadings.

Respondents' Reply, attacking counsel for positions not taken, demonstrates that consolidated pleadings are not appropriate. The Reply is premised on the assertion that "petitioners' filings in opposition to the July 7 Motion are substantially similar," such that the government filed a "consolidated reply." Resp. Reply at 1. Respondents also suggest that the substantially similar nature of the filings should cause the court to consider coordinated decision of the July 7 motions. Resp. Reply at 1.

Much of the Reply constitutes denunciation of opposing counsel. A major problem with the government's invective is that the petitioner here did not make many of the arguments to which Respondents' counsel takes offense.

The petitioner's arguments, to be clear, and to state them simply, are as follows: (1) trusting attorney-client relationships with Guantanamo detainees have been, in many cases, extremely difficult to build, for a host of reasons; (2) Respondents' unilateral seizure of confidential legal papers has potentially made that already delicate relationship even more difficult to sustain; (3) allowing Respondents to read the legal papers, even through a filter team, threatens to undermine the attorney-client

relationships even further, perhaps beyond the breaking point, for many detainees who are already suspicious and impatient; (4) before seizing the papers, given the already delicate relations between counsel and detainees, Respondents should have sought the input of court and counsel; (5) in any event, given the importance of the attorney-client relationships, and the extent of the potential harm to those relationships existent here, Respondents must justify their desire to read the material by some substantial showing of individualized need rather than engaging in a dragnet action covering all detainees; (6) Respondents have not made such an individualized showing; (7) the showing must include demonstrating that a legitimate security interest will be served by allowing Respondents to read the material; (8) the desire to keep detainees from communicating with each other is not a legitimate security interest because the Geneva Conventions, which set the standard for what is legitimate and what is not, prohibit keeping prisoners from communicating with each other; and (9) Respondents' desire to read legal papers to determine whether detainees have been communicating is especially illegitimate where detainees have the ability to communicate and associate relatively freely.

**Conclusion.**

For the reasons stated herein, and those articulated in the Response brief, the Court should deny Respondents' Motion For Procedures Related to Review of Certain Detainee Material.

Dated this 2nd day of August, 2006.

    /s/ Steven T. Wax
Steven T. Wax
Attorney for petitioner Adel Hassan Hamad


    /s/ Patrick Ehlers
Patrick Ehlers
Attorney for petitioner Adel Hassan Hamad