**Steven T. Wax, OSB #85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, Oregon 97204**
**Tel: 503-326-2123**
**Fax: 503-326-5524**
**steve_wax@fd.org**
**Attorney for Petitioner**

**Patrick J. Ehlers, OSB #04118**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, Oregon 97204**
**Tel: 503-326-2123**
**Fax: 503-326-5524**
**patrick_ehlers@fd.org**
**Attorney for Petitioner**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADEL HASSAN HAMAD,** | **CV 05-1009 JDB** |
| **Petitioner,** | |
| **v.** | **FIRST MOTION FOR DISCOVERY** |
| **GEORGE W. BUSH, DONALD RUMSFELD, JAY HOOD, and BRICE GYURISKO,** | |
| **Respondents.** | |

Petitioner Adel Hassan Hamad, through his attorneys, Federal Public Defender

Steven T. Wax and Assistant Federal Public Defender Patrick J. Ehlers, hereby moves this

Court for an order of discovery pursuant to the referral order of November 2, 2005, the

order assigning counsel of October 5, 2005, the exclusion clause of the stay order of June 27, 2005, the protective orders of December 13, 2004, November 10, 2004, and November 8, 2004, Fed. R. Civ. P. 26 and 33, and 28 U.S.C. § 1651, of the following items:

1.      The classified portion of the Administrative Review Board proceeding conducted with Mr. Hamad in 2005;

2.      A statement of whether the ARB proceeding involving Mr. Hamad in 2005 reached any decision regarding his status;

3.      If the answer to the preceding inquiry 2 is yes, a statement of whether the decision was conveyed to Mr. Hamad;

4.      If the answer to the preceding inquiries 2 and 3 is yes, a statement of whether the decision was conveyed in writing;

5.      If the answer to the preceding inquiries 2, 3, and 4 is yes, provide counsel for Mr. Hamad a copy of the decision;

6.      A statement of whether Mr. Hamad is one of the approximately 140 men who have been determined to be cleared for return to their home countries who are referred to in the Department of Defense press release of February 9, 2006.

Counsel has contacted Respondent's counsel, Terry Henry, pursuant to L. Civ. R. 7(m), and been advised that Respondents oppose this motion.

**Introduction.**

A United States Army Major who participated in at the Combatant Status Review Tribunal (CSRT) proceeding involving Mr. Hamad dissented from the decision to declare

him an enemy combatant, calling his detention "unconscionable." Ex. 1.[1] Counsel for Mr. Hamad have investigated the account he gave under oath to the CSRT and ARB proceedings and corroborated his assertions of innocence and legitimate charitable activities in Pakistan and Afghanistan. Counsel believe that Mr. Hamad has not received a written response from the Administrative Review Board (ARB) that reviewed his case in August, 2005. That fact, coupled with other information known to counsel about other detainees, strongly suggests that Mr. Hamad is one of the individuals included on the list of approximately 140 people referred to in the press release from the Department of Defense on February 9, 2006. Ex. 2.

## I.    ISSUES RELATED TO THE STAY OF PROCEEDINGS

By order dated June 27, 2005, this Court directed that the proceedings in this matter shall be stayed pending resolution of the appeals in *In re Guantánamo Detainee Cases*, 335 F.Supp. 2d 443 (D.D.C. 2005), and *Khalid v. Bush*, 355 F.Supp. 2d 311 (D.D.C. 2005). The order went on to state that it shall "not, however, prevent the parties from availing themselves of the procedures set forth below, nor shall it bar the filing or disposition of any motion for emergency relief." On December 28, 2005, this Court granted, in part, the "Motion To Disclose Nonclassified Or Declassified Record Of Combatant Status Review Tribunal Proceedings Or, In The Alternative To Direct The Filing Of A Return" (CR 14). Mr. Hamad believes that the rationale that led this Court to believe that that motion was appropriate for Court action, notwithstanding the existence of a stay, is equally applicable to the instant motion.

---

[1]Undersigned counsel are unaware of any other detainee held at Guantánamo who received a dissent from a member of a CSRT tribunal.

As argued in his earlier Motion to Disclose, the information Mr. Hamad seeks at this time is essential for him to fulfill his obligations to Mr. Hamad and to the Court. CR 14. While the return filed by Respondents provided Mr. Hamad with useful information, its limited scope -- no portion of the ARB -- and the failure of Respondents to informally provide the information sought herein, have placed Mr. Hamad's counsel in a position in which they are compelled to expend considerable resources conducting investigation and litigation that may well be unnecessary. Given the limited resources available under the Criminal Justice Act, and counsel's obligation to make informed decisions about the utilization of resources, and their obligation to zealously represent Mr. Hamad, it is necessary for counsel to know whether Respondents have already determined that Mr. Hamad no longer poses a danger to this country and are making efforts to repatriate him. If that is not the case, the information that is available in the classified portion of the ARB proceeding is essential in order for counsel to effectively represent their client by focusing their efforts in the right direction.

With respect to the effect of the stay on a motion of this nature, petitioner refers this Court to the order in *Said v. Bush*, Cv 05-2384, issued by Judge Roberts on July 25, 2006. In that order, the Court, relying on 28 U.S.C. § 1651 and the decision in *Harris v. Nelson*, 394 U.S. 286 (1969), granted the petitioner's Motion To Preserve Evidence And For notice Of Intended Removal Or Transfer. That order reflects a reasonable balancing of Respondents' interest in a stay and petitioners' interests in protecting their rights and moving forward. The existence of a stay should be no more of an impediment to the relief Mr. Hamad seeks than it was for Mr. Said.

Finally, Mr. Hamad notes that the decision of the Supreme Court in *Hamdan v.*

*Rumsfeld*, 126 S.Ct. 2749 (2006), resolves the issues that remain pending before the District of Columbia Circuit Court that would have an impact on a stay.  The rationale for a stay pending resolution of those cases in the Circuit Court has several components. First, Deputy Secretary of Defense England's post-*Hamdan* directive of July 7, 2006, constitutes an admission by a party opponent that all detainees are to be accorded the benefits of Common Article 3 of the Geneva Conventions.  Second, the decision in *Hamdan*, with respect to the applicability of the Geneva Conventions to the war against the Taliban, resolves a major issue present in the Circuit cases.  Third, the force of *Hamdan* is that the Detainee Treatment Act (DTA) is inapplicable to any person whose detention is based on that war

## II.    DISCOVERY PRINCIPLES

The litigation before the Court involves a habeas corpus proceeding filed pursuant to 28 U.S.C. § 2241.  Fed. R. Civ. P. 81 provides that the Federal Rules of Civil Procedure

> are applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States, the Rules Governing § 2254 Cases, or the Rules Governing § 2255 Proceedings, and has heretofore conformed to the practice in civil actions.

As a proceeding under § 2241, the rules governing § 2254 and § 2255 cases are not applicable.  The statute of the United States governing discovery in a habeas corpus action is 28 U.S.C. § 1651, the All Writs Act, which provides that all courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Congress and the Supreme Court have chosen to provide some limits on, and rules for, discovery in habeas corpus actions brought under 28 U.S.C. § 2254 and post-

conviction proceedings filed under 28 U.S.C. § 2255.  No such limitations have been enacted for proceedings brought under 28 U.S.C. § 2241.

In *Harris v. Nelson,* and later in *Bracy v. Gramley*, 520 U.S. 899 (1997), the Supreme Court held that a proceeding brought under 28 U.S.C. § 2254, and in which the Rules Governing § 2254 Cases are applicable, the petitioner must show "good cause" in order to obtain discovery.  The court stated that

> where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.

520 U.S. at 908-909.  In such circumstance, the Supreme Court reiterated that "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Id.*

There has been little litigation about the applicability of *Harris* and *Bracy* to actions brought solely under 28 U.S.C. § 2241.  The rationale for limiting discovery in habeas corpus actions brought under 28 U.S.C. § 2254 and motions brought under 28 U.S.C. § 2255 is that the challenge is to the judgment of conviction in a criminal case and in that limited circumstance, the nature of the proceeding is truly a hybrid, so that reference should be made to the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the specific rules crafted for such proceedings in determining what action a court should take.  *See Harris v. Nelson*, 394 U.S. at 296 (noting difficulty a warden would have in answering questions relating to a petitioner's "arrest and trial.").

The nature of the habeas corpus action before this Court is distinct from that involving the challenge to the validity of a state or federal court criminal trial.  It is, rather, far more similar to the host of other civil actions to which the Federal Rules of Civil

Procedure are applicable.  We respectfully submit, therefore, that the Motion for Discovery in this case should conform to the practice in the standard civil action.  Mr. Hamad believes, however, that the discovery he seeks should be granted whether as matter of right or under the "good cause" standard.

## III.    GOOD CAUSE EXISTS IN THE EXISTING RECORD AND IN INFORMATION MR. HAMAD HAS DEVELOPED THROUGH HIS INVESTIGATION.

### A.    CSRT And ARB Proceedings Involving The Petitioner

On or about July, 2004, the Department of Defense conducted a CSRT proceeding at which Mr. Hamad participated and testified under oath.  At the conclusion of the proceeding, two of the three tribunal members found by a "preponderance of the evidence" that Mr. Hamad was an enemy combatant based on his alleged "association" with Al Qaeda.  As noted above, the third member of the CSRT tribunal, an Army major, dissented from the decision to declare Mr. Hamad an enemy combatant, calling his detention "unconscionable."  The essence of the dissenter's view was that Mr. Hamad was being declared an enemy combatant based on the weakest notions of guilt by association.  On May 1, 2006, Respondents' filed the CSRT proceeding as its return in this habeas corpus litigation.  Counsel have reviewed the unclassified and classified filings.

On or about August 2005, an Administrative Review Board proceeding was conducted.  Again, Mr. Hamad participated and testified under oath.  Unclassified transcripts of the Administrative Review Board proceeding are available through the internet as a result of the Respondents' position not to appeal an adverse decision entered in a Freedom of Information Act lawsuit brought by the Associated Press.  *Associated Press v. United States Department of Defense*, 410 F.Supp. 147 (S.D.N.Y. 2006).  Mr.

Hamad was never provided a copy of a decision by the ARB. This contrasts with information provided by counsel for other detainees whose clients were provided written decisions by the ARB. Counsel was advised by Mr. Hamad that he knew of other detainees at Guantánamo who were not provided copies of their ARBs who were released during the spring of 2006.

Mr. Hamad believes that he was advised by one of his interrogators in the spring of 2006 that he had been cleared for release.

As noted above, in a press statement released on February 9, 2006, the Department of Defense stated that it had a list of approximately 140 detainees who it had determined should be released from imprisonment at Guantánamo. During the spring of 2006, Counsel for Mr. Hamad inquired of the government on April 5, May 16, and July 25, whether he is on the list referred to in the February 9 press conference and informally sought the information requested herein. On June 22 and July 26, Respondents refused to answer those questions. Hence, the need for this motion.

### B.   Mr. Hamad Has Provided Sworn Evidence Of His Innocence And A Member Of His CSRT Believes His Detention Is "Unconscionable"

Mr. Hamad is innocent and has never been an Enemy Combatant. The illegality of his detention is so clear that even a United States Army Major sitting at the Combatant Status Review Tribunal to hear his case dissented and called his detention "unconscionable." As Mr. Hamad told the CSRT and ARB, he was arrested in his apartment in Peshawar, Pakistan, at 1:30 a.m. on the night of July 18, 2002, after returning from a month-long vacation with his wife and five daughters in their home in Sudan. He was in Peshawar legally and presented all necessary documentation to the Pakistani

security forces who seized him, apparently at the direction of an American. Mr. Hamad had been working in Pakistan and Afghanistan since 1986 for two international charities helping refugees of the Afghan wars. When the American action in Afghanistan commenced in 2001, and when he was arrested, Mr. Hamad's employer was the World Assembly for Muslim Youth (WAMY), an organization that is not listed on the United States Government Treasury Office of Foreign Asset Control terrorism watch list referred to in Joint Publication 3-36, "Joint Doctrine For Detainee Operations."

The facts set out in the Return filed by Respondents do not satisfy even a broad definition of Enemy Combatant. The facts and law in Respondents' return support a finding not only that petitioner "may" prevail in this case but that his detention is unlawful.

**C.      Even If Mr. Hamad Was An Enemy Combatant, Which He Is Not, The Discovery That He Seeks Will Establish That Respondents Have Now Determined That There Is No Longer A Need to Hold Him.**

The facts available to Mr. Hamad strongly suggest that Respondents have determined that there is no longer a need to hold him. Those facts include:

1.     Respondents' failure to provide him a written decision by the ARB;

2.     A statement to him by one of his interrogators that he had been cleared for repatriation;

3.     The fact that several Saudi Arabians who were repatriated this spring had, similarly, not been provided ARB decisions prior to their release from Guantánamo.

Counsel for Mr. Hamad has been advised that at the very least, Mohammed Al Harbi, Abdul Rahman Al Ghamadi, Abdula Sharki, and Khaled Al Mari, all Saudi Arabians, were repatriated this spring and that none of them had received ARB decisions.

Based on the information that has been provided to Mr. Hamad, the information that

has been withheld from him, and the circumstances of other detainees who have been repatriated, it is highly likely that Mr. Hamad is among the 140 people referred to in the February 9 press release.   If Respondents have determined that Mr. Hamad no longer presents a danger, there is no basis for them to continue to detain him and he "may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."

> **D.    Even Under The Broadest Definition Of Enemy Combatant Utilized By Respondents, Evidence Developed By Mr. Hamad Conclusively Establishes That His Detention Is Unlawful For the Reasons Set Forth By The Major Who Dissented In His CSRT Proceeding.**

The decision of the United States Army Major who dissented from the CSRT decision and Mr. Hamad's sworn testimony provide the first bases on which Mr. Hamad asserts that he "may" prevail in this action.  The dissenting Major's analysis of the gross weakness in Respondents' asserted basis for holding Mr. Hamad is compelling.  Without production of any additional facts, Mr. Hamad respectfully submits that he has established not only that he "may" prevail, but that he is entitled to prevail.

The reality of his case, however, is that there is a wealth of evidence that is available to Mr. Hamad to present to this Court in a habeas corpus evidentiary hearing.  Counsel for Mr. Hamad have investigated his case and corroborated the statements he made in the CSRT and ARB proceedings through his employer, co-workers, and family members. [2] Indeed, Mr. Hamad anticipates that he will be filing a Motion for Summary Judgment in the near future.  In support of that motion, he anticipates filing an affidavit from Dr. Najeeb, the Director of the WAMY Hospital in Chamkani, Afghanistan, where Mr. Hamad worked,

---

[2]Submitted herewith as Exhibit 3 is an Affidavit of Counsel addressing the investigation on Mr. Hamad's behalf.

attesting to the 1) legitimacy and non-political nature of the hospital; 2) the hospital's role as the primary medical center servicing the Afghan civilian population in that region; 3) the regular visits and inspection by United Nations and World Health Organization officials; and 4) the good character of Mr. Hamad, who he describes as non-political and an excellent employee.

The Motion for Summary Judgment will also rely on an affidavit from Mr. Hamad's landlord in Peshawar, Pakistan, Engineer Ishmael. The landlord will establish that Mr. Hamad was a good tenant, paid his rent on time, lived in the apartment with his wife and children, and that there were never any indications of any problems with him.

The Motion for Summary Judgment will also be supported by affidavits from Mr. Hamad's family members, including his wife, Salwah Othman, and brother-in-law, Adil Al Tayab. They will corroborate: Mr. Hamad's account that he lived in the apartment in Peshawar with his wife and children; that his children attended school in Peshawar; that the family took a vacation trip back to Sudan in June and July; that during that trip, his father-in-law died and that a decision was made that his wife and children would remain in Sudan; and that he called back to Pakistan to determine whether it was safe to return, was advised that it was, and left for Pakistan around July 14.

The Motion for Summary Judgment will also be supported by documentary exhibits including photographs of the Chamkani Hospital, including a photograph of the staff in front of the hospital that includes Mr. Hamad, the death certificate of Mr. Hamad's father-in-law, and other information about the World Assembly for Muslim Youth.

The return filed by Respondents alone establishes that Mr. Hamad not only "may," but will, prevail; the factual recitation set out above far more than satisfies any standard for

discovery, or, indeed, relief.

    **E.**    **Mr. Hamad Is Likely To Prevail On His Argument That His Detention Is Unlawful Under The Geneva Conventions.**

As reflected in the preceding sections of this Motion, Mr. Hamad believes that he will prevail on a Motion for Summary Judgment and his habeas corpus petition, even accepting the definition of "enemy combatant" advanced by Respondents. He believes, however, that Respondents' view of the law is incorrect. In his Response to Motion for Procedures Related to Review of Certain Detainee Materials and Motion for Enforcement of Attorney/Client Privilege and Protective Orders, Mr. Hamad has set out, and in his Motion for Summary Judgment he will set out more fully, the law that he believes will be applicable to resolution of this habeas corpus action. That law includes the laws and usages of war that incorporate the Geneva Conventions. *See Hamdan,* 126 S.Ct. at 2794-97. Whatever arguments the Department of Justice makes, as it has in footnote 5 of its Reply Memorandum in Support of July 7, 2006, Motion for Procedures Related to Review of Certain Detainee Materials and Opposition to Petitioner's Request for Relief Associated with Impoundment of Detainee Materials, this Court must take notice of the admissions by the party opponents in this case. As cited by the Supreme Court in *Hamdan*, President Bush has "stated that the conflict with the Taliban is a conflict to which the Geneva Conventions apply." *Hamdan*, 126 S.Ct. at 2795 n. 60. In addition, Deputy Secretary of Defense England admitted the applicability of Common Article 3 of the Geneva Conventions to all Guantánamo detainees in his memorandum of July 7, 2006.

Under the laws and usages of war, Mr. Hamad has not only committed no act in violation of any of the laws of usages of war for which he can be detained, but as a hospital

administrator is entitled to the protections of the Fourth Geneva Convention.

**Conclusion.**

For all of the reasons set forth herein, Mr. Hamad has demonstrated that he is entitled to discovery, or, in the alternative, that he "may," indeed, will, prevail on his petition for writ of habeas corpus and the First Motion for Discovery should be granted.

Respectfully submitted this 7TH day of November, 2005.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Patrick J. Ehlers
Patrick J. Ehlers
Assistant Federal Public Defender