IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADEL HASSAN HAMAD, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>GEORGE W. BUSH, )<br>President of the United States, )<br>et al., )<br>)<br>Respondents. )<br>) | Civil Action No. 05-CV-1009 (JDB) |

**RESPONDENTS' OPPOSITION TO PETITIONER'S FIRST MOTION FOR DISCOVERY**

Respondents hereby oppose petitioner's First Motion for Discovery ("motion") (dkt. no. 45). As explained below, this motion disregards the reasons supporting the stay this Court has entered in this case. See Order, No. 05-CV-1009 (JDB) (June 27, 2005) (dkt. no. 4). Petitioner's motion, therefore, is inappropriate and should be denied.

**ARGUMENT**

**A.    The Court Should Deny Petitioner's Motion Because the Detainee Treatment Act of 2005 Granted the D.C. Circuit Exclusive Jurisdiction Over this Action.**

Petitioner's motion should be denied because the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), vests exclusive jurisdiction over this action in the D.C. Circuit. The Act, among other things, not only amends 28 U.S.C. § 2241 to eliminate court jurisdiction to consider habeas petitions and other claims by aliens held as enemy combatants at Guantanamo Bay, id., § 1005(e)(1), it also creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens and final decisions of any military commissions, id., § 1005(e)(1), (e)(2), (e)(3). Section 1005(e)(2) of the Act states

that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review. While the Supreme Court in Hamdan held that § 1005(e)(1) of the Detainee Treatment Act did not apply to habeas petitions pending prior to the enactment of the Act, it recognized that the exclusive review provisions of the Act did expressly apply to cases pending prior to enactment. See Hamdan v. Rumsfeld, 126 U.S. 2749, 2762-69 (2006). Although the petitioner in Hamdan escaped the Act because his challenge did not involve a final decision of a military commission within the exclusive jurisdiction of the Court of Appeals under § 1005(e)(3), the Court reserved the question of the effect of the exclusive review provisions of the Act on other cases, stating that "[t]here may be habeas cases that were pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3). We express no view about whether the DTA would require transfer of such an action to the District of Columbia Circuit." 126 S. Ct. at 2769 n.14.

The instant case is such an action, i.e., challenging petitioner's designation as an enemy combatant through the Combatant Status Review Tribunal ("CSRT"), and given the Act's investment of exclusive review in the Court of Appeals, the District Court lacks jurisdiction over this case for it is well-settled that an exclusive-review scheme, where applicable, precludes the exercise of jurisdiction under more general grants of jurisdiction, including habeas corpus. Cf., e.g., 5 U.S.C. § 703 ("form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for . . . writs of . . .

habeas corpus"); Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-09 (1994) ("exclusive" jurisdiction under federal Mine Act precludes assertion of district court jurisdiction); FCC v. ITT World Communications, Inc., 466 U.S. 463, 468 (1984) (Hobbs Act) ("The appropriate procedure for obtaining judicial review of the agency's disposition of these issues was appeal to the Court of Appeals as provided by statute."); Laing v. Ashcroft, 370 F.3d 994, 999-1000 (9th Cir. 2004) ("§ 2241 is ordinarily reserved for instances in which no other judicial remedy is available"); Lopez v. Heinauer, 332 F.3d 507, 511 (8th Cir. 2003) ("Because judicial review was available . . . the district court was not authorized to hear this § 2241 habeas petition."). See also Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 77 (D.C. Cir. 1984) ("even where Congress has not expressly stated that statutory jurisdiction is 'exclusive' . . . a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute") (footnote omitted); id. at 75, 78-79 (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).

     Indeed, petitioner's motion makes clear that his case involves a challenge to the CSRT's determination that he is an enemy combatant because much of his motion is devoted to a discussion of what he perceives as the defects of the CSRT's decision. See, e.g., Motion at 6 ("The illegality of his detention is so clear that even a United States Army Major sitting at the Combatant Status Review Tribunal to hear his case dissented."); id. at 9 ("The facts set out in the [Factual] Return filed by Respondents do not satisfy even a broad definition of Enemy Combatant."); Id. at 10 ("The dissenting Major's analysis of the gross weakness in Respondents' asserted basis for holding Mr. Hamad is compelling."). Moreover, petitioner's description of a

planned motion for summary judgment, complete with affidavits from family members and associates and documentary exhibits all allegedly corroborating petitioner's CSRT statements, shows that petitioner views the heart of his habeas case as a challenge to the CSRT enemy combatant determination.  Id. at 10-11; see also id. at 12 (petitioner "believes that he will prevail on a Motion for Summary Judgment and his habeas corpus petition, even accepting the definition of 'enemy combatant' advanced by Respondents.").  In these ways, petitioner's case can be characterized as nothing other than a challenge to the CSRT's designation of petitioner as an enemy combatant.

Granting the relief petitioner requests would be an assertion of jurisdiction and authority in this case inconsistent with the Act's investment of exclusive jurisdiction in the Court of Appeals, and respondents' argument in this regard is in no way immaterial or premature.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

The issue of the effect of the Act on cases such as this remains pending before the Court of Appeals, and the impact of the Supreme Court's recent decision in Hamdan on that issue is the subject of supplemental briefing in the Court of Appeals that was completed on August 15, 2006.  Accordingly, petitioner's First Motion for Discovery should be denied.

**B.     The Court Should Deny Petitioner's Motion Because There Has Been No Change in Circumstances That Warrants Lifting the Stay.**

Petitioner's motion also should be denied because petitioner has failed to provide a sufficient factual or legal basis to justify departure from the stay in this case for purposes of the

requested relief. See Order, No. 05-CV-1009 (JDB) (June 27, 2005) (dkt. no. 4) at 1. The Court stayed this case pending "resolution of the appeals in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C. 2005), and Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005)."[1] Id. Since these appeals have not been resolved, the stay is still in effect. Petitioner's counsel makes no showing of any change in circumstances since this Court entered this Order that would in any way warrant a lifting of the stay, even if such action was appropriate despite the pending appellate proceedings.[2]

Indeed, as this Court has stated elsewhere, while Hamdan addressed one aspect of the Detainee Treatment Act, it did not resolve the effect of the exclusive jurisdiction provision of the Act as it applies to cases like this one. See Mangut v. Bush, et al., 05-CV-1008 (JDB) (Aug. 9, 2006) (dkt. no. 28) at 2 ("Although the Supreme Court recently held that the DTA's jurisdiction-stripping provision does not apply to habeas cases, such as this one, that were 'pending on the date of the DTA's enactment,' Hamdan v. Rumsfeld, 126 S. Ct. 2749, 2769 n.15 (2006), it left unresolved the question whether the DTA's jurisdiction-vesting provisions might nonetheless limit this Court's power over pending habeas cases, id. at n.14.") (emphasis in original). The Court went on to say, "[t]he Court is keenly aware that, as a court of limited jurisdiction, it may not adjudicate cases or controversies unless it has assured itself of its authority to do so -- and, in keeping with that fundamental principle, the Court has steadfastly refrained from taking substantive action in these cases while threshold issues such as jurisdiction have been pending in

---

[1] On appeal these cases are titled Al Odah v. United States, No. 05-5064, and Boumediene v. Bush, No. 05-5062.

[2] While the Order does not "bar the filing or disposition of any motion for emergency relief," see Order at 1 (dkt. no. 4), petitioner's Motion clearly is not such a motion.

the related appeals." Id. at 2-3.  Here petitioner seeks action related to the merits of this case, that is, the initiation of discovery on the merits.  The Court, accordingly, should refrain from granting petitioner's request.

Petitioner's assertion that Hamdan "resolves the issues that remain pending before the District of Columbia Circuit Court that would have an impact on the stay" is without merit.  See Motion at 5.  Petitioner claims that Hamdan resolved the "applicability of the Geneva Conventions to the war against the Taliban," and implicitly suggests that the Geneva Conventions are judicially enforceable.  Hamdan, however, held no such thing; rather, it concluded that the petitioner in that case could invoke Common Article 3 of the Geneva Conventions, not because the Conventions provided petitioner with enforceable rights, but because Article 3 was incorporated into a provision of the Uniform Code of Military Justice governing the military commission at issue in the case.  See Hamdan, 126 S. Ct. 2749, 2794 (2006) (assuming that the Conventions scheme "would, absent some other provision of law, preclude . . . [petitioner's] invocation of the Convention's provisions as an independent source of law binding the Government's actions and furnishing petitioner with any enforceable right"). See also Hamdan, 415 F.3d 33, 40 (D.C. Cir. 2005) ("[T]he 1949 Geneva Convention does not confer upon [a detainee] a right to enforce its provisions in court.").  The Hamdan decision, therefore, addressed Hamdan's claims in the specific context of military commission proceedings, and is not directly applicable to the issue of whether the CSRT properly determined that petitioner is an enemy combatant subject to detention, which is the subject of the petition for habeas corpus in this action.  (For this reason, Hamdan also does not support petitioner's contention that he is likely to prevail on his argument that his detention is unlawful under the

-6-

Geneva Conventions. Motion at 12.) Additionally, petitioner's claim that "the force of Hamdan is that the Detainee Treatment Act (DTA) is inapplicable to any person whose detention is based on that war," id. at 5, is completely without basis.

In any event, Hamdan did not resolve the multiple, significant issues regarding how Guantanamo detainees' challenges to their detention should proceed. Rather, the D.C. Circuit will address these issues in the pending appeals, and therefore the stay should remain in place. For example, the Court of Appeals will determine the rights available, if any, to detainees at Guantanamo under the Fifth Amendment and various statutes and treaties. In light of the potential for the D.C. Circuit's ruling to moot or at least significantly impact the legal bases for and future proceedings on petitioner's habeas petition and the likelihood that any decision by this Court regarding petitioner's motion would have to be relitigated or revisited once the Court of Appeals provides its guidance, this Court should deny petitioner's motion pending resolution of these appeals.

Further, granting petitioner's motion would potentially have far-reaching consequences because such an order doubtless would trigger a cascade effect in other Guantanamo detainee cases. Presently, there are approximately 200 habeas cases pending on behalf of well over 300 detainees at Guantanamo; the majority of those cases and petitioners were not subject to the decisions of Judges Leon and Green in Khalid and In re Guantanamo. A decision to lift the stay before the resolution of the appeals could precipitate a chain reaction – the scores of petitioners in other pending Guantanamo detainee habeas cases, seeking parity of treatment, would request the Court to lift or modify stays that have already been entered. This scenario is exactly what Judge Green aimed to avoid when she denied petitioners' motion to reconsider her order granting

a stay pending appeal "in light of the substantial resources that would be expended and the significant burdens that would be incurred should this litigation go forward." See Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re Guantanamo Detainee Cases (Feb. 7, 2005) (Green, J.).

While petitioner's motion should be denied because this case is properly stayed and no departure from the stay is warranted, some brief comments on the merits of petitioner's request for discovery are in order.  First, petitioner's assertion that as a habeas proceeding under 28 U.S.C. § 2241, the "rules governing § 2254 and § 2255 cases are not applicable" to the instant case is unfounded.  Motion at 5.  So, too, is his statement that because there has been "little litigation" applying the Supreme Court's decision in Harris v. Nelson, 394 U.S. 286 (1969), under which habeas petitioners must show "good cause" to obtain discovery, to habeas actions brought under 28 U.S.C. § 2241, rather than 28 U.S.C. §§ 2254 or 2255, this Court should grant discovery "as [a] matter of right."  Motion at 6-7.  Under Rule 1(b) of the Rules Governing Section 2254 Cases in the United States District Courts the application of § 2254 Rules in non-§ 2254 cases is within the Court's discretion, and Rule 6 codifies Harris by allowing discovery only "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."

Further, petitioner's discovery request primarily focuses on information related to petitioner's Administrative Review Board ("ARB") proceedings; however, any requests regarding ARB hearings are not properly before this Court, nor are they a proper subject for this

litigation.[3] ARB proceedings are separate and distinct from proceedings before CSRTs that determine whether detainees are properly classified as enemy combatants. Thus, the purpose of the ARB proceedings is distinct from the issue involved in the habeas petitions before the Court. The habeas petitions, and factual returns filed in connection with the petitions, concern whether a petitioner is properly subject to detention by the United States, that is, whether a detainee has been legitimately determined to be an enemy combatant and, thus, may be detained for the duration of hostilities, if necessary. The ARB proceedings concerning which petitioner seeks discovery, on the other hand, are designed to assess, on an annual basis, not whether a detainee may be detained as an enemy combatant, but whether it is in the interests of the United States to transfer or continue to detain individuals already determined by CSRTs to be enemy combatants. This decision is based on a weighing and balancing of factors, such as the threat a detainee is believed to pose to the United States or its allies in the ongoing armed conflicts against al Qaeda and its supporters, and the detainee's continuing intelligence value. See Revised Implementation of Administrative Review Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba (July 14, 2006) (available at http://www.defenselink.mil/news/Aug2006/ d20060809ARBProceduresMemo.pdf). As a result, the ARB issues and the habeas issues are not the same; indeed, the ARB determination involves a complex weighing of factors and

---

[3] Petitioner's counsel has filed a Freedom of Information Act ("FOIA") request with the U.S. Department of Defense ("DoD") for information regarding petitioner's Administrative Review Board. If DoD determines that there is information responsive to petitioner's counsel's request that is properly releasable under FOIA, petitioner's counsel will be given this information. Discovery in this case concerning petitioner's ARB, however, is not appropriate.

exercise of discretion by the Military that is not justiciable.[4]  See, e.g., Dist. No. 1, Pacific Coast Dist., Marine Engs. Beneficial Ass'n v. Maritime Admin., 215 F.3d 37, 42 (D.C. Cir. 2000) (finding that Executive's "judgments on questions of foreign policy and national interest . . . are not subjects fit for judicial involvement").

For all of these reasons, petitioner has not established a sufficient factual or legal basis to justify departure from the stay in order to authorize discovery.[5]

## CONCLUSION

For the foregoing reasons, petitioner's First Motion for Discovery should be denied.

Dated: August 16, 2006                      Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            DOUGLAS N. LETTER
                                            Terrorism Litigation Counsel


                                              /s/ Nicholas J. Patterson
                                            JOSEPH H. HUNT (D.C. Bar No. 431134)
                                            VINCENT M. GARVEY (D.C. Bar No. 127191)
                                            TERRY M. HENRY
                                            EDWARD H. WHITE
                                            JAMES J. SCHWARTZ
                                            PREEYA M. NORONHA
                                            ROBERT J. KATERBERG

---

[4] Respondents' arguments are without prejudice to any further objections respondents may have to the specific discovery requests contemplated by petitioner.

[5] Petitioner's reliance on the July 25, 2006 Order in Said v. Bush, No. 05-CV-2384 (RWR), for the proposition that the existence of the stay in his case should not be an impediment to the relief he seeks, is misplaced.  Motion at 4.  At most, the Said Order, which ordered respondents to preserve evidence and provide notice of removal or transfer of detainees, was an effort by the Court to preserve the status quo, rather than a decision by the Court to allow the case to "mov[e] forward." Motion at 4.

-10-

        ANDREW I. WARDEN
        NICHOLAS J. PATTERSON
        Attorneys
        United States Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Ave., N.W.  Room 7220
        Washington, DC  20530
        Tel: (202) 514-4523
        Fax: (202) 616-8470
        E-mail: nicholas.patterson@usdoj.gov

        Attorneys for Respondents