EXHIBIT 17.10

Letter agreement between
United Nations World Food Program
in Afghanistan and WAMY dated
February 20, 2000

**Duplicate**

## LETTER OF AGREEMENT

The United Nations World Food Programme (Afghanistan) and **WAMY (World Assembly of Muslim Youth)** henceforth referred to as the Implementing Partner, hereby agrees to the joint implementation of project No. AFG/SO/K/00005/0701/IF/WAMY entitled "**Hospital Feeding**" in Chamkani district of Paktia Province of Afghanistan. Under the terms of this agreement, the Implementing Partner undertakes to carry out the activities described in the project proposal, which forms an integral part of the agreement. In support of the activities described, WFP agrees to make available the following quantities of commodities:

| | |
|---|---|
| **Sugar** | 1.127 MT |
| **CSB** | 3.522 MT |
| **W/Flour** | 5.871 MT |
| **Pulses** | 0.561 MT |
| **E.oil** | 0.704 MT |
| **Total Mixed Food** | 11.785 MT |

for a value of equivalent to **US$ 5,401.700**, for a total of up to 77 beneficiaries. These commodities are intended as direct contribution of WFP to the Prince A. Mohsin Hospital of Chamkani district of Paktia province. The daily food ration for each beneficiary (as outlined in the project document) is wheat flour 250 gms, CSB 150 gms, sugar 40 gms, pulses 30 gms, and E. oil 30 gms. The following terms and conditions will apply to the agreement:

1. A Letter of Readiness will be signed by an authorized representative of the Implementing Partner and delivered to WFP Sub-Office in Kabul prior to release of first installment of commodities.

2. Food Aid committed will be delivered in installments up to a maximum of 25% subject to provision of satisfactory monitoring report from WFP staff or agency hired by WFP, which includes the commencement of feeding, progress made, number of beneficiaries by gender, storage of commodities, utilization of commodities, involvement of the local community, contribution from IP and other sources and record keeping.

3. WFP sources will be utilized as specified in the project document and annexes. The Implementing Partner will maintain records and account of commodities utilized as well as other non-food-items distributed to beneficiaries.

4. WFP agrees to meet the costs of delivery of food inputs foreseen under this project to the Extended Delivery Point (EDP) inside Afghanistan. This point shall be defined as the site at which WFP inputs can be safely and effectively delivered to the Implementing Partner for distribution to the intended beneficiaries.

*WAMY Hospital File*

**Duplicate**

5. WFP will not be liable for any expenditure in excess of its contribution specified in this agreement.

6. WFP will have access to monitor the food distribution in the hospital at any time without proir notice. WFP will confirm the findings of the monitoring mission to the Implementing Partner and in the event of the failure of the latter to take corrective measures, WFP will have the right to terminate the project.

7. The Implementing Partner agrees to undertake activities described in the project proposal with due diligence and within, to the extent possible, the agreed implementation period.

8. The food commodities are donated for those beneficiaries defined under this agreement and the submitted proposal. The Implementing Partner agrees to ensure that only these beneficiaries receive the food commodities and that food stocks at any given time reflect accurately the actual number of beneficiaries that have received the food. The Implementing Partner also agrees that if it fails to do so correctly, WFP has the right to terminate this agreement.

9. All outputs will be measured by representatives of the Implementing Partner in accordance with established procedures of WFP. These records (together with an account of deliveries and the beneficiaries) will form the basis for monthly updates on activities covered by the agreement, to be sent to Kabul Sub-Office.

10. The Implementing Partner will inform the relevant WFP field office promptly of any delays, changes or irregularities that might occur in implementation of project activities.

11. Except for smaller projects (less than 200 bags) located outside Kabul, the Implementing Partner agrees to make arrangements for the return of WFP jute bags in which wheat or flour is delivered under this project. WFP reserves the right to charge the cost of bags not returned at a rate US $ 0.50 per bag.

12. Plastic bags and other types of smaller plastic containers, do not have to be returned to WFP and are an additional contribution of WFP to the beneficiaries of this project.

13. The Implementing Partner agrees to maintain and present to WFP a progress report once a month, indicating among other things the number of days, number of beneficiaries and amounts of food cooked. A final report will be submitted at the end of the project to WFP Kabul Sub-Office.

14. The Implementing Partner agrees to reimburse WFP for the loss or unauthorized use of any of the commodities provided by WFP at the price set by WFP.

15. The Implementing Partner should ensure that the beneficiaries match the profile as outlined in the proposal.

**AGR. NO. 5**

8. **Arbitration**

   Any dispute arising from this agreement shall be referred to arbitration, one arbitrator to be nominated by WFP and the other by the Carrier. In case the arbitrators shall not agree, then the decision of an umpire to be appointed by the two arbitrators shall be final and binding upon both parties. If one party fails to appoint an arbitrator for 14 (fourteen) clear days after the other party, having appointed his arbitrator, has served the party making default with notice to make the appointment, the party who has appointed an arbitrator in the reference and his/her award shall be binding on both parties as if he/she had been appointed by consent.

9. **Immunity Clause**

   Nothing in this agreement shall imply a waiver by United Nations World Food Programme, the United Nations or any of its Agencies or Organizations of any privileges or immunity enjoyed by them or their acceptance of the jurisdiction of the courts of any country over disputes arising out of the said agreement.

For the World Food Programme

_____
Henning Scharpff
HSO-WFP Jalalabad, Afghanistan

_____
Date

For the Implementing Partner

_____
Eng. Muhammad Mustafa
Director General (WAMY)

20/2/2000
Date

# EXHIBIT 17.11

Food and Agricultural Organization
of the United Nations report on
WAMY fruit tree project, December 9, 1998



# FOOD AND AGRICULTURE ORGANIZATION OF THE UNITED NATIONS
"Food Security through Sustainable Crop Production in Afghanistan"
Programme AFG/96/004

To:  Mr Mustafa  
     Director  
     WAMY

Peshawar, 9th December 1998

Ref: 620/3.16/98/JMA

From:  J.M. Arnoult  
       Sr. Technical Adviser - Horticulture

Subject: Final report re.project PTN/E/WAMY/01/98 for support to the establishment of five private fruit tree nurseries in Kabul province, Sarobi district

Dear Mr Mustafa,

Thank you very much for sending us your final report referring to the above project. I reviewed this report with interest. Though activities have been found globally satisfactory and recommendation has been made to our head office in Islamabad to release the final instalment, I must say that I found this report a bit short in its presentation and limited only to general considerations over activities that have been undertaken at field level. A bit more information from your side about your evaluation of the performance of each farmer and status of each nursery, problems that have been encountered, etc, would have been useful for us to better assess project achievements.

From our last monitoring, we also found that apple rootstocks procured by FAO had been mixed in the course of planting. Your report does not mention this fact. It also does not mention whether action has been taken as recommended by our monitor to sort out this problem. As you know, these rootstocks have quite different physiological characters in terms of vegetative vigour, and this issue is of paramount importance for rational management of newly planted orchards in the future. I would therefore appreciate your clarifications as whever action has been taken on this matter.

I also would like to mention that though our monitoring was made in presence of WAMY technical staff, inventory figures from your report are differing from those from our monitoring. I would appreciate if you could cross-check again and confirm which ones are the actual inventory figures.

Thank you very much again for your collaboration.

With best regards.

Yours sincerely

Jean-Michel Arnoult

cc:  H.C. Brink, Programme Manager  
     chrono

# EXHIBIT 17.12

# Food and Agricultural Organization of the United Nations agreement of 1994 for agricultural work

FOOD AND AGRICULTURE ORGANIZATION
OF THE UNITED NATIONS



اداره خوراکی و زراعت اقوام متحده

PROGRAMME FOR REHABILITATION OF AFGHANISTAN AGRICULTURE
FOOD AND AGRICULTURE ORGANISATION OF
THE UNITED NATIONS (FAO).
AFG/92/008
UNO/AFG/105/UNA & OSRO/AFG/301/EEC.
UNO/AFG/025/UNA - OSRO/AFG/401/NETH - OSRO/AFG/402/SWED
CONTRACTUAL SERVICES AGREEMENT
SUPPORT FOR 1994/95 SEASON WHEAT CROP PRODUCTION
(Seed/Fertilizer : Seed & Grain Production)

IMPLEMENTING PARTNER (IP):    World Assembly of Muslim Youth
PROJECT SYMBOL:               KUN/CPA/EW/02/94
PROJECT TITLE:                SEED AND GRAIN PRODUCTION - KUNAR

Dear Mr. M. Mustafa,

The Food and Agriculture Organisation of the United Nations hereinafter referred to as "FAO" and (WAMY) (WAMY) hereinafter referred to as "Implementing Partner" (I.P.) have agreed to cooperate in achieving the particular objective specified in the Project Document and Plan of Operation (viz. the distribution of wheat and other seed DAP and Urea fertilizer to farmers in the locations specified in Kunar Province: Peche District(s)/subdistrict(s) for seed and/or grain production in the 1994/95 cropping season.

The modalities of cooperation as well as the financial and other terms and conditions are set forth in the enclosed Appendices, which constitute an integral part of the Agreement.

Using resources allocated to the programme, FAO thus agrees to grant the Implementing Partner (I.P.) physical inputs of high quality wheat seed and fertilizer totalling 5.5 MT wheat seed, 6 MT DAP fertilizer and 10 MT Urea fertilizer, together with transportation to the agreed project centre(s) or location(s), as specified in Annex to Agreement.

The seed and fertilizer will be sold, **in the project locations only**, to farmers included in this project at prices not exceeding those shown below. These reflect the price agreed by ACBAR based on a 25% subsidized rate of average current market prices in Eastern/South Western Afghanistan:

| | | |
|---|---|---|
| DAP per 50 kg bag | Pak. Rupees | 300 or local equivalent in Afghanis |
| UREA per 50 kg bag | Pak. Rupees | 218 or local equivalent in Afghanis |
| UREA per 75 kg 1 1/2 bag | Pak. Rupees | 327 or local equivalent in Afghanis |
| Improved wheat seed per 50 kg bag | Pak. Rupees | 263 or local equivalent in Afghanis |

Details of the conditions of sale are set out in the Annex to the Agreement.

The above reflect ceiling prices based on a value quoted in Pakistani Rupees, but which may be calculated locally in Afghanis at the current local rate of exchange in the place and at the time.

These prices have been generally agree but may be modified to a level below this ceiling if the local economic situation justifies this and is agreed by all other I.Ps working in the same province.

The funds so obtained in the case of this project are considered sufficient to cover all the I.P - project costs including staff salaries, wages, administration, management and logistic costs.

No additional cash funds will be provided by FAO in the case of this project.

1

If I.P management costs are being covered by alternative sources of funding the cash funds so obtained from the sale of seed and fertilizer must be used by the I.P for some declared purpose of activity which is of direct benefit to the target community identified in the document.

The I.P is obliged under this agreement to employ a technically qualified person resident in the field in the project location to provide agricultural advice to the farmers. He must have at least a diploma in Agriculture and must receive a minimum salary equivalent of Pak. Rupees 4,000 per month.

The I.P. will be responsible for the proper administration and management of this crop/seed production project, and the delivery of the desired results, subject to the following general conditions from the beginning and throughout the duration of the project.

## GENERAL CONDITIONS

1. The inputs of seed and fertilizer and the funds provided by FAO are to be used exclusively for the purpose as described in Annex To Agreement.

2. The personnel employed by the I.P, or any other person co-opted by the I.P. will not be;

   a. permitted to incur any commitment or expenditure on behalf of the FAO.
   b. considered in any way as staff member of FAO, and thus not entitled to any privileges, immunities, compensation, or insurance cover normally accorded to FAO staff.

   The I.P. is expected to provide for its own insurance in respect of any accident, illness, damage or loss that may occur while the assigned project's (code No. KUN/CPA/LAB/02/94) activities/services are being undertaken/rendered.

3. The terms of reference under which the FAO/UN funds are committed to rehabilitation efforts in Afghanistan are being undertaken over a commitment to support efforts to eventually eradicate the cultivation of illicit crops.

   Support and Funding to the Province and District(s)/Sub-district(s) targeted is dependant upon the cooperation of the I.P. in this endeavor, and of the farmers in the area not to cultivate opium poppy (Papaver somniferum) (as set out in detail in Annex To Agreement, Special Considerations).

4. The FAO will hand over 5.5 MT of wheat seed, 6 MT DAP Fertilizer, and 10 MT Urea Fertilizer to the I.P. on a date to be determined at the WFP/UNILOG stores (Quetta/ Pirpai NWFP - unless otherwise agreed in mutual understanding).

5. The FAO will arrange for the transportation of the Seed/Fertilizer (unless otherwise agreed), through the agency of WFP/UNILOG acting as the UN's Logistic Unit.

6. The FAO will bear the cost of transportation of the seed/ fertilizer to the agreed project location (unless otherwise agreed).

7. The I.P. will ensure the delivery of the SEED/FERTILIZER to the final destination, in the selected localities and villages in Afghanistan.

8. The I.P. undertakes to distribute the SEED/FERTILIZER in a timely and correct fashion in the localities, and villages specified in the agreement, to farmers and/or farmers' representatives, and in full agreement with the local communities; for the purpose of rehabilitation of agricultural, crop and seed production.

9. The I.P. shall take full responsibility for the SEED/ FERTILIZER after consignment, once it has been handed over at the point of despatch. ie the WFP/UNILOG stores,(Quetta Balochistan/ Pirpai NWFP)