EXHIBIT 24

Joint Doctrine of Detainee Operations, Publication 3-63, March 23, 2005 (excerpt)

# Joint Publication 3-63

 

# Joint Doctrine for Detainee Operations



# Final Coordination
# 23 March 2005

 



Introduction

exclusively.  2. Chaplains attached to enemy armed forces. 3. Staff or National Red Cross societies and other voluntary aid societies duly recognized and authorized by their governments. The staff of such societies must be subject to military laws and regulations. (Article 33 of the GPW and revision of AR 190-8).

(4) **Other Detainees (OD).** A person in the custody of US armed forces that has not yet been classified as an EPW, CI or RP. OD is treated as EPW until a different legal status and accordant treatment is established by competent authority in accordance with procedures established by law and policy. (JP 1-02 and revision of AR 190-8).

c. **Additional Classification.** In reference to the Global War on Terror there is an additional classification of detainees who, through their own conduct, are not entitled to the privileges and protection of the Geneva Conventions. These personnel, when detained, are classified as enemy combatants.

(1) **Enemy Combatant (EC).** Although they do not fall under the provisions of the Geneva Convention, they are still entitled to be treated humanely, subject to military necessity, consistent with the principles of GC, and without any adverse distinction based on race, color, religion, gender, birth, wealth, or any similar criteria, and afforded adequate food, drinking water, shelter, clothing, and medical treatment; allowed the free exercise of religion consistent with the requirements of such detention. There is a comprehensive list of terrorists and terrorist groups identified under Executive Order 13224, located at http://www.treas.gov/ofac/. Anyone detained that is affiliated with these organizations will be classified as EC. Furthermore, there

Chapter I

are individuals that may not be affiliated with the listed organizations that may be classified as an EC. On these specific individuals, guidance should be obtained from higher headquarters. As defined by the Deputy Secretary of Defense, an EC is defined as:

> "Any person that US or allied forces could properly detain under the laws and customs of war. For purposes of the war on terror an enemy combatant includes, but is not necessarily limited to, a member or agent of Al Qaeda, Taliban, or another international terrorist organization against which United States is engaged in an armed conflict. This may include those individuals or entities designated in accordance with references E or G, as identified in applicable Executive Orders approved by the Secretary of Defense."
>
> **Deputy Secretary of Defense global screening criteria, Feb 20, 2004**

*Reference E – Comprehensive List of Terrorists and Terrorist Groups Identified Under Executive Order 13224 (updates at http://www.treas.gov/ofac)*

*Reference G Patterns of Global Terrorism. Department of State, 2002 (updates at http://www.state.gov/s/ct/rls/pgtrpt/).*

(2) Enemy combatants may be identified into the following sub-categories:

(a) **Low Level Enemy Combatant (LLEC).** Detainees who are not a threat beyond the immediate battlefield or that do not have high operational or strategic intelligence or

# EXHIBIT 25

Deputy Secretary of Defense England
Memorandum dated July 7, 2006



**OFFICE OF THE SECRETARY OF DEFENSE**
WASHINGTON, DC 20301

JUL 7 2006

MEMORANDUM FOR SECRETARIES OF THE MILITARY DEPARTMENTS
    CHAIRMAN OF THE JOINT CHIEFS OF STAFF
    UNDER SECRETARIES OF DEFENSE
    COMMANDERS OF THE COMBATANT COMMANDS
    ASSISTANT SECRETARIES OF DEFENSE
    GENERAL COUNSEL OF THE DEPARTMENT OF DEFENSE
    DIRECTOR, OPERATIONAL TEST AND EVALUATION
    INSPECTOR GENERAL OF THE DEPARTMENT OF DEFENSE
    ASSISTANTS TO THE SECRETARY OF DEFENSE
    DIRECTOR, ADMINISTRATION AND MANAGEMENT
    DIRECTOR, PROGRAM ANALYSIS AND EVALUATION
    DIRECTOR, NET ASSESSMENT
    DIRECTOR, FORCE TRANSFORMATION
    DIRECTORS OF THE DEFENSE AGENCIES
    DIRECTORS OF THE DOD FIELD ACTIVITIES

SUBJECT:   Application of Common Article 3 of the Geneva Conventions to the Treatment of Detainees in the Department of Defense

    The Supreme Court has determined that Common Article 3 to the Geneva Conventions of 1949 applies as a matter of law to the conflict with Al Qaeda. The Court found that the military commissions as constituted by the Department of Defense are not consistent with Common Article 3.

    It is my understanding that, aside from the military commission procedures, existing DoD orders, policies, directives, execute orders, and doctrine comply with the standards of Common Article 3 and, therefore, actions by DoD personnel that comply with such issuances would comply with the standards of Common Article 3. For example, the following are consistent with the standards of Common Article 3: U.S. Army Field Manual 34-52, "Intelligence Interrogation," September 28, 1992; DoD Directive 3115.09, "DoD Intelligence Interrogation, Detainee Debriefings and Tactical Questioning," November 3, 2005; DoD Directive 2311.01E, "DoD Law of War Program," May 9, 2006; and DoD Instruction 2310.08E, "Medical Program Support for Detainee Operations," June 6, 2006. In addition, you will recall the President's prior directive that "the United States Armed Forces shall continue to treat detainees humanely," humane treatment being the overarching requirement of Common Article 3.

    You will ensure that all DoD personnel adhere to these standards. In this regard, I request that you promptly review all relevant directives, regulations, policies, practices, and procedures under your purview to ensure that they comply with the standards of Common Article 3.

OSD 10735-06



7/7/2006 4:37:09 PM

Your reply confirming completion of this review should be submitted by a Component Head, General/Flag Officer, or SES member, including a reply of "reviewed and no effect" where applicable, to the Deputy Assistant Secretary of Defense (DASD) for Detainee Affairs, Office of the Under Secretary of Defense for Policy, no later than three weeks from the date of this memorandum. The DASD for Detainee Affairs may be reached at (703) 697-4602.

The text of Common Article 3 follows:

> In the case of armed conflict not of an international character occurring in the territory of one of the High Contracting Parties, each Party to the conflict shall be bound to apply, as a minimum, the following provisions:
>
> (1) Persons taking no active part in the hostilities, including members of armed forces who have laid down their arms and those placed *hors de combat* by sickness, wounds, detention, or any other cause, shall in all circumstances be treated humanely, without any adverse distinction founded on race, colour, religion or faith, sex, birth or wealth, or any other similar criteria.
>
> To this end, the following acts are and shall remain prohibited at any time and in any place whatsoever with respect to the above-mentioned persons:
>
>     (a) violence to life and person, in particular murder of all kinds, mutilation, cruel treatment and torture;
>     (b) taking of hostages;
>     (c) outrages upon personal dignity, in particular, humiliating and degrading treatment;
>     (d) the passing of sentences and the carrying out of executions without previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples.
>
> (2) The wounded and sick shall be collected and cared for.
>
> An impartial humanitarian body, such as the International Committee of the Red Cross, may offer its services to the Parties to the conflict.
>
> The Parties to the conflict should further endeavour to bring into force, by means of special agreements, all or part of the other provisions of the present Convention.
>
> The application of the preceding provisions shall not affect the legal status of the Parties to the conflict.

*[signature: Gordon England]*