EXHIBIT 26

DOD Guantánamo Website
February 9, 2006, Press Statements
regarding 134 Detainees



**U.S. Department of Defense**
Office of the Assistant Secretary of Defense (Public Affairs)

# News Release

On the Web:
http://www.defenselink.mil/Releases/Release.aspx?ReleaseID=9302
Media contact: +1 (703) 697-5131/697-5132

Public contact:
http://www.dod.mil/faq/comment.html
or +1 (703) 428-0711 +1

**IMMEDIATE RELEASE**

**No. 124-06**
**February 09, 2006**

### Guantanamo Bay Detainee Administrative Review Board Decisions Completed

The Department of Defense announced today the completion of the first round of Administrative Review Board (ARB) decisions. All of the hearings for this first round were conducted from Dec. 14, 2004, to Dec. 23, 2005. Deputy Secretary of Defense Gordon R. England, the Designated Civilian Official (DCO) for the ARB process, has made final decisions on all 463 board recommendations; these decisions consist of 14 releases (3 percent), 120 transfers (26 percent) and 329 continue to detain (71 percent).

The ARB is a review process conducted annually to determine whether each detainee should be released, transferred or further detained. The outcome is based primarily on threat assessment and intelligence value of each detainee. This is a discretionary and unprecedented process that is not required by the Geneva Convention or by U.S. or international law.

During the review, each eligible enemy combatant is given the opportunity to appear in person before an ARB panel of three military officers and provide information to support his release. The enemy combatant is provided a military officer to assist him throughout the ARB process. In advance of the ARB hearing, information bearing on this assessment is also solicited from DoD and other U.S. government agencies, and from the family and national government of the enemy combatant, through the Department of State. Based on all the information provided, the ARB makes a recommendation to the DCO who makes the final decision whether to release, transfer or continue to detain the individual. If the DCO determines that continued detention is warranted, the enemy combatant will remain in DoD control, and a new review date will be scheduled to ensure an annual review.

The review process is managed by the Office for the Administrative Review of the Detention of Enemy Combatants, headed by Rear Adm. James M. McGarrah.

EXHIBIT 27

Respondents' Brief in
*Hamdan v. Rumsfeld*, pp. 15-16

No. 05-184

# In the Supreme Court of the United States

SALIM AHMED HAMDAN, PETITIONER

*v.*

DONALD H. RUMSFELD, SECRETARY OF DEFENSE, ET AL.

*ON WRIT OF CERTIORARI TO THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT*

**BRIEF FOR RESPONDENTS**

PAUL D. CLEMENT
  *Solicitor General
    Counsel of Record*

PETER D. KEISLER
  *Assistant Attorney General*

GREGORY G. GARRE
  *Deputy Solicitor General*

GREGORY G. KATSAS
  *Deputy Assistant Attorney
    General*

JONATHAN L. MARCUS
KANNON K. SHANMUGAM
  *Assistants to the Solicitor
    General*

DOUGLAS N. LETTER
ROBERT M. LOEB
ERIC D. MILLER
  *Attorneys*

  *Department of Justice
  Washington, D.C. 20530-0001
  (202) 514-2217*

16

gress has independently authorized the use of military commissions in the current conflict.

2. a. In the AUMF, Congress authorized the use of military commissions in the ongoing conflict against al Qaeda. Congress recognized that "the President has authority under the Constitution to take action to deter and prevent acts of international terrorism against the United States," AUMF preamble, 115 Stat. 224, and authorized the President "to use all necessary and appropriate force against those nations, *organizations*, or *persons* he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, * * * in order to prevent any future acts of international terrorism against the United States," AUMF § 2a, 115 Stat. 224 (emphasis added).

In *Hamdi* v. *Rumsfeld*, 542 U.S. 507 (2004), a plurality of this Court concluded that the AUMF authorized the President to exercise his traditional war powers, and it relied on *Quirin* for the proposition that "the capture, detention, *and trial* of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war.'" *Id.* at 518 (quoting *Quirin*, 317 U.S. at 28, 30) (emphasis added). Likewise, in *Yamashita*, the Court explained that an "important incident to the conduct of war is the adoption of measures by the military commander, not only to repel and defeat the enemy, but to seize and subject to disciplinary measures those enemies who, in their attempt to thwart or impede our military effort, have violated the law of war." 327 U.S. at 11; see *Hirota*, 338 U.S. at 208 (Douglas, J., concurring) (noting that the Article II power includes the power "to punish those enemies who violated the law of war," which "is a part of the prosecution of war"). Because "[t]he trial and punishment of enemy combatants" (*Yamashita*, 327 U.S. at 11) is a fundamental incident of war, it follows that, in authorizing the President "to use all necessary and appropriate force" against al Qaeda, the

17

AUMF authorized the use of military commissions against enemy combatants, such as petitioner.

b. Congress has not only authorized the President to exercise his traditional war powers in the specific context of the armed conflict with al Qaeda; it has also specifically recognized his ongoing authority to invoke military commissions when he deems them necessary. Article 21 of the UCMJ, 10 U.S.C. 821, states that "[t]he provisions [of the UCMJ] conferring jurisdiction upon courts-martial do not deprive military commissions * * * of concurrent jurisdiction with respect to offenders or offenses that by the law of war may be tried by military commissions." That language originated in, and is identical in all material respects to, Article 15 of the Articles of War, which were enacted during World War I. See Act of Aug. 29, 1916, ch. 418, § 3, 39 Stat. 650 (Articles of War). In the Articles of War, Congress extended the jurisdiction of courts-martial to offenses and offenders that had traditionally fallen within the jurisdiction of military commissions, while preserving the institution and jurisdiction of the commissions. See *Madsen*, 343 U.S. at 349-355. The main proponent of Article 15 testified that, as Congress was extending the jurisdiction of courts-martial, it was vital to make clear that the military commissions' "common law of war jurisdiction was not ousted." S. Rep. No. 229, 63d Cong., 2d Sess. 53, 98-99 (1914) (testimony of Judge Advocate General Crowder).

Moreover, this Court has construed Article 15 as having "*authorized* trial of offenses against the laws of war before such commissions." *Quirin*, 317 U.S. at 29 (emphasis added). Although the language of this authorization in Article 15 seems indirect, that simply recognizes that Congress was adding its imprimatur to a practice with a long history which did not depend on express statutory authorization. When Congress enacted Article 21 of the UCMJ, it merely recodified Article 15 of the Articles of War. See S. Rep. No.

# EXHIBIT 28

Administrative Review Board
memorandum of September 14, 2004
(cover sheet)



Department of Defense
Designated Civilian Official
Administrative Review of the Detention of Enemy Combatants
at U.S. Naval Base Guantanamo Bay, Cuba

September 14, 2004

MEMORANDUM FOR: SEE DISTRIBUTION

SUBJECT: Implementation of Administrative Review Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba

References: (a) Deputy Secretary of Defense Order OSD 06942-04 of May 11, 2004
(b) Deputy Secretary of Defense Memo of June 4, 2004
(c) Deputy Secretary of Defense Memo of May 22, 2004
(d) Military Order of November 13, 2001, "Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism," 66 C.F.R. 57833 (November 16, 2001)

Enclosures: (1) Flow Diagram for Administrative Review Procedures
(2) Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba
(3) Administrative Review Board Process
(4) Administrative Review Board Process Step-by-Step
(5) Sample Nomination Questionnaire
(6) Sample Administrative Review Board Designation Letter
(7) Sample Designated Military Officer Designation Letter
(8) Sample Assisting Military Officer Designation Letter
(9) Designated Military Officer Qualifications, Roles, and Responsibilities
(10) Assisting Military Officer Qualifications, Roles, and Responsibilities
(11) Administrative Review Board Transcript Guide
(12) Sample Assessment and Recommendation Letter

1. Introduction.

a. The Deputy Secretary of Defense has established Administrative Review Procedures to determine annually if enemy combatants[1] detained by the Department of Defense at the U.S. Naval Base Guantanamo Bay, Cuba should be released, transferred or continue to be detained. This directive implements reference (a) in accordance with paragraph 7 of that order. Reference (b) amends reference (a); those amendments are reflected in this directive. A Designated Civilian Official (DCO) has been named by the Secretary of Defense to operate and oversee this program and to be the final decision authority. Reference (c) designates the undersigned as the DCO.

---

[1] An enemy combatant is defined as an individual who was part of or supporting Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces.

EXHIBIT 29

Map of Afghanistan and Pakistan

EXHIBIT 29

Map of Afghanistan and Pakistan

