PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

**Steven T. Wax, OSB #85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, Oregon  97204**
**Tel:  503-326-2123**
**Fax:  503-326-5524**
**steve_wax@fd.org**
**Attorney for Petitioner**

**Patrick J. Ehlers, OSB #04118**
**Assistant Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, Oregon  97204**
**Tel:  503-326-2123**
**Fax:  503-326-5524**
**patrick_ehlers@fd.org**
**Attorney for Petitioner**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADEL HASSAN HAMAD,**<br><br>                              **Petitioner,**<br>v.<br>**GEORGE W. BUSH, DONALD RUMSFELD, JAY HOOD, and BRICE GYURISKO,**<br><br>                              **Respondents.** | CV 05-1009 JDB<br><br>REPLY TO RESPONDENTS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO PETITIONERS' MOTIONS TO LIFT OR MODIFY STAY<br><br>**(ORAL ARGUMENT REQUESTED)** |

By Motion dated September 21, 2006, Petitioner, Adel Hassan Hamad, moved

this Court to lift or modify the stay of proceedings entered by this Court on June 27,

PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

2005, and to address the merits of the Motion for Summary Judgment that he filed on the same day. In response, Respondents's filed a Consolidated Memorandum in Opposition to Petitioners' Motions to Lift Stay that was not specific to the motion filed by Mr. Hamad but, rather, addressed Motions to Lift Stay filed in five separate cases. While two of the other cases (*Gul v. Bush,* CV 05-0888 and *Al Ginco v. Bush*, CV 05-1310) involve issues similar to those presented by Mr. Hamad, the other two cases bear no relation to Mr. Hamad's case. Mr. Hamad believes that the unique facts of his case warrant individualized consideration and demonstrate that he is being irreparably harmed by every additional day of delay.

I.   **IMMEDIATE ACTION IS REQUIRED TO ADDRESS MR. HAMAD'S IRREPARABLE INJURY**

In his Motion to Lift or Modify Stay, Mr. Hamad presented this Court with unique and compelling facts in the form of eight sworn statements and other exhibits from witnesses in Afghanistan, Pakistan, and Sudan that conclusively demonstrate that Mr. Hamad is an innocent aid worker; is not, and never has been, involved in or supported any terrorist activities, al-Qaeda or the Taliban; and holds views that are antithetical to those held by either the Taliban or al-Qaeda. Motion to Lift Stay at pp. 2, 6, 26; Exhibits to Motion for Summary Judgment and Motion to Lift or Modify Stay.[1] In their response, Respondents have not addressed those facts in any manner. Their failure to do so

---

[1] Petitioner submitted his exhibits in support of both the Motion to Lift or Modify Stay and his Motion for Summary Judgment. The Motion to Lift or Modify Stay referenced the Motion for Summary Judgment. The full pleading in support of the Motion for Summary Judgment is hereby explicitly incorporated by reference.

**Page 2   REPLY TO RESPONDENTS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO PETITIONERS' MOTIONS TO LIFT OR MODIFY STAY**

PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

should be viewed as a concession by Respondents that Mr. Hamad is, indeed, an innocent aid worker who has never taken any acts that could render him an enemy combatant.  *See United States v. Hale*, 422 U.S. 171, 176 (1975) (the failure to contest an assertion is considered evidence of acquiescence if it would have been natural under the circumstances to object to the assertion in question); *see generally* 5 Weinstein's Federal Evidence § 801.31[3][d] at 801-57 (2d ed. 2004).  Assuming, as the Court now should, that the facts presented by Mr. Hamad are true, the record of this case is clear beyond cavil that immediate action by this Court is necessary to prevent the continued irreparable harm of incarceration of an innocent man whose detention is indeed "unconscionable," the word used by the dissenting Major in the Combatant Status Review Tribunal (CSRT) proceedings.

In his Motion to Lift or Modify Stay, Mr. Hamad presented this Court with legal authority that the government has not, and cannot, challenge, that it is the obligation of this Court to address the merits of Mr. Hamad's habeas corpus claims.  Motion to Lift Or Modify Stay at pp. 2-5.  The Respondents' failure to address Mr. Hamad's legal arguments regarding the obligations of the federal judiciary to promptly address claims raised in habeas corpus petitions should, similar to their failure to contest the facts, be viewed by this Court as a concession of the correctness of Mr. Hamad's legal position.

Mr. Hamad has made a sufficient showing to justify lifting the stay.  Respondents should no longer be permitted to hide the truth within a procedural morass, nor postpone consideration of irreparable injury-in-fact, by forcing Mr. Hamad to stand at the

PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

end of a very long queue of dissimilar cases in which no innocence investigation has been undertaken or submitted to a court of law.

## II. MR. HAMAD'S CASE PRESENTS A JURISDICTIONAL ISSUE THAT IS NOT BEFORE THE COURT OF APPEALS

In his Motion for Summary Judgment and Motion to Modify or Lift Stay, Mr. Hamad argues that the Department of Defense has no jurisdiction over him because the allegations against him set forth in Respondents' return to his petition for writ of habeas corpus do not set out any of the predicate facts which would support military jurisdiction over him as an enemy combatant, or prisoner of war. Put another way, no military proceeding, CSRT or otherwise, is a competent tribunal to hear the allegations set out in the return. While some issues that Mr. Hamad raises are before the Circuit Court, the jurisdictional issue is determinative, not presented in the Circuit Court, and would avoid the major constitutional challenges.

Respondents ignore the fact that Mr. Hamad argues that the Department of Defense never had, and cannot have, any jurisdiction over him because he was a civilian aid worker seized in the night from his bed, while residing in an ally of this country, rather than a person seized on a battlefield in the midst of a war. Respondents further ignore the fact that the allegations against Mr. Hamad include nothing that fits within the definition of enemy combatant, nor involve anything that could constitute a violation of the laws of war.

Not only is this issue not raised in the appeal by some of the petitioners, the

PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

district court in *Kahlid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005), stated:

> The petitioners have conceded, as they must, that the military orders given to capture and initially detain them were lawful orders.

*Kahlid*, 335 F. Supp. 2d at 329.  Mr. Hamad makes no such concession.

Mr. Hamad's argument that Respondents have no jurisdiction over him and that this Court has jurisdiction to decide that issue is grounded in the long established proposition that the federal courts retain authority to determine whether they have jurisdiction.  *See United States v. United Mine Workers*, 330 U.S. 258, 291 (1947).  On this issue, the opinion in *Ex Parte Milligan*, 71 U.S. 2, 18 L.Ed. 281 (1866), is instructive.  In discussing the authority of the courts to address Milligan's claims, the Supreme Court stated:

> The suspension of the privilege of the writ of habeas corpus does not suspend the writ itself.  The writ issues as a matter of course; and on the return made to it the court decides whether the party applying is denied the right of proceeding any further with it.

71 U.S. at 131.  The Court then went on to consider whether the facts showed "that Milligan was a prisoner of war, and, therefore, excluded from the privilege of the statute."  *Id.*  The Court concluded that he was not a prisoner of war, was not covered by the suspension statute and, therefore, the writ was to issue.  *Id.*  Similarly, in *Duncan v. Kahanamoku,* 327 U.S. 304 (1946), the Court took jurisdiction and determined that the petitioner did not fall within the class of people to whom the Hawaiian martial law declaration applied and precluded habeas corpus relief.  Mr. Hamad presents an analogous argument:  under no circumstances can he be considered an "enemy

Page 5   REPLY TO RESPONDENTS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO
        PETITIONERS' MOTIONS TO LIFT OR MODIFY STAY

PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

combatant" under the definitions promulgated by the Department of Defense, set out in *Hamdan*, or by Congress in the Military Commissions Act of 2006 (MCA).[2]

Neither the Detainee Treatment Act (DTA) nor MCA reach Mr. Hamad. The stay should be modified or lifted to address the merits of Mr. Hamad's case.

## III. RESPONDENTS' OPPOSITION MISREADS OR IGNORES RELEVANT LAW AND FACTS

### A. Respondents' Reliance On Footnote 14 In *Hamdan* Is Inapposite

Respondents argue that this Court should refrain from lifting the stay and addressing Mr. Hamad's claims based on its belief that footnote 14 in *Hamdan v. Rumsfeld*, ___ U.S. ___, 126 S. Ct. 2749, 2769, n.14, renders the DTA applicable to his case. Opposition at 3.

Respondents misread the import of footnotes 14 and 15 in *Hamdan*. To be sure, the Supreme Court noted in *Hamdan* that certain challenges presented in habeas corpus cases could be viewed as challenges to final decisions of a CSRT and, thus, fall within subsections (e)(2) or (e)(3) of the Detainee Treatment Act. Respondents ignore, however, the more general conclusion reached by the Supreme Court in footnote 15 that "section 1005(e)(1) does not strip federal courts' of jurisdiction over cases pending

---

[2]In footnote 3 of their Opposition, Respondents note that Congress recently passed the MCA which includes a new amendment to 28 U.S.C. § 2241. The MCA provides no greater reason for staying these proceedings than the DTA. If Respondents assert, after the MCA becomes law, that it divests this Court of jurisdiction, the Court should modify or lift the stay and address that issue. The MCA has no application to this case for the jurisdictional reason set out herein as well as for the substantial reasons based in statutory construction and constitutional analysis set out in Mr. Hamad's previous filing. Motion to Lift Stay at pp. 10-26.

**Page 6    REPLY TO RESPONDENTS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO PETITIONERS' MOTIONS TO LIFT OR MODIFY STAY**

PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

on the date of the DTA's enactment . . . ." 126 S. Ct. at 2769, n.15.  The Court drew no distinction between habeas corpus challenges by petitioners who had been charged in commission proceedings and those who had not.  The *Hamdan* holdings on jurisdiction, the applicability of the laws of war, and the Geneva Conventions are equally applicable to a petitioner in Mr. Hamad's situation as they were to Mr. Hamdan.

> **B. The Writ Of Habeas Corpus Requires Prompt Action By The Federal Judiciary**

Respondents argue that the constitutional avoidance and constitutional arguments against application of the DTA raised by Mr. Hamad are currently pending before the District of Columbia Circuit Court and that this Court should allow that Court to resolve those questions in the first instance.  Opposition at 5-6.  Those arguments should be rejected because Respondents ignore the teachings of *Yong v. I.N.S.*, 208 F.3d 1116 (9th Cir. 2000) and *McClellan v. Young,* 421 F.2d 690, 691 (6th Cir. 1970), that the federal courts should not stay proceedings in habeas corpus cases solely because the same issue is present in other cases as well.  Hearing Mr. Hamad's claims is particularly appropriate because the Court has been presented with a factual record that conclusively demonstrates the unlawfulness of his detention and the irreparable harm that he suffers by every additional day of delay.

> **C. Due To The Uniqueness Of This Case, No Cascade Effect Is Likely.**

Respondents argue that lifting or modifying the stay in Mr. Hamad's case will cause a "cascade effect" and "chain reaction" in other Guantánamo cases.  Opposition

PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

at pp. 7-8. Unlike the other hundreds of petitioners with cases pending before the district courts, Mr. Hamad stands with only two other petitioners whose counsel have concluded investigations of innocence and in which the evidence resulting from those investigations has been presented to the district courts. The actual innocence investigation in Mr. Hamad's case creates a record of irreparable injury absent in the other Guantánamo cases. The Court should reject Respondents' argument that chaos will ensue from lifting the stay in Mr. Hamad's case and proceed to consider the evidence and issues set forth in his Motion for Summary Judgment. To the extent other detainees are able to make a similar showing, all courts should promptly resolve their claims.

## CONCLUSION

For all the reasons set forth herein and in his original filing, Mr. Hamad urges this Court to modify or lift the stay and direct Respondents to file a response to his motion for summary judgment within 14 days.

Respectfully submitted this 13th day of October, 2006.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Patrick J. Ehlers
Patrick J. Ehlers
Assistant Federal Public Defender