PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

**Steven T. Wax, OSB #85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, Oregon 97204**
**Tel:   503-326-2123**
**Fax:   503-326-5524**
**steve_wax@fd.org**
**Attorney for Petitioner**

**Patrick J. Ehlers, OSB #04118**
**Assistant Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, Oregon 97204**
**Tel:   503-326-2123**
**Fax:   503-326-5524**
**patrick_ehlers@fd.org**
**Attorney for Petitioner**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADEL HASSAN HAMAD,** | CV 05-1009 JDB |
| Petitioner, | |
| v. | **REPLY TO NOTICE OF MILITARY COMMISSIONS ACT OF 2006** |
| **GEORGE W. BUSH, DONALD RUMSFELD, JAY HOOD, and BRICE GYURISKO,** | |
| **Respondents.** | |

On October 18, 2006, Respondents filed a generic Notice of Military

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

Commissions Act of 2006 (MCA) in numerous habeas corpus cases involving people imprisoned by the Department of Defense in Guantánamo Bay, Cuba. (CR66). In that notice, Respondents appear to be taking the position that the MCA strips this Court of jurisdiction over Mr. Hamad's habeas corpus case. The Notice followed Respondents' previous advice to this Court of the passage of the MCA in footnote 3 of their Consolidated Memorandum in Opposition to Petitioner's Motions to Lift Stay. (CR 58).

In his Reply to Respondents' Memorandum in Opposition to Petitioner's Motions to Lift or Modify Stay, Mr. Hamad noted the passage of the MCA and its inapplicability to his case. (CR 67). In this pleading, Mr. Hamad expands on his arguments regarding the need for immediate action by the Court, the inapplicability of the MCA to his situation, and the reasons why any effort to apply the MCA in the manner suggested by the Respondents would run afoul of the Constitution.

## I. IMMEDIATE ACTION BY THIS COURT IS REQUIRED TO ADDRESS THE IRREPARABLE INJURY THAT MR. HAMAD CONTINUES TO SUFFER

In his previous pleadings, Mr. Hamad has presented this Court with compelling facts that conclusively demonstrate that he is an innocent aid worker; is not, and never has been, involved in or supported any terrorist activities, al Qaeda or the Taliban; and holds views that are antithetical to those held by either of those entities. Mr. Hamad has also presented the Court with a clear body of law that defines habeas corpus as a writ

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

of fundamental importance in our constitutional structure and a writ whose consideration cannot be delayed for purposes of administrative convenience.  When an individual has presented a court with compelling facts demonstrating that he is being held in violation of the laws and Constitution of the United States, prompt inquiry by the Judiciary into the legality of the detention is required.

The importance of prompt consideration of the issues presented by Mr. Hamad requires this Court to modify or lift the stay and address his claims.  The fact that similar issues have been presented to other courts should not deter this Court from fulfilling its constitutional obligations.  Moreover, as argued in the pleadings previously filed with this Court and herein, the facts of Mr. Hamad's case are such that the Court can reach the merits of his claims without addressing the issues that are currently presented in other cases pending in this Court and in the DC Circuit Court of Appeals.

II. **RESPONDENTS' INTERPRETATION OF THE MCA RENDERS THE STATUTE UNCONSTITUTIONAL**

    A. **If Construed To Preclude Habeas Corpus Review, The MCA Would, On Its Face, Violate The Due Process Clause, The Separation Of Powers, The Authority Of The Judiciary Under Article III, And The Suspension Clause**

        1. **Our Constitutional Structure Requires Judicial Review Of Executive Detention**

In his Motion to Lift or Modify Stay, Mr. Hamad argued that the construction of

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

the DTA sought by Respondents would violate the separation of powers and due process. Unlike the DTA, which purported to strip the federal courts of jurisdiction based on geography, the MCA purports to strip jurisdiction based on a factual determination by the Executive that would, in many habeas corpus cases, be the very issue on which the Court would need to rule were it addressing the substance of the case.

The Due Process Clause of the Fifth Amendment applies to all persons, not just citizens. *See Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). In our government with its three separate branches, due process has historically required that the body that decides whether particular governmental action is lawful must be different from the body that performs that particular action. Thus, the attempt in the MCA to exclude the Judiciary from determining the legality of the Executive's detention violates the protections of the Due Process Clause, the separation of powers that the due process clause requires, and the authority of the Judiciary under Article III.

The case law is replete with discussions of the unconstitutionality of collapsing into any one branch of our government the duties that are assigned to the others. As the court stated in granting writs of habeas corpus in *Duncan v. Kahanamoku*, 327 U.S. 304, 322 (1946), the "founders" "were opposed to governments that placed in the hands of one man the power to make, interpret and enforce the laws." *See e.g.,*

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

*Mistretta v. United States*, 488 U.S. 361, 390 n.17 (1988) (noting constitutional problem if Congress assigned judicial responsibilities to the Executive); *United States v. Klein,* 80 U.S. 128, 147 (1872) (invalidating statute that unconstitutionally strips Supreme Court of jurisdiction in violation of separation of powers); *Ex Parte Milligan*, 71 U.S. 2, 131 (1866) (deciding jurisdictional question of whether Milligan was a prisoner of war to whom suspension of habeas corpus applied); *Nasuti v. Scannell*, 906 F.2d 802 (1st Cir. 1990) (recognizing separation of powers problem with statute that leaves the Attorney General as the sole judge of an issue determinative of federal court jurisdiction). The jurisdiction-stripping provision of the MCA is at odds with 800 years of Anglo-American history that sought to rein in the unbridled power of the Executive (in the form of a king) and distribute that power among three co-equal branches of government.1

---

1       The MCA was approved in the Senate on a vote of 51 to 48. In a debate regarding a proposed amendment to the MCA that would have left habeas corpus for detainees intact, Republican Senator Gordon Smith of Oregon echoed the sentiment of many Senators, in both parties, who opposed the MCA's habeas-stripping provision:

> Permanent detention of foreigners without reason damages our moral integrity regarding international rule of law issues. To quote: 'History shows that in the wrong hands, the power to jail people without showing cause is a tool of despotism.' A responsibility this Nation has always assumed is to ensure that no one is held prisoner unjustly. Stripping courts of their authority to hear habeas claims is a frontal attack on our judiciary and its institutions, as well as our civil rights laws. Habeas corpus is a cornerstone of our constitutional order, and a suspension of that

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

### 2. Our Constitutional Structure Requires The Writ Of Habeas Corpus As A Judicial Check On The Legality Of Executive Detention Remain Available Except In Very Limited And Clearly Defined Circumstances

While Congress's action in the MCA can be viewed as a suspension of the writ, albeit a permanent suspension, it is more appropriately described not as a "suspension" within the meaning of Article 1, § 9, Clause 2, but, rather, as a total elimination of the writ for a certain class of people. The concept of "suspension" of the writ of habeas corpus contained in the Constitution is necessarily one involving temporal constraints. In the two limited circumstances set forth in the Constitution, "rebellion" or "invasion," Congress may suspend the writ. When, however, the crisis that necessitates the suspension has passed, the suspension is no longer in place and the writ is once again available. Congress has recognized this limitation in the rare instances in which the writ has been suspended. *See*, *e.g.,* 12 Stat. 775 (the statute suspending the writ in 1863

---

> right, whether for U.S. citizens or foreigners under U.S. control, ought to trouble us all.
> . . . .
> Some of the darkest hours in our Nation's history have resulted from the suspension of habeas corpus, notably the internment of Japanese American during World War II.
> . . . .
> We ought not to suspend the writ of habeas corpus. We should go the extra mile, not as a sign of weakness, but as evidence of our strength.

152 Cong. Rec. S10354-02, S10364 (daily ed. September 28, 2006).

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

provided for suspension "during the present rebellion"). By contrast, the MCA does not purport to suspend the writ. Rather, it seeks to eliminate it for a particular class of people who meet a particular definition.

As argued in his Motion to Lift or Modify Stay, the fact that the only reference in the Constitution to the writ of habeas corpus solely is found in the Suspension Clause presupposes the existence of the writ of habeas corpus and its availability by the Judiciary to test the legality of detention by the Executive for citizens and aliens alike. *See INS v. St. Cyr*, 533 U.S. at 301. Concomitantly, the fact that the Constitution only gives Congress the authority to suspend the writ in very limited circumstances necessarily means that Congress has no authority to eliminate the writ. *See* Laurence Claus, *The One Court That Congress Cannot Take Away: Singularity, Supremacy And Article III*, 63-70 (San Diego Legal Studies Research Paper Series No. 07-71, 2006), available at http://ssrn.com/abstract=935368; *United States v. Klein*, 80 U.S. 128, 145-48 (1872) (rejecting Congress's efforts to strip the Supreme Court of jurisdiction). Thus, the elimination of the writ in the MCA exceeds Congress's authority under Article I and under the Suspension Clause, invades the authority of the Judiciary under Article III, and violates Mr. Hamad's right to independent review of the executive detention under the Due Process Clause.

    **B.**    **As Applied To Mr. Hamad, The DTA And MCA Violate Due Process**

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

While the procedures remaining to detainees under the MCA are unconstitutional and inadequate on their face, they are also unconstitutional and inadequate as applied in this case. With relatively little effort, and only through the assistance of counsel in this habeas case, Mr. Hamad was able to gather the exhibits that have been submitted to the Court. (CR 59). The CSRT procedure did not permit him, as an incarcerated person without any access to counsel or investigation, to have any possibility of generating this information. The Department of Defense made no effort to investigate or confirm Mr. Hamad's claims of innocence in its own right. Review of the voluminous records produced by the Department of Defense in response to litigation by the Associated Press reveals similar gross inadequacies in all other CSRT proceedings. Only this Court through habeas corpus can provide adequate protections and process to do justice. *See Hamdi,* 542 U.S. at 534-36 (process is due when a decision is made to continue holding a person who has been seized on a battlefield and courts are to inquire into the individual case).

    **C.**    **If The MCA And DTA Are Construed To Preclude Habeas Corpus Review Through 28 U.S.C. § 2241, Mr. Hamad Is Entitled To Proceed In Habeas Corpus Under The Common Law And Constitutional Writs Of Habeas Corpus**

In his Motion to Lift or Modify Stay, Mr. Hamad argued that construction of the DTA as an abrogation of jurisdiction under 28 U.S.C. § 2241, would not preclude resort

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

to the common law or constitutional writ of habeas corpus and pointed out the strong support in Supreme Court jurisprudence and in the history of the writ. The arguments raised therein are equally applicable to any construction of the MCA which works the same result. This Court would then be required to hear the petition or refer the case to the Supreme Court for consideration of Mr. Hamad's petition for writ of habeas corpus as an original writ before that court.

### D. Retroactive Application Of The Purported Jurisdiction-Stripping Legislation To Mr. Hamad Would Constitute A Bill Of Attainder

In his Motion to Modify or Lift Stay, Mr. Hamad argued that the DTA, if interpreted in the manner in which Respondents suggest, would constitute an unconstitutional Bill of Attainder. While the MCA purports to cover more individuals than were covered by the DTA, the portion of that statute that purports to address the pending petitions is infected by the same defects that rendered the DTA a Bill of Attainder: the statute applies to an identifiable group of plaintiffs in pending cases and results in loss of access to the courts and loss of liberty.

### III. THE DOCTRINE OF CONSTITUTIONAL AVOIDANCE IS APPLICABLE TO THIS CASE

More than 100 years ago, the Supreme Court held, with respect to construction of statutes, that

> The elementary rule is that every reasonable construction must be

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

resorted to in order to save a statute from unconstitutionality.
*Hooper v. California*, 155 U.S. 648, 657 (1895). When confronted with amendments to 28 U.S.C. § 2241 and 8 U.S.C. § 1252, that included a purported habeas corpus-stripping provision in *INS v. St. Cyr*, 533 U.S. 289 (2001), the Court provided further guidance with respect to the doctrine of constitutional avoidance:

> Second, if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible' . . . we are obligated to construe the statute to avoid such problems.

533 U.S. at 299-300 (citations omitted). Because the arguments against the constitutionality of the DTA and MCA are compelling, this Court must determine, under the doctrine of constitutional avoidance, whether the MCA is susceptible to a construction that is "fairly possible" that would save it from the constitutional infirmities. As set out below, such a construction is readily available.

    **A.**    **This Court Should Lift Or Modify The Stay Because Section 7 Of The MCA Is Inapplicable To Mr. Hamad's Case**

The essence of Mr. Hamad's argument is that: 1) the authority of the Department of Defense (DOD) to seize and detain individuals is limited; 2) the DOD does not, and never has, had jurisdiction over Mr. Hamad because he does not fall within the class of persons the DOD is authorized to seize and detain; 3) thus, no DOD tribunal has jurisdiction over Mr. Hamad or is competent to make any determinations with respect to

him; 4) any withdrawal of jurisdiction from the federal courts in the MCA is limited to those persons over whom the DOD has jurisdiction; 5) the federal courts always retain the authority to determine their own jurisdiction; 6) because Mr. Hamad is not within the class of persons the DOD was authorized to seize and detain or to whom section 7 of the MCA applies, either: (a) the MCA must be construed in a manner that results in the conclusion that he is not within the class of persons to whom the jurisdiction stripping provision can be applied, or, alternatively, (b) the Court should conclude that section 7 of the MCA violates several provisions of the Constitution and cannot be applied to Mr. Hamad's case.

### 1.  The MCA Is Inapplicable To Mr. Hamad's Case Because He Is Not An Enemy Combatant

As a preliminary matter, Respondents' notice makes no claim that the MCA has altered in any manner the authority of the Department of Defense to have seized, and to continue to detain, Mr. Hamad. He was not, and is not, an enemy combatant, nor an unlawful enemy combatant under any definitions of those terms.[2]

---

[2] The MCA uses a different definition of enemy combatant than did the Wolfowitz memorandum of July 7, 2004. The first definitional subsection of the MCA, 10 USC §948a(1)(i), is more restrictive than that in the July 7 memorandum and, if applicable to section 7, reinforces, through its use of the traditional terms "lawful enemy combatant" and "unlawful enemy combatant," the arguments Mr. Hamad has made that the authority of the DOD is cabined by the laws of war. *See Ex Parte Quirin,* 317 U.S. 1, 31 (1942). Subsection (ii) is broader but can have no application to Mr. Hamad under any

As argued in pleadings previously filed in this matter, Respondents' authority to seize and detain individuals in the military prison in Guantánamo Bay, Cuba, is limited by the authorization granted by Congress in the Authorization for the Use of Military Force (AUMF) of September 18, 2001, the laws of war, the Executive Order of November 13, 2001, and the definitions provided by the Department of Defense, to the extent they are authorized by the AUMF, other congressional action, and the laws of war.  *See Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006)*; Hamdi v. Rumsfeld*, 542 U.S. 507 (2004).  Seizure of a person who does not fall within the class of people who may be seized and imprisoned pursuant to that authority is unlawful because the Department of Defense has no authority over such a person and no tribunal constituted by the Department of Defense is competent to take any action with respect to any such person.  Mr. Hamad is not within the class of persons the DOD may seize and detain.  Hence, the MCA is inapplicable to his case.

> **2.     Mr. Hamad Does Not Fall Within The Class Of People, "Aliens" "Properly Detained" as "Enemy Combatants," For Whom The MCA Purports To Strip Jurisdiction Over Habeas Corpus Cases From The Federal Courts**

Section 7(a) of the MCA added a new section to 28 U.S.C. § 2241, (e)(1), that purports to strip the federal courts of jurisdiction over habeas corpus cases:

---

circumstances because it is infected by the same constitutional violations that Mr. Hamad has addressed with respect to the DTA and sets out in this pleading.

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

> No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

The key phrases in this section of the statute involve the "determine[ation]" that an alien has been "properly detained" as "an enemy combatant." Mr. Hamad does not fit this definition.

The rules of statutory construction require this Court to give meaning to every word in the statute. "'[E]very clause and word of a statute'" should, "'if possible,'" be given "'effect.'" *Chickasaw Nation v. U.S.,* 534 U.S. 84, 93 (2001) (citing *United States v. Menasche,* 348 U.S. 528, 538-539 (1955)). A "'statute must, if possible, be construed in such fashion that every word has operative effect.'" *Landgraf v. USI Film Products,* 511 U.S. 244, 295 (1994) (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 36 (1992) (quoting *United States v. Menasche,* 348 U.S. at 538-539. This requires the Court to give the term "properly," a modifier in the statute of the term "detained," meaning. Doing so makes clear that not all "enemy combatants," nor all people who have been "determined to be enemy combatants," but only people who have been "properly" detained as enemy combatants, are subject to the statute that purports to strip jurisdiction from the federal courts. Mr. Hamad does not fit any definition of the phrase "enemy combatant," therefore, he has not been "properly"

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

detained and the DOD has no jurisdiction over him.

The Return shows a second reason why Mr. Hamad has not been "properly" "detained." In *Hamdan*, the Supreme Court detailed the steps that the Executive, through the military, must go through in order to seize and detain an individual as an enemy combatant. Those steps include on-site determinations by a battlefield commander and subsequent determinations that comply with the laws of war. *Hamdan*, 126 S. Ct. at 2776-77. The Return is devoid of any information showing that any battlefield determination was made, under any standards, by any responsible official. Thus, a straight forward construction of section 7 of the MCA reveals that Mr. Hamad was not "properly detained" and is, therefore, not within the class of persons covered by the MCA. This Court retains habeas corpus jurisdiction over Mr. Hamad.

### 3. This Court Retains Jurisdiction To Determine Its Jurisdiction

Respondents apparently assert that the MCA strips this Court of jurisdiction based on their determination that Mr. Hamad is an enemy combatant. In his reply to Respondents' Consolidated Memorandum in Opposition to Petitioner's Motions to Lift or Modify Stay, Mr. Hamad referred this Court to the long-established body of law that makes clear that the federal courts always retain jurisdiction to determine whether they have jurisdiction. Reply to Memorandum in Opposition at p. 5. The Respondents'

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

reliance on the MCA ignores this long-established body of law and the core jurisdictional question that Mr. Hamad's case presents.

### 4. The Arguments And Facts Presented Herein in Sections 1 - 2 Are Not Pending Before Any Other Court So That There Is No Basis For Maintaining The Stay

In addition to noting that the MCA strips this Court of jurisdiction over Mr. Hamad (a position that is inconsistent with the law and the facts), Respondents urge this Court to continue to stay these proceedings because issues related to the applicability of the MCA are pending in other courts. This Court should reject that request because none of the cases pending in other courts include the same jurisdiction-based argument set out above and, per force, none involve the same facts present in this case.[3]

### 5. The Prohibition Against Retroactive Application Of Statutes Precludes Application Of The Purported Jurisdiction-Stripping

---

[3] The undersigned is either co-counsel or supervising counsel in *Gul v. Bush*, CV 05-888 (CKK), and *Al Ginco v. Bush*, CV 05-1310 (RJL). Similar arguments are presented in those cases, although the factual bases for the arguments are necessarily different. In Section III, Mr. Hamad presents a statutory construction argument which he expects will be presented to the DC Circuit Court of Appeals. In Section IV of this reply, Mr. Hamad briefly sets out the serious constitutional arguments that this Court would be required to address if it rejects the arguments set out in Section III. Those arguments have previously been presented to this Court with respect to the DTA and will be presented to the DC Circuit Court of Appeals with respect to the MCA. For the reasons previously stated regarding the importance of prompt resolution of petitions for writs of habeas corpus, Mr. Hamad urges this Court to lift or modify the stay and address those issues if it rejects the arguments set forth in this and the previous pleadings in this matter that are specific to Mr. Hamad.

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

**Language To Mr. Hamad's Petition For Writ Of Habeas Corpus**

In addition to the reasons set out above, section 7 of the MCA is inapplicable to Mr. Hamad because it operates prospectively only with respect to pending habeas corpus cases.

Following the new section (e)(1) to 28 U.S.C. § 2241, which specifically mentions "writ of habeas corpus," Congress added a new subsection (e)(2) which addresses other causes of action against the government:

> Except as provided in paragraphs 2 and 3 of § 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

The amendment to § 2241 goes on to include an "effective date" that Respondents argue applies to all cases including habeas cases. Opposition at p. 5 n.3.

> The amendment made by subsection (a) shall take effect on the date of enactment of this act and shall apply to all cases, without exception, pending on or after the date of enactment of this act which relate to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001.

Military Commission Act, section 7(b).

Contrary to the Respondents' view, the effective date section renders the

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

amendments to 28 U.S.C. § 2241 retroactive solely with respect to the types of actions identified in subsection (e)(2) but not subsection (e)(1).  This is made clear by the effective date provision's specific inclusion of language that directly tracks the language of subsection (e)(2):  the action over which jurisdiction is stripped must "relate to any aspect of the detention, transfer, treatment, trial, or conditions of detention."  The phrase "habeas corpus," which appears in (e)(1), does not appear in the "effective date" provision of the MCA.  The construction of the statute that Mr. Hamad makes is required by the general rules of statutory construction.  *See Hamdan*, 126 S. Ct. at 2765-66 (discussing *Lindh v. Murphy*, 521 U.S. 320 (1997), and the drawing of negative inferences from exclusion of language from one provision of a statute that appears in another).  If the MCA is applicable at all, Mr. Hamad's petition for habeas corpus falls within subsection (e)(1) and is not affected by the effective date clause.

**CONCLUSION**

For all the reasons set forth herein and in the pleadings previously filed in this matter, neither the DTA nor the MCA can be applied to Mr. Hamad's case as a matter of statutory construction or under the Constitution.  Mr. Hamad may proceed in habeas corpus in this Court under 28 U.S.C. § 2241 or under the constitutional and common law writ of habeas corpus.  Mr. Hamad urges this Court to modify or lift the stay and address the merits of his petition for writ of habeas corpus.

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

Respectfully submitted this 2nd day of November, 2006.


/s/ Steven T. Wax
Steven T. Wax
Attorney for Petitioner


/s/ Patrick Ehlers
Patrick Ehlers
Attorney for Petitioner