PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

**Steven T. Wax, OSB #85012**
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon  97204
Tel:   503-326-2123
Fax:   503-326-5524
steve_wax@fd.org
Attorney for Petitioner

**Patrick J. Ehlers, OSB #04118**
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon  97204
Tel:   503-326-2123
Fax:   503-326-5524
patrick_ehlers@fd.org
Attorney for Petitioner

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADEL HASSAN HAMAD,**<br><br>                             **Petitioner,**<br><br>             v.<br><br>**GEORGE W. BUSH, DONALD RUMSFELD, JAY HOOD, and BRICE GYURISKO,**<br><br>                             **Respondents.** | CV 05-1009 JDB<br><br>**MOTION TO COMPEL CLASSIFICATION REVIEW** |

Petitioner, Adel Hassan Hamad, through his attorneys, Steven T. Wax and

Patrick J. Ehlers, hereby moves this Court to:

1.    Order Exhibits 1, 7, 8, and 16 that were filed with this Court pursuant to

Page 1   MOTION TO COMPEL CLASSIFICATION REVIEW

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

the Protective Orders of November 8, 2004, November 10, 2004, and December 13, 2004, unsealed and file them in the public record; and/or

      2.      Order the "privilege team" to conclude its classification review within seven working days.

The motion seeks to compel public filing of four exhibits submitted to the Court two months ago that were generated wholly from independent investigation conducted by habeas counsel and information that had previously been determined by Respondents to be unclassified.

Counsel has contacted Respondents' counsel, Andrew Warden, pursuant to L. Civ. R. 7(m), and been advised that Respondents oppose this motion.

## I.    FACTUAL BACKGROUND

### A.    The Protective Order Was Designed To Maintain Government Secrets, Not To Seal The Fruits Of Independent Investigation

This action was commenced by the filing of a petition for a writ of habeas corpus on May 18, 2005.  CR 1.  As set out in previous pleadings in this matter, Mr. Hamad is an innocent charity worker and hospital administrator whose imprisonment in Guantánamo has been described as "unconscionable" even by a United States Army Major.

By order dated June 27, 2005, this Court adopted the Protective Order and Supplementary Orders that had been entered in *In re Guantánamo Detainee Cases*, CV No. 02-299, orders entered November 8, November 10, and December 13, 2004.  CR 4. The Order of November 8, 2004, defined classified information as follows:

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

9. The terms 'classified national security information and/or documents,' 'classified information' and 'classified documents' refer to:

   a. any classified document or information that has been classified by any Executive branch agency in the interest of national security or pursuant to Executive order, including Executive Order 12958, as amended, or its predecessor orders as 'CONFIDENTIAL,' 'SECRET,' or 'TOP SECRET,' or additionally controlled as 'SENSITIVE COMPARTMENTED INFORMATION (SCI),' or any classified information contained in such document;

   b. any document or information, regardless of its physical form or characteristics, now or formerly in the possession of a private party that has been derived from United States government information that was classified, regardless of whether such document or information has subsequently been classified by the government pursuant to Executive order, including Executive Order 12958, as amended, or its predecessor orders as 'CONFIDENTIAL,' 'SECRET,' or 'TOP SECRET,' or additionally controlled as 'SENSITIVE COMPARTMENTED INFORMATION (SCI)';

   c. Verbal or nondocumentary classified information known to the petitioner or petitioners' counsel; or

   d. Any document and information as to which the petitioner or petitioners' counsel have been notified orally or in writing that such documents or information contains classified information.

The definition in the Protective Order is similar to that set forth in Executive Order 12958.[1]

   (b) "Information" means any knowledge that can be communicated or documentary material, regardless of its physical form or

---

[1] The first four pages of the Executive Order are contained in Exhibit 1. Executive Order 12958 was amended by Executive Order 13292 on March 25, 2003. That order retained the definition of "information," moving it to Section 6.1 (s). The term "national security information" appears to have been deleted. The Classification Standards were retained but moved to Sec. 1.1 and 1.4. 68 FR 15315, 2003 WL 1618058.

Page 3   MOTION TO COMPEL CLASSIFICATION REVIEW

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

    characteristics, that is owned by, produced by or for, or is under the control of the United States Government. "Control" means the authority of the agency that originates information, or its successor in function, to regulate access to the information.

(c)    "Classified national security information" (hereinafter "classified information") means information that has been determined pursuant to this order or any predecessor order to require protection against unauthorized disclosure and is marked to indicate its classified status when in documentary form.

60 CFR 19825, Part 1, Section 1.1(b) and (c), 1995 WL 17211576.

The Executive Order contains classification standards that provide: "information may be originally classified under the terms of this order only if all of the following conditions are met." *Id.* Part 1, Section 1.2. The four conditions that must be met include the status of the classifying authority, that the information be "owned by, produced by or for, or . . . under the control of the United States Government," that the information falls within one of the categories in Section 1.5, and that the classification authority determines that disclosure would result in damage to the national security and that that damage can be identified and described. Subsection 1.2(b) provides that "if there is significant doubt about the need to classify information, it shall not be classified." *Id.*

The classification categories set out in Section 1.5 include military plans, weapons systems or operations, foreign government information, intelligence activities, sources or methods, foreign relations or foreign activities of the United States, including confidential sources, scientific technological or economic matters that relate to national security, programs related to nuclear materials, or vulnerabilities or capabilities of

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

systems relating to national security.  *Id.*

### B. The Protective Order Contemplates Filing Of All Documents And A Classification Determination Within A Reasonable Time

Paragraph 46 of the order of November 8, 2004, provided that all pleadings shall be filed under seal unless advance permission has been obtained.  After the filing,

> The Court Security Officer shall promptly examine the pleading or document and forward it to the appropriate agencies for their determination whether the pleading or document contains classified information.

The paragraph goes on to describe how documents shall be filed, if they contain all, some, or no classified information.  With respect to documents that do not contain classified information,

> Any document filed by petitioner that is determined not to contain classified information or protected information, and is not subject to any other restrictions on disclosure, shall immediately be unsealed by the Court Security Officer and placed in the record.

In addition to the requirement that the Court Security Officer "promptly examine pleadings" and "immediately unseal," paragraph 46 also requires the Court Security Officer to act "immediately" in delivering sealed documents.  Paragraph 46 does not contain any specific time limits for action by the "appropriate agencies" to whom court filings are submitted.

Exhibit A to the order of November 8, 2004, established procedures for counsel access to detainees.  Exhibit A is specifically incorporated in the Protective Order in paragraph 6.  Section II.D. defines the "privilege team" referenced in the Protective Order as:

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

> A team comprised of one or more DOD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, will not take part in, any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee. If required, the privilege team may include interpreters/translators, provided that such personnel meet these same criteria.

Exhibit A does not establish any time limits for review of court filings. It does, however, establish strict time limits with respect to handling and review of attorney/client correspondence. Section IV.A.3. provides that the privilege team has two business days to determine that mail sent by counsel to a detainee does not contain contraband. VII.C.1. provides that the privilege team shall forward its classification determination with respect to information in the English language that is submitted by counsel for review within seven days. If the information is in any language other than English, the privilege team has fourteen days to conclude its work. VII.C.2. If the privilege team believes that code was used, it has 20 days. VII.C.3.

    **C.**    **Mr. Hamad Filed A Motion For Summary Judgment Two Months Ago, Including Exhibits Generated Purely By Habeas Counsel's Investigation, But No Classification Decision Has Been Made On Four Exhibits**

On September 22, 2006, Mr. Hamad filed, through the Court Security Officer, a Motion for Summary Judgment, a Motion to Lift or Modify Stay, and supporting Exhibits. Notice of Filing of these documents was entered in the docket as CR 55 and 56. Classification review proceeded expeditiously on the Motion to Lift or Modify Stay, and it was filed in the public record in its entirety on September 25, 2006. CR 57. On October 17, 2006, word was received that the classification review had been concluded on the

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

Motion for Summary Judgment and all of the Exhibits with the exception of Exhibits 1, 7, 8, and 16, exhibits submitted on DVDs.  The motion and all cleared exhibits were filed in the public record.  CR 59 - 63.

Throughout the review process, counsel have been in communication with the United States Department of Justice Attorney Andrew Warden.  Mr. Warden was communicative throughout, but advised us as early as October 6, that the people who were reviewing the exhibits were having a difficult time determining how to deal with the s.

As early as October 6, counsel for Mr. Hamad advised the privilege team, through the Department of Justice, what is self-evident from the s - that they are entirely the product of Federal Defender investigation, that we did not understand how anything in them could possibly be considered classified, and that any issues of language did not exist with respect to Exhibit 1 because it is virtually entirely in English.  Ex. 2.  Mr. Hamad reiterated his concern that nothing in the DVDs could be considered classified because they are entirely the product of counsels' field investigation in an email sent on October 11.  Ex. 3.  Respondents advised the undersigned on the same date that they were still working on the DVDs.  Ex. 4.  Respondents were then asked again whether they could move more rapidly on Exhibit 1, the case summary that is virtually entirely in English.  Ex. 5.  Further inquiry was made by counsel on October 24 with a response from Respondents that there was nothing new to report.  Ex. 6.

On October 31, counsel again wrote the Department of Justice expressing

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

concern and pointing out that the information that is contained in the DVDs is no different than the information which had already been cleared in the written exhibits and inquiring where there is any portion of the DVDs that presents a problem and, if so, seeking that information so that counsel could attempt to resolve it cooperatively.  Ex. 7.  On November 1, the Department of Justice responded, advising counsel that the DVDs present "unique classification issues given their format" and that the process is moving forward.  Ex. 7.

On November 3, counsel inquired of the Department of Justice what the unique classification issue related to "format" was, pointing out that the DVDs are in a standard video format and inquiring whether a different format for the DVD could expedite the process.  Ex. 8.  Counsel also pointed out that the DVDs were needed in order to further our work on behalf of our client, including through his family, which is making efforts on his behalf in Sudan.  Ex. 8.  Counsel renewed their inquiry with respect to their "unique issues" on November 6 in an effort to facilitate the review process.  Ex. 9.  The Department of Justice responded that all the DVDs were in the same category because they require review of audio as well as visual content.  Ex. 10.  The email concluded that the "unique issues" relate to the fact that the DVD has "multiple video images accompanied by simultaneous audio."

This motion ensued.

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

## II. THE DELAY IN CONCLUDING THE CLASSIFICATION REVIEW VIOLATES THE TERMS OF THE PROTECTIVE ORDER

### A. The Protective Order Contemplates Prompt Action

The Protective Order contemplates that Respondents will move expeditiously in conducting classification review. With respect to review of material obtained by counsel from their clients, the Protective Order sets stringent time limits, seven or fourteen days depending on the language in which material is written. With respect to pleadings, the Protective Order does not establish time limits. It does, however, require that action by the Court Security Officer be taken "promptly" or "immediately." Clearly, the Protective Order contemplates that classification review will be conducted expeditiously.

### B. There Is No Justification For The Delay In Concluding Classification Review Of Exhibits 1,7,8, And 16

Respondents moved promptly in concluding the classification review of most of the exhibits submitted by Mr. Hamad. None were found to contain any classified information, nor could the result have been any different because they are entirely the product of Mr. Hamad's counsels' investigation and cannot under any circumstances meet the definitions for classified information in the Executive Orders.

Comparison of the paper documents that have been found to contain no classified information and the DVDs that are still under review must inevitably lead to the same conclusion. The paper exhibits discuss and excerpt the DVDs. The DVDs are also the product of Mr. Hamad's counsels' investigation. The vast majority of the content of the DVDs is in English. Exhibit 1 is a brief summary exhibit of counsels'

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

investigation on Mr. Hamad's behalf.  Exhibits 7 and 8 are obviously interviews conducted by Mr. Hamad's defense team.  Exhibit 16 is a DVD that is less than one minute in length.

The only justification for the two month delay in concluding the classification review offered by Respondents is that the "format" of the exhibits presents "unique classification issues" and that part of the uniqueness stems from the fact that the exhibits include "multiple video images accompanied by simultaneous sound." Ex. 7,9.  As counsel for Mr. Hamad advised Respondents, the DVDs are in a standard format.  As counsel have advised Respondents, and the Court through our pleadings, exhibits 1,7 and 8 are DVD's that were prepared by counsel for Mr. Hamad and depict the product of our investigation.  There is nothing unique about the format.  Respondents should have no difficulty listening to the words and observing the interviews that are the totality of Exhibits 7 and 8, looking at the maps, still photos, and documents that are included in Exhibit 1, and looking at the brief images in exhibit 16.

### C. Mr. Hamad Is Being Prejudiced By The Delay In The Classification Review

While petitioner's case is stayed in the district court (a posture that he opposes), he is attempting to secure his release through other means.  These include communication with his family in Sudan where they are making efforts to enlist support for his release.  The sealing order precludes transmission of the compelling evidence to Mr. Hamad's family, and others, thereby, impeding their efforts on his behalf.

Page 10 MOTION TO COMPEL CLASSIFICATION REVIEW

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

### III. PARAGRAPH 46 OF THE PROTECTIVE ORDER MUST BE READ TO REQUIRE A PROMPT CLASSIFICATION DECISION IN ORDER TO AVOID SERIOUS CONSTITUTIONAL ISSUES REGARDING OVERBREADTH, PRIOR RESTRAINT, DUE PROCESS, AND THE EFFECTIVENESS OF COUNSEL

The issue with respect to classification arises in this case from the Protective Orders entered by the Court in November and December of 2004 and adopted for this case in June 2005. Paragraph 46 of those orders requires that virtually all pleadings be filed under seal and remain sealed until the appropriate agency has determined whether the document contains classified information. If read to allow Respondents to prevent the public filing and dissemination of court exhibits by failing to promptly conclude classification review, this provision would be overbroad on its face because it allows for sealing of information that can in no manner meet the definitions of classified information in the relevant executive orders. Such a reading would also, as applied in this case, intrude on Mr. Hamad's rights under the First, Fifth, and Sixth Amendments.

Mr. Hamad does not believe that the Court needs to reach the constitutional issues for the reasons set out in Point II. Indeed, under the doctrine of Constitutional Avoidance, the Court should construe the order to require a prompt determination and direct Respondents to do so. See *Clark v. Martinez*, 543 U.S.371,381 (2005). The constitutional arguments underscore the importance of the timing issue.

#### A. The Court Has The Authority To Address Security Classification Issues In The Protective Order

Because of its location in Washington, D.C., this Court is frequently required to address questions related to security classification. *See, e.g., Students Against*

**PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING**

*Genocide v. Department of State*, 257 F.3d 828 (D.C. Cir. 2001). While the courts are to accord deference to agency decisions regarding the need for classification, there is no question but that the Judiciary has the authority to resolve classification issues. *Id., Hayden v. National Security Agency*, 608 F.2d 1381 (D.C. Cir. 1979).

### B. If Paragraph 46 Of The Protective Order Does Not Require A Prompt Classification Determination, It Would Be Unconstitutional

The issue regarding classification in this case arises in a different context than that with which this Court is most frequently presented because there has been no classification decision made regarding the disputed items. Rather, they are being held under seal pending a classification review. The questions presented are then, not whether the Court should defer to an agency determination about the need for classification, but rather, whether it is proper for the Court to order all pleadings in a case sealed pending a classification review and if so, for how long. A blanket and prolonged prior restraint on publication without any individualized showing would run afoul of First Amendment rights. *See Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976) (holding order prohibiting publication of confessions in criminal case unconstitutional); *New York Times Co. v. United States*, 403 U.S. 713 (1971) (denying injunction against publication of classified documents).

Prolonged sealing without a classification determination would also violate petitioner's rights under the Fifth and Sixth Amendments. As noted above, Mr. Hamad is being harmed because he is unable to provide his family and others with the tools they need to work to secure his release through efforts in Sudan and elsewhere. Here,

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

unlike the situation in *Nebraska Press Association*, the First, Fifth and Sixth Amendment interests are aligned. The order in this case has a direct negative impact on Mr. Hamad's interests without being reasonably tailored to meet a compelling government need. As such it is unlawful. *See United States v. Abuhamra*, 389 F.3d 309, 330, n.18 (2nd Cir. 2004) (discussing extent of sealing orders and competing interests). The order's interference with his counsels' ability to pursue his release through other means while the court case is stayed trenches upon his due process and counsel rights. *Cf. Kimmelman v. Morrison*, 477 U.S. 365 (1986) (discussing obligations of counsel).

### C. If The Protective Order Is Read To Permit Prolonged Sealing Of The Product Of Independent Investigation, It Would Be Overbroad

The law is clear that any gag order, courtroom closure, or order to seal that trenches upon First Amendment rights must be narrowly drawn so that it does not affect dissemination of any more information than is necessary to satisfy the compelling governmental interest at stake. *See, e.g., Globe Newspaper Co. v. Superior Court,* 457 U.S. 596 (1982) (holding that courtroom sealing order was overbroad). If it allows prolonged sealing, paragraph 46 of the Protective Order is overbroad because it covers material which could be subject to a security classification but also material which could never be classified.

While Respondents have a strong interest in protecting the national security, that protection must be accomplished within the legal framework of the Constitution and the Executive Order that authorizes classification of information in the first instance. As defined in Executive Order 12958, and the amended version, Executive Order 13292,

PREVIOUSLY SUBMITTED TO CSO
AND CLEARED FOR PUBLIC FILING

information is only subject to classification if it is "owned by, produced by or for, or is under the control of the United States Government" and concerns one of the eight listed categories of information. By definition, information gathered by counsel for Mr. Hamad through their investigation from unclassified sources cannot be "owned by, produced by or for," or be "under the control of the" government. Nor is any of the material included in the exhibits possibly within the categories defined in the Executive Order. If it permitted anything other than brief sealing of all information, including information that could not be classified, the Protective Order would be unconstitutionally overbroad.

**CONCLUSION**

For all of the reasons set forth herein, this Court should order exhibits 1,7,8, and 16 filed in the public record, and/or order Respondents to conclude their classification review within seven days.

Respectfully submitted this 22nd day of November, 2006.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Patrick J. Ehlers
Patrick J. Ehlers
Assistant Federal Public Defender