**PREVIOUSLY FILED WITH CSO**
**AND CLEARED FOR PUBLIC FILING**

**Steven T. Wax, OSB #85012**
**Federal Public Defender**
**steve_wax@fd.org**
**Patrick J. Ehlers**
**Assistant Federal Public Defender**
**patrick_ehlers@fd.org**
**101 SW Main Street, Suite 1700**
**Portland, Oregon  97204**
**Tel:   503-326-2123**
**Fax:   503-326-5524**

**Attorneys for Petitioner**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADEL HASSAN HAMAD,** | **CV 05-1009 JDB** |
| **Petitioner,** | **OPPOSITION TO MOTION TO** |
| **v.** | **DISMISS** |
| **GEORGE W. BUSH, et al.,** | |
| **Respondents.** | |

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

## TABLE OF CONTENTS

Page

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.     This Court Retains Subject-Matter Jurisdiction Over The Habeas
       Corpus Petition As Long As The Petitioner's Claims Are Not
       Frivolous And Have Not Been Decided On The Merits By The
       Supreme Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.     The *Boumediene* Case Establishes That The Present Case Involves
       Substantial Issues That Have Not Been Decided By The Supreme
       Court And That The Exhaustion Of Available Remedies Should
       Precede A Decision On The Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       1.     Justices Stevens and Kennedy Explicitly, And The Circuit
              Court Implicitly, Adopted The Exhaustion Of Remedies
              Model For Habeas Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       2.     The Supreme Court Has Not Decided Any Questions
              Regarding The Jurisdiction Of This Court Or The Rights That
              Can Be Enforced Through Habeas Corpus Proceedings . . . . . . . . . 9

       3.     The Jurisdictional Questions Regarding Habeas Corpus
              Cannot Be Resolved Until The Adequacy Of The DTA
              Remedy Becomes Known . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

C.     Because Adel Hamad Is Exhausting Available Remedies, The
       District Court Not Only Has Discretion To Enter A Stay-And-Abey
       Order, But Such An Order Is Mandatory Under *Rhines* . . . . . . . . . . . . . 10

D.     Under *United Mine Workers*, The Court Has Authority To Preserve
       The Status Quo While Jurisdictional Questions Are Litigated . . . . . . . . . 15

E.     The Protective And Other Procedural Orders Are Necessary To
       Assure That "The Office And Purpose Of The Writ Of Habeas
       Corpus Are Not Compromised." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

F.     *Boumediene* Does Not Establish The Record To Which Adel Hamad
         Should Be Bound Because He Is Exhausting Available Remedies
         And Other Legal Theories May Be Available On The Particular
         Facts Of His Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Ayuda v. Thornburg*,
     919 F.2d 153 (D.C.Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Bell v. Hood*,
     327 U.S. 678 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Boumediene v. Bush*,
     127 S. Ct. 1478 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 6, 7, 8, 9, 15

*Boumediene v. Bush*,
     476 F.3d 981 (D.C. Cir. 2007) . . . . . . . . . . . 1, 3, 4, 5, 6, 7, 8, 9, 10, 15, 16, 18, 19

*Hamdan v. Rumsfeld*,
     126 S. Ct. 2749 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ex parte Hawk*,
     321 U.S. 114 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 15

*Kircher v. Putnam Funds Trust*,
     126 S. Ct. 2145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Marino v. Ragen*,
     332 U.S. 561 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Omar v. Harvey*,
     479 F.3d 1 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Oneida Indian Nation of N.Y. v. County of Oneida*,
     414 U.S. 661 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pace v. DiGuglielmo*,
     544 U.S. 408 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

*In re President and Directors of Georgetown College*,
    331 F.2d 1000 (D.C. Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

*Rasul v. Bush*,
    542 U.S. 466 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 12, 19

*Rhines v. Weber*,
    544 U.S. 269 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 10, 11, 12, 14, 15, 20

*Rivers v. Roadway Express, Inc.*,
    511 U.S. 298 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 5

*Swain v. Pressley*,
    430 U.S. 372 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Teague v. Lane*,
    489 U.S. 288 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Texas v. Cobb*,
    532 U.S. 162 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Booker*,
    543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Ruiz*,
    536 U.S. 622 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. United Mine Workers of America*,
    330 U.S. 258 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 15, 16, 20

**DOCKETED CASES**

*Hamad v. Gates*,
    Circuit Court No. 07-1098 (filed April 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 13

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

**PREVIOUSLY FILED WITH CSO<br>AND CLEARED FOR PUBLIC FILING**

**Introduction**

The petitioner, through counsel, Steven T. Wax and Patrick J. Ehlers, opposes the government's Motion to Dismiss because controlling Circuit and Supreme Court authority require the Court to continue the stay of the District Court proceedings, holding them in abeyance pending the petitioner's exhaustion of remedies under the Detainee Treatment Act of 2005.

This Court has subject-matter jurisdiction over this habeas corpus petition under the Supreme Court case upon which the government's Motion is primarily based: Dismissal for lack of subject-matter jurisdiction is proper only when the federal claim is frivolous or foreclosed by prior decisions of the Supreme Court. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). The Circuit Court's split decision in *Boumediene v. Bush*, and the split commentary from Supreme Court Justices on the denial of *certiorari* in that case, establish that the issues involved are substantial and that the Supreme Court has *not* decided the important questions that were deferred pending exhaustion of available remedies. 476 F.3d 981 (D.C.Cir.), *cert. denied*, 127 S.Ct. 1478 (2007).

The Supreme Court has provided a clear road map for the litigation involving detainees who filed habeas corpus petitions from Guantánamo at a time when this Court had initial jurisdiction under *Rasul v. Bush*, 542 U.S. 466 (2004). While available

**Page 1   OPPOSITION TO MOTION TO DISMISS**

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

remedies are being exhausted, the District Court has authority to enter a stay-and-abey

order to safeguard habeas rights during the period of exhaustion, and such an order is

mandatory in the absence of frivolous claims and intentional delay. *Rhines v. Weber*, 544

U.S. 269, 274 (2005). While the merits are stayed pending exhaustion and during post-

exhaustion litigation, this Court has the authority to maintain the supervisory orders this

Court has entered regarding access to counsel, the filter team, and 30-day notice of

transfer. *United States v. United Mine Workers of America*, 330 U.S. 258, 290-91 (1947);

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir.

1964).

Permitting Adel Hamad to present his post-exhaustion facts and claims to this

Court is logical, fair, and compelled by governing Supreme Court authority. The

petitioner has made substantial claims that his particular case, especially his claims of

innocence, are viable and that, if necessary, he should be able to make a record for

potential appellate and Supreme Court review.[1]  The motion to dismiss should be denied.

A.    **This Court Retains Subject-Matter Jurisdiction Over The Habeas
Corpus Petition As Long As The Petitioner's Claims Are Not Frivolous
And Have Not Been Decided On The Merits By The Supreme Court.**

---

[1]Adel Hamad has filed with this Court: Motion for Summary Judgment (CR 59);
and the Exhibits in Support of Motion for Summary Judgment (CR 60-63) which included
many hours of videotaped statements in support of Mr. Hamad's innocence.

PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

The government places primary reliance on *Steel Co.* for the unremarkable proposition that jurisdiction is a threshold question (Motion at 4). The government ignores the preceding language in *Steel Co.* that supports this Court's jurisdiction to maintain the habeas action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. *Steel Co.*, 523 U.S. at 89.

The starting point of *Steel Co.* is that the District Court has subject matter jurisdiction as long as there is a non-frivolous argument that the laws and Constitution support the claim:

> [T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.' . . . unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'

523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)). As demonstrated by the dissenting opinions at both the Circuit Court level and on the denial of *certiorari* in *Boumediene*, there is a reading of the Constitution and laws of the United States that would sustain Mr. Hamad's habeas corpus petition. 476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S.Ct. at 1479-81 (Breyer, Souter & Ginsburg, JJ., dissenting from denial of *certiorari*).

The *Steel Co.* opinion also establishes that a Circuit Court opinion, such as *Boumediene*, is not sufficient to deprive the Court of subject-matter jurisdiction. Only

**PREVIOUSLY FILED WITH CSO**
**AND CLEARED FOR PUBLIC FILING**

when the Supreme Court rules adversely on the merits is dismissal for want of subject

matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because

of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial,

implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid

of merit as not to involve a federal controversy."  *Id.* (quoting *Oneida Indian Nation of*

*N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)(emphasis added)).  The *Boumediene*

denial of *certiorari* is emphatically not a ruling on the merits.

   The jurisdictional issues are obviously not frivolous because the courts have been

split on the constitutional issues at each level of the litigation: the District Courts split,

leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the

*Boumediene* denial of *certiorari*.  Seldom has this Country faced weightier issues about

the meaning of our Constitution.  The main case upon which the government relies

establishes that the motion to dismiss should be denied while remedies are exhausted.

   Ironically, the government's own Motion recognizes this Court's continuing

jurisdiction while the merits are exhausted, litigated, and appealed.  In footnote 15, the

government points out that the Protective Order should survive dismissal, citing to a case

upon which the petitioner relies – *United Mine Workers* (Motion at 8-9).  As argued *infra*

at 14-16, *United Mine Workers* establishes that the District Court has the authority

throughout the litigation to maintain the status quo by enforcing the protective order and

PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

otherwise ensuring that "the office and purposes of the writ of habeas corpus are not

compromised," as Justices Stevens and Kennedy put it in *Boumediene*.[2]

This Court retains the power to decide its own jurisdiction in the first instance.

*Kircher v. Putnam Funds Trust*, 126 S.Ct. 2145, 2155; *United States v. Ruiz*, 536 U.S.

622, 628 (2002). While the efficacy of the DTA remedies are determined, it is premature

for this Court to determine the dispositive questions. Meanwhile, this Court should

follow the stay-and-abey norm established in *Rhines*, then, if the case is not mooted by

the DTA proceedings, provide the petitioner the opportunity to make his record, to

present his claims, and to receive a decision based on the facts and law of his individual

case.

The government's position is based on a fundamental misunderstanding of what it

means for a court to have jurisdiction. "Jurisdiction is a word of many, too many,

meanings." *Steel Co.*, 523 U.S. at 90 (quoting *United States v. Vanness*, 85 F.3d 661, 663

n. 2 (D.C. Cir. 1996)). While the *Boumediene* opinion states the current law of the

Circuit, the ruling does nothing to impair Mr. Hamad's rights to exhaust his remedies

while this Court preserves the status quo.

---

[2] The government's position regarding selective survival of the protective order's
provisions is untenable. If this Court were to dismiss, the protective order would continue
in full effect until the protective order itself, or individual provisions, were dissolved by
separate order of this Court.

Page 5    OPPOSITION TO MOTION TO DISMISS

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

The government erroneously cites to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C.Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance.  In fact, the majority ruled in *Ayuda* that a stay was appropriate.  The government cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked power to enter a stay.  *See* 919 F.2d at 153.  The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo."  *Ayuda*, 919 F.2d at 155-56 (Wald, C.J., concurring and dissenting).

If necessary, after exhaustion, this Court, the Circuit Court, and the Supreme Court have jurisdiction to determine the substantial issues raised by the petitioner without prejudgment based on a Circuit Court ruling that does not address Adel Hamad's specific factual and legal claims.

     **B.**     **The *Boumediene* Case Establishes That The Present Case Involves Substantial Issues That Have Not Been Decided By The Supreme Court And That The Exhaustion Of Available Remedies Should Precede A Decision On The Merits.**

The government attempts to stretch the Circuit Court's *Boumediene* decision far beyond its reach. Despite the initial jurisdiction found in *Rasul*, a split panel of the D.C. Circuit Court found that post-*Rasul* statutes deprived the courts of jurisdiction over

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

petitions involving aliens detained at Guantánamo.  *Boumediene.*  Because the petitioners

in those cases had declined to seek review directly with the Circuit Court under the

Detainee Treatment Act of 2005, the Court found that the "only recourse" was to vacate

the District Court decision and dismiss the case for lack of jurisdiction.  *Boumediene*, 476

F.3d at 994.  The petitioners filed for a *writ of certiorari* and, on April 2, 2007, the

Supreme Court denied *certiorari*, with both a three-Justice dissent and a two-Justice

statement respecting the denial of *certiorari*.  *Boumediene v. Bush*, 127 S.Ct. 1478

(2007).

     The statement of Justices Stevens and Kennedy found that, given "our practice of

requiring the exhaustion of available remedies as a precondition to accepting jurisdiction

over applications for the writ of habeas corpus," denial of *certiorari* was appropriate "at

this time."  *Id*. The Justices specifically expressed concern regarding maintenance of the

status quo during the litigation: "Were the government to take additional steps to

prejudice the position of petitioners in seeking review in this Court, 'courts of competent

jurisdiction,' including this Court, 'should act promptly to ensure that the office and

purposes of the writ of habeas corpus are not compromised.'"  *Id.* (quoting *Padilla v.

Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of *certiorari*)).

     The government's reliance on *Boumediene* is misplaced for several reasons.  First,

the Circuit Court's reference to the *Boumediene* petitioners' decision not to exhaust,

PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

coupled with Justice Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk*, 321 U.S. 114 (1944), support continuing the stay while the DTA remedy is exhausted. *Id.* Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S.Ct. at 1478 (Stevens & Kennedy, JJ., statement regarding denial of *certiorari*)(citing *Rasul*, 542 U.S. at 480-81). Third, Justice Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which the petitioner can present such arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.

      1.      *Justices Stevens and Kennedy Explicitly, And The Circuit Court Implicitly, Adopted The Exhaustion Of Remedies Model For Habeas Relief.*

      *Boumediene* does not control this case because, unlike the petitioners in that case, Adel Hamad is exhausting his remedies under the DTA. The Circuit Court opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy explained that "[d]espite the obvious importance of the issues," the Court was denying *certiorari* "at this time" in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*. *Boumediene*, 127 S.Ct. at 1478.

The citation to *Hawk* is telling.  In that case, the petitioner filed for federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of other remedies had not been established.  The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated . . . .  But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy . . . or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate . . . , a federal court should entertain his petition for habeas corpus, else he would be remediless.  In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted).  The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court.  The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.

> 2.    *The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.*

The government's claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S.Ct. at 1478.  Three dissenting Justices and Circuit Judge Rogers in dissent

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

explained that the constitutional ramifications of a statute that purports to disenfranchise

petitioners in existing habeas corpus petitions are profound and of obvious importance.

*Boumediene*, 476 F.3d at 994-1012; *Boumediene*, 127 S.Ct. at 1479-81.  The addition of

Justices Stevens and Kennedy's statement confirms that Adel Hamad's petition should be

fully considered, after exhaustion, upon his unique facts and legal arguments regarding

his innocence.  These arguments are set out in his motions for summary judgment and to

lift the stay.  The *Boumediene* case does not finally resolve the jurisdictional questions in

Adel Hamad's case.[3]

> 3.     *The Jurisdictional Questions Regarding Habeas Corpus Cannot Be
>        Resolved Until The Adequacy Of The DTA Remedy Becomes Known.*

Questions regarding the suspension and elimination of the writ of habeas corpus

require consideration of whether alternative remedies provide protection coextensive with

the Great Writ.  *Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a

collateral remedy which is neither inadequate nor ineffective to test the legality of a

person's detention does not constitute a suspension of the writ of habeas corpus.").  The

*Boumediene* statement on *certiorari* clearly set out, with citation to *Marino v. Ragen*, 332

U.S. 561 (1947), that, if the DTA remedy is "inadequate", the Court is prepared to

address the merits of the habeas corpus claims.  Further, the Court stated that, in the

---

[3] The *Boumediene* case does not even finally decide the questions for the
*Boumediene* petitioners, given that the mandate has not issued and the cases are still
subject to motions and briefing.

**Page 10 OPPOSITION TO MOTION TO DISMISS**

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

interim, the government should take no additional steps "to prejudice the position of

petitioners" in seeking review.  *Id*.  By maintaining the present case in the District Court,

this Court is in a position to "act promptly to ensure that the office and purposes of the

writ of habeas corpus are not compromised."  *Id*.

The exhaustion model from the *Boumediene* litigation requires that the District

Court proceeding remain in place for potential post-exhaustion litigation.

> **C.    Because Adel Hamad Is Exhausting Available Remedies, The District
> Court Not Only Has Discretion To Enter A Stay-And-Abey Order, But
> Such An Order Is Mandatory Under *Rhines*.**

Given the procedural posture in this court and the D.C. Circuit Court, Mr. Hamad

reluctantly believes that holding the proceedings in abeyance in this Court is the

appropriate course.  need to exhaust remedies under the DTA, the District Court

proceedings should continue to be stayed and held in abeyance pending completion of the

petitioner's DTA review.[4]  In *Rhines*, the Supreme Court explicitly approved the

stay-and-abey procedure in the closely analogous context of federal habeas corpus

proceedings.  544 U.S. at 278.  In *Rhines*, the prisoner filed a mixed habeas petition in

---

[4] The government filed their Motion to Dismiss as their responsive pleading on
April 23, 2007.  (CR 82).  On April 23, 2007, Adel Hamad filed a Notice Of Filing DTA
Petition In The Circuit Court Of Appeals And Alternative Request To Temporarily Hold
Habeas Corpus Petition In Abeyance Pending Litigation Under The Detainee Treatment
Act.  (CR 84).  On April 26, 2007, the government filed an Opposition to this request,
referring this Court to its Motion to Dismiss.  (CR 85).  Mr. Hamad respectfully requests
that this Court consider this Opposition to the Motion to Dismiss as also addressing the
government's Opposition to the Request for a Stay and Abey.

**Page 11 OPPOSITION TO MOTION TO DISMISS**

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

federal court, which contained both claims exhausted through the state court system and unexhausted claims.  Given the major procedural risks of a dismissal order, the Court found that District Courts have discretion to enter stay-and-abey orders in the federal habeas case while the unexhausted claims are presented to the state court. The federal habeas corpus case is stayed and held in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions for, in effect, mandatory stay-and-abey.  "[I]t would likely be an abuse of discretion for a district court to deny a stay and to dismiss" if the petitioner demonstrated (1) good cause for the failure to exhaust, (2) potentially meritorious unexhausted claims, and (3) no intentionally dilatory tactics by the petitioner.  *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).[5]  The petition here easily meets all three conditions for mandatory stay-and-abey.

There is good cause for the failure to exhaust until now: the potential remedy did not exist until after the habeas corpus petition was filed and did not purport to provide the habeas relief to which the petitioner was entitled at the time the habeas action was filed. In *Pace*, the Court noted that potential confusion regarding state remedies required equitable protections.  544 U.S. at 416. Guantánamo detainees face complexities that are

---

[5] In *Rhines*, three Justices concurred, stating that stay-and-abey is required in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring, joined by Justices Ginsburg and Breyer).

**Page 12 OPPOSITION TO MOTION TO DISMISS**

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

similar and worse. The questions left open by the Supreme Court's decision in *Rasul*,

which established a right to proceed under § 2241 at the time the petitioner submitted his

documents,[6] and the subsequent DTA and Military Commission Act of 2006, have

resulted in major complications. The petitioners did not even have the potential DTA

remedy prior to October 2006 because, as the Supreme Court held, the DTA did not apply

retrospectively to habeas corpus petitions filed prior to the effective date of the statute.

*Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006).

The claims raised by the petitioner are substantial and meritorious. The

petitioner's summary judgment motion in this Court,[7] as well as the Petition filed directly

with the Circuit Court,[8] establish a number of bases for granting relief on the merits

including: that both the classified and unclassified CSRT material establish that Mr.

Hamad is unlawfully detained and entitled to immediate release; under the laws of war,

Mr. Hamad is not within the jurisdiction of the military because the temporal nexus to the

time of war is absent; he is not and never was an enemy combatant; and the CSRT did not

---

[6] The construction of § 2241 in *Rasul* is what the statute always meant. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n.12 (1994) ("[W]hen this court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.").

[7] The Motion for Summary Judgment and Exhibits are found in the court record of the District Court (CV 05-1009-JDB) at CR 59 and 60-63.

[8] *Hamad v. Gates*, Circuit Court No. 07-1098 (filed April 20, 2007).

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

comply with the standards and procedures specified by the Secretary of Defense,

including the standard of proof, and if it did, those procedures are inconsistent with the

Constitution and laws of the United States.  The facts establish that Mr. Hamad is

unlawfully detained and entitled to immediate release.  Although the Respondents persist

in their designation of Mr. Hamad as an enemy combatant, Mr. Hamad is on a release list,

but continues to remain incarcerated with no time set for his liberation.  In the event the

case is remanded, or if the DTA procedures prove an inadequate substitute for

constitutionally-required habeas corpus procedures, this Court should be in position to

proceed immediately on the habeas petition.

Mr. Hamad has not engaged in dilatory tactics.  On the contrary, he has been

diligent in presenting his claims and attempting to obtain relief.  He has been confined at

Guantánamo for nearly five years, cut off from his family, and subjected to harsh

treatment and conditions.  Mr. Hamad is "approved to leave" Guantánamo, but he

remains incarcerated.  His habeas corpus litigation is his main hope, and perhaps his only

hope, of gaining prompt relief from his confinement.  He has been attempting to move

forward since the day he submitted his *pro se* petition to the court, while the government

has obtained a stay that is over 22 months old.

The government's attempt to distinguish *Rhines* fails because the government

attempts to interpret *Rhines* to mean less than it actually says.  The government contends

**Page 14 OPPOSITION TO MOTION TO DISMISS**

PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

that the power of the district court to stay-and-abey under *Rhines* is limited only to those instances when failing to stay-and-abey would cause a statute of limitations to run that would preclude the petitioner from refiling (Motion at 6-7). This was the factual predicate in *Rhines*, not its holding. Nothing in *Rhines* limited the District Court's equitable power to stay-and-abey only to concerns regarding statutes of limitation. Rather, *Rhines* held that the equitable powers the District Court possessed before enactment of the statute of limitations continued to exist and were not extinguished by the statute. *Rhines*, 544 U.S. at 276. As in *Pace*, the concern warranting stay-and-abey was to protect the petitioner from impairment of future exercise of habeas corpus rights. *See Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007)(affirming the District Court's preliminary injunction barring transfer of a prisoner entered to preserve the court's jurisdiction over the habeas corpus petition of an American citizen detained in a military facility in Iraq).

The government's attempt to distinguish *Rhines* fails. The exhaustion required by *Hawk* operates, as does the exhaustion required by the statute in *Rhines*. Further, the same type of procedural obstacles that dismissal would create under 28 U.S.C. § 2254 confront detainees in Guantánamo cut off from contact with their lawyers and facing retroactivity questions regarding statutes that purport to impair the jurisdiction that unquestionably existed at the time the habeas corpus petition was filed. *Rhines* is

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

> **D.** **Under *United Mine Workers*, The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.**

In the statement accompanying the *Boumediene* order, two Justices stated: "Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S.Ct. at 1478.  The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and that while the matter is under consideration, the courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition."  *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)).  The Circuit Court of the District of Columbia has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ."  Clearly there was "power to preserve existing conditions while . . . determining (the) authority to grant injunctive relief."

**PREVIOUSLY FILED WITH CSO**
**AND CLEARED FOR PUBLIC FILING**

*In re President and Directors of Georgetown College*, 331 F.2d at 1005 (internal citations omitted) (quoting *Shipp* and *United Mine Workers*). This Court should carefully protect the status quo by maintaining the orders entered to date to assure the petitioner is not prejudiced in his ability to litigate the DTA action and to preserve potential remedies in this Court and on appeal.

The denial of *certiorari* in *Boumediene* leaves unanswered predicate questions necessary to deciding issues in Adel Hamad's case including: Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus? If not, has the writ been unconstitutionally suspended or eliminated? Are the MCA and the DTA inapplicable given petitioners' jurisdictional arguments regarding the absence of initial military jurisdiction, which would foreclose the CSRT from constituting a competent tribunal to render any decision? Is the government taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised?"

The Respondent's motion to dismiss should be denied because this Court has insufficient information to answer a number of questions the DTA proceedings will answer. Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to the petitioner, there must be an adequate record for the

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

Circuit Court's appellate review and, if necessary, for the Supreme Court to decide

whether to grant a *writ of certiorari*, all of which requires that the petition in this Court

remain in place until after the petitioner has exhausted the DTA procedures.  During that

process, the government should be foreclosed from prejudicing the petitioner's ability to

litigate these questions – at both the District Court and Circuit Court level.

> **E.     The Protective And Other Procedural Orders Are Necessary To Assure
> That "The Office And Purpose Of The Writ Of Habeas Corpus Are
> Not Compromised."**

The dismissal of the District Court proceedings would constitute exactly the type

of prejudice to the petitioner's ability to litigate that Justices Kennedy and Stevens

instructed that the courts should guard against.  This Court properly addressed issues

preliminary to ultimate disposition throughout this litigation.  This Court's orders on

access to counsel should remain intact pending exhaustion of DTA remedies.

The government suggests that the protective order they agreed to should be

renegotiated and replaced in the Circuit Court (Motion at 9-11).  This Court has been

supervising the protective order for almost two years.  If difficulties arose beyond the

powers of the parties to resolve, the protective order includes powerful mechanisms for

the government to exhaust, up to and including contempt and criminal prosecution.  The

government's failure to exhaust their available remedies should foreclose action based on

the government's complaints.  The government's desire to substitute protective orders is

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

no reason to dismiss this action instead of following the Supreme Court-approved stay-and-abey procedure.

Access between Mr. Hamad and counsel is critical in this case. The protective order should remain intact, especially given that the Court of Appeals should have the option of continuing to administer the DTA litigation under the auspices of this Court's orders.[9]

F.    ***Boumediene* Does Not Establish The Record To Which Adel Hamad Should Be Bound Because He Is Exhausting Available Remedies And Other Legal Theories May Be Available On The Particular Facts Of His Case.**

The government's request for dismissal fails to recognize Adel Hamad's unique arguments, underlying facts, and resulting legal issues. The *Boumediene* cases involve specific allegations and legal theories; those cases do not control all the potential issues to be raised by the petitioners. *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved). The most basic distinction between this case and *Boumediene* is that the scope and efficacy of the

---

[9] The Court of Appeals is presently considering the petitioner's fully briefed motion to expedite his DTA petition. In the reply brief, attached as Exhibit A, the petitioner sets out the option of reaching the DTA merits without the delays that would be necessitated by negotiation and litigation regarding new procedures.

**Page 19 OPPOSITION TO MOTION TO DISMISS**

PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

DTA remedy is being tested and will provide this Court necessary information that will only be known once the exhaustion of remedies is completed.  Until then, the factual predicate for evaluating the legal issues is lacking, rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and Stevens.

The DTA litigation, in addition to providing insight on whether the DTA is an adequate alternative to habeas corpus, will also provide the opportunity to determine this Court's role in the DTA exhaustion process.  Besides providing the procedural context for the litigation, Mr. Hamad's DTA petition includes alternative requests for remand to this Court to resolve controverted facts, remand to this Court to address initial jurisdiction questions in the first instance, and remand to this Court based on the inadequacy of the DTA procedure for factual development and equitable relief commensurate with habeas corpus.  For the Circuit Court to exercise these options, the present habeas cases must be stayed and held in abeyance.

*Boumediene* did not resolve all potential legal issues regarding the purported statutory disenfranchisement of the jurisdiction that existed at the filing of the habeas petition under *Rasul*.  The post-exhaustion litigation, if not mooted by relief granted under the DTA, will involve legal approaches that the *Boumediene* majority did not address and resolve.  If *Rasul* means anything, the constitutional validity of the DTA statute must be determined in light of the post-DTA litigation and address Mr. Hamad's

**Page 20 OPPOSITION TO MOTION TO DISMISS**

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

unique claims, including challenges under the bill of attainder, equal protection, due

process, habeas corpus, and *ex post facto* clauses (*see* Petition at 68-84).

**Conclusion**

  Mr. Hamad's habeas corpus rights are far from finally decided: the Supreme Court

has yet to speak on the merits, and the petitioner has not had his individual facts and legal

arguments heard. The government's motion prejudges the petitioner's case and, in effect,

would destroy the carefully crafted measures in the protective order that balance

competing interests without prejudicing Mr. Hamad's ability to communicate with

counsel, which is especially important given ongoing efforts to effect his return. Under

governing Supreme Court precedent, the status quo should be preserved while the cases

are litigated: under *United Mine Workers*, the courts have "authority, from the necessity

of the case, to make orders to preserve the existing conditions and the subject of the

petition;" under *Rhines*, the mechanism for permitting exhaustion of remedies without

prejudice to habeas corpus rights is to stay the District Court action and hold it in

abeyance for a reasonable time for the DTA direct actions to be litigated.

  For the foregoing reasons, the petitioner respectfully requests that the Court deny

the government's motion to dismiss. In the event the Court grants the motion, the

**PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING**

petitioner requests that the Court stay the effect of the dismissal for an adequate time to

permit appellate review.

Dated this 2nd day of May, 2007.


 /s/ Steven T. Wax
Steven T. Wax
Federal Public Defender


 /s/ Patrick J. Ehlers
Patrick J. Ehlers
Assistant Federal Public Defender

**Page 22 OPPOSITION TO MOTION TO DISMISS**