**Steven T. Wax, OSB #85012**
**Federal Public Defender**
steve_wax@fd.org
**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
101 SW Main Street, Suite 1700
Portland, Oregon  97204
**Tel:    503-326-2123**
**Fax:   503-326-5524**

**Attorneys for Petitioner**

PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: <br><br> **PETITIONERS SEEKING HABEAS CORPUS RELIEF IN RELATION TO PRIOR DETENTIONS AT GUANTÁNAMO BAY** | Misc. No. 08-0444 (TFH) <br><br> CV 05-1009 JDB <br><br> STATUS REPORT |

Petitioner, Adel Hassan Hamad, through his attorneys, Federal Public Defender Steven T. Wax and Chief Deputy Federal Public Defender Stephen R. Sady, pursuant to the Court's Order of July 3, 2008, hereby submit the following status report.

## I.   SYNOPSIS OF THE CASE

Adel Hassan Hamad is a civilian charity worker and hospital administrator who was seized from his bed at his home in Peshawar, Pakistan, on January 18, 2002.  Mr. Hamad has repeatedly denied any hostile actions against the United States or its allies and explained to his interrogators that he is nothing more than an aid worker and administrator. The essence of the government allegations against Mr. Hamad, as reflected in the Combatant Status Review Tribunal proceedings that were held against him in Guantánamo Bay, are that he is, indeed, an aid worker and hospital administrator.

Since first becoming aware of the opportunity to seek habeas corpus relief in 2005, Mr. Hamad has, on his own and through counsel, sought first his release, then vindication of his innocence. He diligently pursued efforts to have the district court lift the stay of his habeas corpus action and address the merits of his claims and then to have the Circuit Court, through the DTA process, expedite hearing on his claims.

Mr. Hamad is one of only a very small handful of habeas corpus petitioners who sent a team of investigators into the field and provided this Court, the DTA court, and the military with hours of sworn videotaped statements demonstrating his innocence. In addition, he provided this Court and the Circuit Court with evidence directly from a member of his CSRT panel, that confirmed statements previously made by another CSRT insider, that the CSRT process was distorted by command influence, by failure to review exculpatory evidence, and by absence of a fair process.

While Mr. Hamad has been sent home, Respondent transferred him to Sudan with the enemy combatant designation intact. While our government will not reveal the terms of the transfer agreement, Mr. Hamad has obtained access to that agreement through the Sudanese government and has provided this Court with evidence that the United States government dictated terms to the Sudanese for Mr. Hamad's repatriation, terms that restrict his liberty. Declarations describing the agreement have been filed with the Court and establish collateral consequences that require resolution of Mr. Hamad's petition on the merits.

## II. STATUS OF THE HABEAS CORPUS PETITION

Pending before the Court at this time are motions for discovery, summary judgment, and to lift the stay filed by Mr. Hamad in 2006, and additional motions to lift the stay filed in 2007 and 2008. The motion filed on June 30, 2008, addresses the collateral consequences Mr. Hamad is suffering from the enemy combatant designation and terms of his repatriation. However, the pleadings pending before this Court render Mr. Hamad's case ripe for resolution at this time without consideration of the evidence gathered by Mr. Hamad and presented in the motion for summary judgment and without further discovery or motions. Following the approach taken in *Parhat v. Gates*, 06-1397, decided June 20, 2008, this Court can review the classified and unclassified return filed by Respondent and conclude that even under Respondent's view of the definition of "enemy combatant," there is not an insufficient basis to support an enemy combatant designation for Mr. Hamad. Because Mr. Hamad has already been repatriated, the only remedy necessary is a declaration that Mr. Hamad is not an enemy combatant and should not be subject to the collateral consequences and restrictions that have flowed from Respondent's treatment of him as such. Resolving this case for Mr. Hamad under the approach taken in *Parhat* would render moot the summary judgment and discovery motions that are currently pending and otherwise ripe for consideration by the Court. If the Court does not follow the *Parhat* approach, Mr. Hamad urges scheduling of hearings on his motions at the Court's earliest convenience.

**III.    HISTORY OF THE CASE**

1.    From 1986 to 2002, Mr. Hamad was an aid worker, teacher, charity administrator, and hospital administrator for two charities in Pakistan and Afghanistan.

2.    During that time, Mr. Hamad resided primarily in Peshawar, Pakistan, with his wife and daughters, with all appropriate documentation.

3.    At 1:30 in the morning on July 18, 2002, Mr. Hamad was seized from his bed in his apartment in Peshawar, Pakistan.

4.    Mr. Hamad was taken from Pakistan to the United States air base in Baghram, Afghanistan, then shipped to the prison in Guantánamo Bay, Cuba, in March of 2003.

5.    Mr. Hamad's Combatant Status Review Tribunal proceeding was held in November, 2004.  The allegations against him in that proceeding were entirely guilt by association, based on the fact that he had worked for two charities, some of whose members have taken anti-American and anti-Israeli positions. The allegations included the fact that in the late 1980s and early 1990s, he delivered food on one or two occasions to refugee camps housing Afghans who had fled the Soviet/Afghan war and then the Afghan civil wars and that one of the camps was run by the brother of Khalid Sheik Mohammad, and the other run or sponsored by Gulbadin Hekmatyar.  There is no allegation that Mr. Hamad dealt with either of those individuals.

6.    One of the members of Mr. Hamad's CSRT dissented from the decision to declare him an enemy combatant, using the word "unconscionable" in his dissent to describe the result.

7.    After learning about the decision in *Rasul v. Bush*, 542 U.S. 446, 484 (2004), Mr. Hamad, in March 2005, filed a handwritten petition for writ of habeas corpus in the United States District Court for the District of Columbia.  CR 1.

8.    On June 27, 2005, the district court granted Respondent's motion for a stay of the habeas corpus proceeding. CR 3, 4.

9.    On October 14, 2005, the Court appointed counsel to represent Mr. Hamad and on November 2, 2005, counsel entered notice of appearance in this Court. CR 5-7.

10.    On or about November 10, 2005, Mr. Hamad was approved for transfer to his home country, Sudan, at an Administrative Review Board hearing.  Mr. Hamad was not advised of that fact by the Department of Defense until his counsel were given written notification that he had been "approved to leave Guantánamo" by email dated February 22, 2007.

11. On December 12, 2005, the protective order was entered in this case and on November 7, 1005, counsel signed the memorandum of understanding. CR 17, 9, 10.

12. On December 12, 2005, counsel filed an amended petition for writ of habeas corpus on Mr. Hamad's behalf. CR 19.

13. On December 14, 2005, Mr. Hamad filed a number of motions that were denied in part but, by order of December 28, 2005, the Court granted Mr. Hamad's motion for production of a factual return. CR 25. The return was filed on May 1, 2006. It consisted of the record of the CSRT proceeding. CR 35. Throughout the first year's representation, counsel for Mr. Hamad sought to expedite proceedings with a variety of motions. CR 11 (Motion To Compel Expedited Processing of Security Clearances and Motion for Telephonic Hearing); CR 30, 31.

14. In February 2006, counsel received security clearances.

15. On August 2, 2006, Mr. Hamad filed his first motion for discovery. CR 45. In that motion, Mr. Hamad sought to have the Court move the case forward notwithstanding the existence of the stay. On August 28, 2006, the Court entered a minute order holding all pending motions in abeyance while the *Boumedienne* case was litigated. The motion for discovery should now move forward.

16. On September 22, 2006, Mr. Hamad filed a motion to Lift or Modify Stay and a Motion for Summary Judgment based on a statement of material facts establishing that the Respondent lacked jurisdiction over him and that he was innocent of the enemy combatant designation. CR 55 - 63. The motions to lift stay and for summary judgment should now move forward.

17. Unaware that the ARB had already approved his repatriation, on October 13, 2006, Mr. Hamad provided to the Department of Defense all of the evidence of innocence that had previously been submitted to the district court as exhibits to the motion for Summary Judgment.

18. On January 24, 2007, Mr. Hamad filed an Emergency Motion for Order To Lift Stay. CR 77. The Court ordered a response. Then on February 22, 2007, the circuit issued its opinion in *Boumedienne v. Bush*, 476 F.3d 291 (D.C. Cir. 2007), rev. ___ US ___ (2008), and the Motion to Lift stay remained in abeyance. The motion to lift stay should now move forward.

19. On April 17, 2007, Mr. Hamad provided this Court with notice that he was filing a petition in the Circuit Court under the Detainee Treatment Act. That petition was filed on April 20, 2007.

20. In the Circuit Court, Mr. Hamad pursued the litigation, as he had in the district court on an expedited basis, and on June 25, 2007, Mr. Hamad filed a motion for expedited briefing that included the suggestion that the Circuit Court bifurcate its review of the DTA

petition and consider first claims 1 and 2, which were susceptible of resolution without any further discovery, procedural wrangling, or fact development. In the motion for bifurcation, Mr. Hamad argued that even under a narrow view of the term "enemy combatant," the evidence submitted by Respondent in the Factual Return that it provided in the district court did not satisfy even the limited review Congress had made available to the Circuit through the Detainee Treatment and Military Commissions Acts.

21.    By orders dated August 23 and 24, 2007, the Circuit granted Mr. Hamad's Motion to Expedite and set a briefing schedule.

22.    On October 31, 2007, the Circuit Court entered a new order granting the Motion to bifurcate and directing a prompt response by Respondent. On November 9, 2007, Respondent advised the circuit that a new CSRT had been ordered for Mr. Hamad at the prison in Guantánamo and requested modification of the Court's orders of expedition and bifurcation. On December 13, 2007, Respondent notified the Circuit Court that Mr. Hamad had been transferred to Sudan and moved to dismiss the DTA case for want of jurisdiction. Mr. Hamad opposed the motion for dismissal on the ground that he had not been exonerated and was suffering collateral consequences from his continued designation as an enemy combatant. The Circuit Court has not ruled on Respondent's motion to dismiss the DTA petition.

23.    On June 30, 2008, Mr. Hamad filed a motion to lift the stay in this Court in which he argued that he was suffering collateral consequences from his continued designation as an enemy combatant and that the terms of the transfer agreement entered into between the United States and Sudan, under traditional habeas corpus law, entitled him to pursue his habeas corpus action. Submitted with the motion were two declarations that describe the agreement arranged by the United States for Mr. Hamad's return and restrictions on his liberty that include supervision of his activities, retention of his travel documents, prohibition on travel outside Sudan, investigation of Mr. Hamad by U.S. authorities, and prohibition on joining certain organizations. The case is ready for resolution.

Respectfully submitted on July 11, 2008.

                                              */s/ Steven T. Wax and Stephen R. Sady*
                                              Steven T. Wax/Stephen R. Sady
                                              Attorneys for Petitioner